**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Civil Case No.:  9:14-cv-80005

DEENA KLACKO**,** individually and on                    :
behalf of all others similarly situated,                      :
                                                                                 :
               *Plaintiff,*                                                    :
                                                                                 :
*vs.*                                                                            :
                                                                                 :
DIAMOND FOODS, INC., a California                   :
corporation,                                                              :
                                                                                 :
               *Defendant.*                                                :
_____ :

**CLASS ACTION COMPLAINT**

Plaintiff, Deena Klacko ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through the undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint, and alleges against Defendant, DIAMOND FOODS, INC. (collectively referred to herein as "Diamond Foods" or "Defendant"), as follows:

**I. INTRODUCTION**

1.      At all material times hereto, Defendant has unlawfully, fraudulently, unfairly, misleadingly, and/or deceptively represented that at least the following five (5) varieties of its Kettle Brand TIAS Tortilla Chips are "All Natural," while they contain unnatural, synthetic, and/or artificial ingredients, including, but are not limited to, maltodextrin and/or dextrose:

   1) Kettle Brand TIAS All Natural Nacho Cheddar Tortilla Chips
         i. Unnatural ingredient:  maltodextrin;

   2) Kettle Brand TIAS All Natural Zesty Ranch Tortilla Chips
         i. Unnatural ingredient:  maltodextrin;

   3) Kettle Brand TIAS All Natural Salsa Picante Tortilla Chips

      i.  <u>Unnatural ingredients</u>:  maltodextrin and dextrose;

4)  Kettle Brand TIAS All Natural Sweet Baja Barbeque Tortilla Chips
      i.  <u>Unnatural ingredient</u>:  maltodextrin;

5)  Kettle Brand TIAS All Natural Chili Con Queso Tortilla Chips
      i.  <u>Unnatural ingredient</u>:  dextrose;

(collectively, "the Products").

2.      The Products are not "natural," and certainly not "All Natural," because they contain unnatural, synthetic ingredients, including but not limited to, maltodextrin and/or dextrose.

3.      Defendant manufactures, markets, advertises, and sells the Products as being "All Natural" on the front packaging of the Products.

4.      At all material times hereto, the Products made the exact same "All Natural" claim in the exact same prominently displayed location on the front packaging for the aforementioned Products in paragraph one (1).

5.      The representation that the Products are "All Natural" is central to the marketing of the Products and is displayed prominently on their packaging.  The misrepresentations were uniform and were communicated to Plaintiff and every other member of the Class.

6.      Furthermore, the "All Natural" claim is false, misleading, and likely to deceive reasonable consumers in the same respect—that being due to their unnaturalness for containing unnatural, synthetic, and/or artificial ingredients.

7.      Contrary to Defendant's representations, the Products, at all material times hereto, are not "All Natural," because the Products contain unnatural, synthetic, and/or artificial ingredients, such as maltodextrin and/or dextrose.  The Products are simply not "All Natural,"

therefore rendering Defendant's uniform claim unlawful, fraudulent, unfair, deceptive, misleading, and/or likely to deceive reasonable consumers.

8.     As a result, Plaintiff brings this class action to secure, among other things, equitable relief, declaratory relief, restitution, and in the alternative damages, for a Class of similarly situated Florida purchasers, against DIAMOND FOODS, for: (1) false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*; (2) Negligent Misrepresentation; (3) Breach of Implied Warranty of Fitness for Particular Purpose; (4) Breach of Express Warranty; (5) Violation of Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*

9.     Plaintiff is seeking damages individually and on behalf of the Class.

10.    In addition, Plaintiff is seeking an Order requiring Defendant to cease using unnatural, synthetic, and/or artificial ingredients in its "All Natural" products, and/or Ordering Defendant to cease from representing its products are "All Natural" on the packaging for the Products that contain unnatural, synthetic, and/or artificial ingredients.

11.    Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

12.    All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

## II. JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class

is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.  Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff is a citizen of Florida, and DIAMOND FOODS can be considered a citizen of Delaware or California for diversity purposes.

14.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject Products of this action in this judicial district.

## III. <u>PARTIES</u>

15.     Plaintiff, Deena Klacko, is an individual more than 18 years old, and is a citizen of Florida, who resides in the city of Wellington, in Palm Beach County. Plaintiff respectfully requests a jury trial on all damage claims.

16.     Defendant, Diamond Foods Inc., is a Delaware corporation with its principal place of business located in the State of California located at 600 Montgomery Street, 13th Floor, San Francisco, California 94111.  Diamond Foods lists with the California Secretary of State a Registered Agent designated as Stephen Kim, located at 600 Montgomery Street, 13th Floor, San Francisco, California 94111.  Therefore, Diamond Foods can be considered a "citizen" of the State of Delaware or California for diversity purposes.   Defendant Diamond Foods also promoted and marketed the Products at issue in this jurisdiction and in this judicial district.

17.     The advertising for the Products relied upon by Plaintiff was prepared and/or approved by DIAMOND FOODS and its agents, and was disseminated by DIAMOND FOODS and its agents through advertising containing the misrepresentations alleged herein.

18.     The advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class into purchasing the Products.  DIAMOND FOODS is the owner, manufacturer and distributor of the Products, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and statements for the Products.

19.     Plaintiff alleges that, at all times relevant herein, DIAMOND FOODS and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of DIAMOND FOODS, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

20.     Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were DIAMOND FOODS's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

21.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, DIAMOND FOODS, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that DIAMOND FOODS participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

22.     Whenever reference in this Complaint is made to any act by DIAMOND FOODS or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of DIAMOND FOODS committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of DIAMOND FOODS while actively engaged in the scope of their duties.

## IV. FACTUAL ALLEGATIONS

### A.  Diamond Foods' Advertising of the "All Natural" Products

23.     DIAMOND FOODS manufactures, distributes, markets, advertises, and sells the Products aforementioned in paragraph one (1), which uniformly claim to be "All Natural," when in fact, they are not, because they contain unnatural, synthetic, and/or artificial ingredients, including but not limited to, maltodextrin and/or dextrose.

24.     Defendant's "All Natural" statement prominently displayed on the front of the box for the Products' and on the front of each individual packaging for the Products is untrue, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class, because the Products are not All Natural due to the presence of unnatural, synthetic, and/or artificial ingredients in the Products.

25.     Defendant unlawfully markets, advertises, sells and distributes the Products to Florida purchasers in Florida grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores, as being "All Natural."

26.     All of the Products' packaging uniformly and consistently states that the Products are All Natural on the front of the box for each of the Products and on the front of each individual packaging for the Products that come inside each box.

27.     As a result, all consumers within the Class, including Plaintiff, who purchased the Products were exposed to the same "All Natural" claim in the same location on the front box and individual packaging for the Products.

28.     Unfortunately for consumers, they were charged a price premium for these alleged All Natural Products over Products that did not claim to be "All Natural."

29.     Defendant's All Natural representations convey a series of express and implied claims which Defendant knows are material to the reasonable consumer, and which Defendant intends for consumers to rely upon when choosing to purchase the Products.

**B.  <u>Maltodextrin and Dextrose Are Not Natural</u>**

30.     Maltodextrin and dextrose are unnatural, synthetic, and/or an artificial ingredient, and its presence in the Products causes the Products to not be "All Natural."

31.     ***Maltodextrin*** is a saccharide polymer that is produced through partial acid and enzymatic hydrolysis of corn starch.[1]   The acid hydrolysis process is specifically deemed to be a relatively severe process that renders an ingredient no longer "natural."[2]

32.     ***Dextrose*** is enzymatically synthesized in a similar manner, crystallizing D-glucose with one molecule of water.

33.     Synthetic chemicals are often used to extract and purify the enzymes used to produce maltodextrin and dextrose.  The microorganisms, fungi, and bacteria used to produce these enzymes are also often synthetically produced.

---

1.     Maltodextrins,            GMO            Compass,            http://www.gmo-compass.org/eng/database/ingredients/148.maltodextrins.html (last visited Oct. 23, 2013).

2.     *See id.*

34.     Despite all these unnatural ingredients, Defendant knowingly markets the Products as "All Natural."

### C. Defendant Deceptively Markets the Products as "All Natural" to Induce Consumers to Purchase the Products

35.     A representation that a product is "All Natural" and/or "Natural" is material to a reasonable consumer.  According to Consumers Union, "Eighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[3]

36.     Defendant markets and advertises the Products as "All Natural" to increase sales of the Products and Defendant is well-aware that claims of food being "All Natural" are material to consumers.  Despite knowing that maltodextrin and/or dextrose are not natural ingredients, Defendant has engaged in a widespread marketing and advertising campaign to portray the Products as being "All Natural."

37.     Defendant engaged in this misleading and deceptive campaign to charge a premium for the Products and take away market share from other similar products.  As stated herein, such representations and the widespread marketing campaign portraying the Products as being "All Natural" are misleading and likely to deceive reasonable consumers because the Products are not "All Natural" due to being made with unnatural ingredients.

38.     Reasonable consumers frequently rely on food label representations and information in making purchase decisions.

39.     Here, Plaintiff and the other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.  Defendant's misleading affirmative

---

3.     Notice of the Federal Trade Commission, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 CFR § 260, Dec. 10, 2010, http://www.ftc.gov/os/comments/greenguiderevisions/00289-57072.pdf (last visited Oct. 23, 2013)

statements about the "naturalness" of its Products obscured the material facts that Defendant failed to disclose about the unnaturalness of its Products.

40.     Plaintiff and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions.

41.     Defendant made the deceptive representations and omissions on the Products with the intent to induce Plaintiff's and the other Class members' purchase of the Products.

42.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.  Thus, Plaintiff's and the other Class members' reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.  The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

43.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the other Class members.

44.     In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for "All Natural" labeled products over comparable products that are not labeled "All Natural" furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "All Natural" by Defendant's competitors, or those that do not claim to be "All Natural."

45.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Class members in that they:

1)  paid a sum of money for Products that were not as represented;

2)  paid a premium price for Products that were not as represented;

3)  were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

4)  were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

5)  did not receive Products that measured up to their expectations as created by Defendant;

6)  ingested a substance that was other than what was represented by Defendant;

7)  ingested a substance that Plaintiff and the other members of the Class did not expect or consent to;

8)  ingested a product that was artificial, synthetic, or otherwise unnatural;

9)  ingested a substance that was of a lower quality than what Defendant promised;

10) were denied the benefit of knowing what they ingested;

11) were denied the benefit of truthful food labels;

12) were forced unwittingly to support an industry that contributes to environmental, ecological, and/or health damage;

13) were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and

14) were denied the benefit of the beneficial properties of the natural foods promised.

46.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been economically injured.

47.     Among other things, Plaintiff and the other Class members would not have been denied the benefit of the bargain, they would not have ingested a substance that they did not expect or consent to.

48.     Plaintiff and the other Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the other Class members purchased, purchased more of, or paid more for, the Products than they would have done, had they known the truth about the Products' unnaturalness.

49.     Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

### D.  Plaintiff's Purchase and Reliance on the "All Natural" Statement

50.     Plaintiff has purchased the Products during the Class Period (defined below), including, but not limited to, Kettle Brand TIAS All Natural Zesty Ranch Tortilla Chips, from a Whole Foods Market, located at 11701 Lake Victoria Gardens Avenue, Palm Beach Gardens, Florida 33410, during 2013, for the purchase price of approximately $3.49.

51.     The Products purchased by Plaintiff claimed to be "All Natural" on the front packaging, which Plaintiff perceived, read and relied on in making Plaintiff's decision to purchase the Products.  Plaintiff interpreted the "All Natural" claim to mean that the Tortilla Chips did not contain any unnatural, synthetic, and/or artificial ingredients.

52.     Subsequent to purchasing the Products, Plaintiff discovered that they contain maltodextrin and/or dextrose, which are unnatural and/or synthetic ingredients, and thus, the Products containing these unnatural, synthetic, and/or artificial ingredients are not "All Natural."

53.     Defendant manufactures, markets, advertises, distributes and sells the Products identified in paragraph one (1) above, claiming to be "All Natural," in retail stores throughout Florida and in this judicial district.

54.     Through a variety of advertising, including the front packaging of the Products, DIAMOND FOODS has made untrue and misleading material statements and representations regarding the Products, which have been relied upon by Plaintiff and members of the Class.

55.     Plaintiff and members of the Class would not have purchased the Products had they known that they were not "All Natural."   Likewise, if Plaintiff and members of the Class had known the Products contained unnatural, synthetic, and/or artificial ingredients, they would not have purchased them.

56.     Defendant's "All Natural" statement related to the Products is material to a consumer's purchase decision because reasonable consumers, such as Plaintiff and members of the Class, care whether products contain unnatural, synthetic, and/or artificial ingredients, and thus attach importance to an "All Natural" claim when making a purchasing decision.

### E.  Plaintiff Has Suffered Economic Damages

57.     As a result of purchasing the Products that claim to be "All Natural," but contain maltodextrin and/or dextrose, Plaintiff and members of the Class have suffered economic damages.

58.     Defendant's "All Natural" advertising for the Products was and is false, misleading, and/or likely to deceive reasonable consumers.   Therefore, the Products are valueless, worth less than what Plaintiff and members of the Class paid for them, and/or are not what Plaintiff and members of the Class reasonably intended to receive.

59.     Plaintiff and the Class seek damages equal to the aggregate purchase price paid for the Products during the Class Period because the Products are worthless due to not being "All Natural," due to the presence of unnatural, synthetic, and/or artificial ingredients.

60.     Moreover, Plaintiff and members of the Class paid a price premium for the "All Natural" Products, over other similar products that do not claim to be "All Natural."

## V. CLASS ACTION ALLEGATIONS

61.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

62.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **all Florida residents who have purchased for personal use any of the following: (1) Kettle Brand TIAS All Natural Nacho Cheddar Tortilla Chips; (2) Kettle Brand TIAS All Natural Zesty Ranch Tortilla Chips; (3) Kettle Brand TIAS All Natural Salsa Picante Tortilla Chips; (4) Kettle Brand TIAS All Natural Sweet Baja Barbeque Tortilla Chips; or Kettle Brand TIAS All Natural Chili Con Queso Tortilla Chips, which claim to be "All Natural" and contain maltodextrin and/or dextrose, from January 3, 2010, through and to the filing date of this Complaint.**

63.     Plaintiff respectfully reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries,  and assigns.   Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

64.     Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass, so that the questions of law and fact are common to all members of the Class and any subclass.

65.     All members of the Class and any subclass were and are similarly affected by the deceptive advertising for the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.

66.     Based on the annual sales of the Products and the popularity of the Products, it is readily apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

67.     Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, *inter alia*:

a.     Whether Defendant's business practices violated FDUTPA, Fla. Stat. §§ 501.201, *et seq.*;

b.     Whether the Products are "All Natural;"

c.     Whether the ingredients contained in the Products are "All Natural;"

d.     Whether the claim "All Natural" on the Products' packaging and advertising is material to a reasonable consumer;

e.     Whether the claim "All Natural" on the Products' packaging and advertising is false to a reasonable consumer.

f.     Whether the claim "All Natural" on the Products' packaging and advertising is likely to deceive a reasonable consumer;

g.     Whether the claim "All Natural" on the Products' packaging and advertising is misleading to a reasonable consumer;

h.      Whether a reasonable consumer is likely to be deceived by a claim that a product is "All Natural" where the product contains unnatural, synthetic, and/or artificial ingredients; and

i.      Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

68.     The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

69.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

70.      Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

71.     Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

72.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

73.     Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the

relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

74.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. FIRST CAUSE OF ACTION:
## FOR VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ.*

75.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through seventy-four (74) of this Complaint as if fully set forth herein verbatim.

76.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*. The express purpose of the Act is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" Section 501.202(2).

77.    The sale of the Products at issue in this cause was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*.

78.    Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*. Each of Defendant's Products is a "good" within the meaning of the Act. Defendant is engaged in trade or commerce within the meaning of the Act.

79.    Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce".

80.    Section 501.204(2), *Florida Statutes* states that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Defendant's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably under the circumstances and, therefore, violate Section 500.04, Florida Statutes and 21 U.S.C. Section 343.

81.    Defendant have violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, Defendant has represented that their Products are "All Natural," when in fact the Products contain unnatural, synthetic, and/or artificial ingredients.

82.    Plaintiff and Class Members have been aggrieved by Defendant's unfair and deceptive practices in that they purchased and consumed Defendant's Products.

83.    Reasonable consumers rely on Defendant to honestly represent the true nature of their ingredients.

84.     As described in detail above, Defendant has represented that its products are "All Natural," when in reality they contain unnatural, synthetic, and/or artificial ingredients.

85.     Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing its Products were something they were not—"All Natural."

86.     The knowledge required to discern the true nature of Defendant's Products is beyond that of the reasonable consumer—namely that the Products contain unnatural, synthetic, and/or artificial ingredients, such as maltodextrin and/or dextrose.

87.     Federal and State Courts decide omission and misrepresentation matters regularly, including those involving a reasonable consumer's understanding of the meaning of "All Natural.' Accordingly, the issue of whether the "All Natural" label is misleading to a reasonable consumer is well within the jurisdiction of the Court.

88.     The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as described above.

89.     Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendant, and for restitution and disgorgement.

90.     Additionally, pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and the Class make claims for actual damages, statutory damages, attorney's fees and costs.

### VII. SECOND CAUSE OF ACTION:
### NEGLIGENT MISREPRESENTATION

91.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through seventy-four (74) of this Complaint as if fully set forth herein verbatim.

92.     Defendant has negligently represented that the Products have nothing artificial and are all "All Natural," when in fact, they are not because they contain unnatural, synthetic, and/or artificial ingredients such as maltodextrin and/or dextrose.

93.     Defendant has misrepresented a material fact to the public, including Plaintiff and Class Members, about its Products; specifically, that the Products are "All Natural" when they contain unnatural, synthetic, and/or artificial ingredients.

94.     Defendant knew or should have known that these omissions would materially affect Plaintiff's and Class members' decisions to purchase the Products.

95.     Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Products.

96.     The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Products through reputable companies.

97.     Plaintiff would not have been willing to pay for Defendant's Products if they knew that they contained unnatural, synthetic, and/or artificial ingredients.

98.     As a direct and proximate result of these misrepresentations, Plaintiff and members of the Class were induced to purchase and consume Defendant's Products, and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of their bargain in that they bought Products that were not what they were represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

99.     Plaintiff seeks actual damages in an amount to be determined at trial.

## VIII. THIRD CAUSE OF ACTION:
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR
## PURPOSE

100.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the

preceding paragraphs numbered one (1) through seventy-four (74) of this Complaint as if fully

set forth herein verbatim.

101.    Defendant has represented that the Products are "All Natural."

102.    Thus, Defendant impliedly warranted that the Products do not contain unnatural,

synthetic, and/or artificial ingredients.

103.    However, the Products contain unnatural, synthetic, and/or artificial ingredients

such as maltodextrin and/or dextrose.

104.    Plaintiff and other members of the Class sought an "All Natural" product. In

doing so, Plaintiff and other members of the Class relied on Defendant's skill and judgment to

select and furnish suitable goods for that purpose, and on or about that time, Defendant sold the

Products to Plaintiff and other members of the Class that contained unnatural, synthetic, and/or

artificial ingredients.

105.    By their representations, promotions and marketing of the Products, Defendant

warranted that the Products were "All Natural." Plaintiff and members of the Class bought the

Products from Defendant, relying on Defendant's skill and judgment.  However, Defendant's

Products are not "All Natural" because they contain unnatural, synthetic, and/or artificial

ingredients, such as maltodextrin and/or dextrose.

106.    At the time of sale, Defendant had reason to know the particular purpose for

which the goods were required, and that Plaintiff and Members of the Class were relying on

Defendant's skill and judgment to select and furnish safe and conventional goods, so that there

was an implied warranty that the goods (the Products), were fit for this purpose.

107.    However, Defendant breached the warranty implied at the time of sale because Plaintiff and Members of the Class did not receive suitable goods in as much as the goods contained unnatural, synthetic, and/or artificial ingredients, such as maltodextrin and/or dextrose.

108.    As a proximate result of this breach of warranty by Defendant, Plaintiff and Members of the Class have suffered actual economic damages in an amount to be determined at trial in that they were induced to purchase products they would not have purchased had they known the true facts about, and have spent money on products that were not what they were represented to be, and that lack the value Defendant represented the Products to have.

109.    Plaintiff and Class members gave timely notice to Defendant of this breach of implied warranty individually, and on behalf of all members of the Plaintiff Class, directly through a Notice letter sent to Defendant on October 25, 2013.

110.    Plaintiff seeks actual damages in an amount to be determined at trial.

## IX. FOURTH CAUSE OF ACTION:
## BREACH OF EXPRESS WARRANTY

111.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through seventy-four (74) of this Complaint as if fully set forth herein verbatim.

112.    Defendant has expressly represented that the Products are "All Natural," when in fact, they are not because they contain unnatural, synthetic, and/or artificial ingredients, such as maltodextrin and/or dextrose.

113.    Plaintiff is informed and believes, and thereon alleges, that Defendant made an express warranty, including, but not limited to, that the Products were "All Natural."

114.    As a proximate result of the failure of the Products to perform as expressly warranted by Defendant, Plaintiff and members of the Class have suffered actual economic

damages in an amount to be determined at trial in that they were induced to purchase products they would not have purchased had they known the true facts about, and have spent money on Products that were not what they were represented to be, and that lack the value Defendant represented the Products to have.

115.    Plaintiff and Class members gave timely notice to Defendant of this breach of express warranty, individually, and on behalf of all members of the Plaintiff Class, directly through a Notice letter sent to Defendant on October 25, 2013.

116.    Plaintiff seeks actual damages in an amount to be determined at trial.

**X. FIFTH CAUSE OF ACTION:**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301 *et seq.*)**

117.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through seventy-four (74) of this Complaint as if fully set forth herein verbatim.

118.    Defendant has breached implied and express warranties regarding the Product, as described in the third and fourth causes of action above.

119.    Plaintiff and the Class are consumers as defined in 15 U.S.C. § 2301(3).

120.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

121.    The Products are consumer products as defined in 15 U.S.C. § 2301(6).

122.    By reason of Defendant's breach of the above implied warranty of fitness for particular purpose and breach of express warranty, Defendant has violated the statutory rights due to Plaintiff and members of the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.§§ 2301 *et seq.*, thereby economically damaging Plaintiff and the Class.

123.   Plaintiff and Class members gave timely notice to Defendant of its breach of state law express and implied warranties, individually, and on behalf of all members of the Plaintiff Class, directly through a Notice letter sent to Defendant on October 25, 2013.

124.   Plaintiff and the Class seek all available remedies, damages, and awards under the Magnuson-Moss Warranty Act.

## XI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1.   For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2.   For an award of equitable relief for all causes of action as follows:

    (a)   Enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing and advertising of the Products for the purpose of selling the Products in such manner as set forth in detail above or making any claims found to violate FDUTPA or the other causes of action as set forth above;

    (b)   Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

    (c)   Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

(d)    Requiring Defendant to disgorge all ill-gotten gains flowing from the

conduct described herein.

3.    For damages in an amount to be determined at trial for all causes of action;

4.    For an award of attorney's fees pursuant to, *inter alia*, FDUTPA;

5.    For an award of costs and any other award the Court might deem just, appropriate,

or proper; and

6.    For pre- and post-judgment interest on any amounts awarded**.**

## XII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.


                              **Respectfully Submitted,**


Dated: January 3, 2014          */s/   Howard W. Rubinstein*
                              Howard W. Rubinstein, Esq.
                              Florida Bar No.: 104108
                              *howardr@pdq.net*
                              **THE LAW OFFICES OF**
                              **HOWARD W. RUBINSTEIN, P.A.**
                              1615 Forum Place, Suite 4C
                              West Palm Beach, FL 33401
                              (800) 436-6437
                              (415) 692-6607 (fax)

                              Attorneys for Plaintiff Deena Klacko
                              and the Proposed Class