# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.:  9:14-cv-80005-BB

| | |
|---|---|
| DEENA KLACKO, individually and on behalf of all others similarly situated, | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : |
| | : |
| DIAMOND FOODS, INC., a California Corporation | : |
| | : |
| *Defendant.* | : |
| | : |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

**PAGES**

I. INTRODUCTION.....…………………………………………………..…….6

II. HISTORY OF THE LITIGATION…………………………………………...10

III. SETTLEMENT TERMS……....…………………………………….……....11

   A. The Injunctive Relief Component…………………………………….…....11

   B. The Monetary Relief Component……...…….…..…..…………………………12

   C. Class Claims Administration, Attorney's Fees, and the Proposed Notice Plan………….13

IV. THE PROPOSED SETTLEMENT MEES THE CRITERIAFOR PRELIMINARY
APPROVAL……………………………………………….…………………13

   A. The Standard for Preliminary Approval……………………………………......13

   B. The Proposed Settlement Resulted from Serious, Informed, and Non- Collusive Arm's
Length Negotiations…………………………………………………………15

   C. The Proposed Settlement Is Fair to Both the Kettle Chips Plaintiff and Class Members
…………………………………………………………………….......16

   D. The Terms of the Settlement Compel Preliminary Approval…………………………17

V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED…………………………17

   A. The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)…………………18

      1.Numerosity……………………………………………………………18

      2.Commonality……………………………………………………………18

      3.Typicality………………………………………………………………19

      4.Adequacy of Representation ……………………………………………20

   B. The Settlement Class Should Be Preliminarily Approved Under the
Federal Rules of Civil Procedure 23(b)(3)……………………………………………20

      1.Common Questions Predominate Over Individual Issues………...….……21

      2. A Class Action Is The Superior Method to Settle This Controversy……21

VI. THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS
NOTICE SHOULD BE APPROVED……………………………………………22

VII. THE PROPOSED SCHEDULE OF EVENTS…………………………………24

VIII. CONCLUSION………………………………………………………...25

# TABLE OF AUTHORITIES

CASES

*Access Now, Inc. v. Claire's Stores, Inc.*
 No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002) ...................................... 15

*Adams v. Inter-Con Sec. Sys., Inc.*
 No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .............................. 16

*Amchem Prods., Inc. v. Windsor*
 521 U.S. 591 (1997) ........................................................................... 19, 22, 23
*Appleyard v. Wallace*
 754 F.2d 955 (11th Cir. 1985). ............................................................................. 15

*Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.*
 21 F.R.D. 457 (S.D. Fla. 2002). .......................................................................... 16

*Bennett v. Behring Corp.*
 737 F.2d 982 (11th Cir. 1984) ........................................................................ 11, 15

*Bonner v. City of Prichard*
 661 F.2d 1206 (11th Cir. 1981) .......................................................................... 15

*Busby v. JRHBW Realty, Inc.,*
 513 F.3d 1314 (11th Cir. 2008) ...................................................................... 20, 22

*Cotton v. Hinton*
 559 F.2d 1326 (5th Cir. 1977)........................................................... 15, 16, 18

*Deposit Guaranty Nat'l Bank v. Roper*
 445 U.S. 326 (1980)
...............................................................................................................23
*Eisen v. Carlisle & Jacquelin*
 417 U.S. 156 (1974) .......................................................................................... 23
*Fabricant v. Sears Roebuck*
 202 F.R.D. 310 (S.D. Fla. 2001) .................................................................... 23

*Francis v. Mead Johnson & Co.*
 No. 1:10-cv-701-JLK (D. Colo.)...................................................................... 7, 11

*Fresco v. Auto Data Direct, Inc.*
 No. 03-61063, 2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007) ......................... 11

*Fresco v. Auto. Directions, Inc.* No. 03-61063, 2009 U.S. Dist. LEXIS 125233 (S.D. Fla. Jan. 16, 2009) ..........................................................................................................17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................ 19

*In re Amerifirst Sec. Litig.*
    139 F.R.D. 423 (S.D. Fla. 1991) ............................................................. 20

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*
    216 F.R.D. 197 (D. Me. 2003) ................................................................ 24

*In re Corrugated Container Antitrust Litig.*
 643 F.2d 195 (5th Cir.
1981)..............................................................................................................15

*In re Disposable Contact Lens Antitrust Litig.*
    170 F.R.D. 524 (M.D. Fla. 1996).............................................................. 20

*In re Employee Benefit Plans Sec. Litig.*
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993)............................. 16

*In re Indep. Energy Holdings PLC*
  No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........ 17

*In re Nissan Motor Corp. Antitrust Litig.*
    552 F. 2d 1088 (5th Cir. 1977) ............................................................... 23

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    148 F.3d 283, 314-315 (3d Cir. 1998).......................................................... 19

*In re U.S. Oil & Gas Litig.*
    967 F.2d 489 (11th Cir. 1992) ................................................................ 18

*In re Warner Commc'ns Sec. Litig.*
    618 F. Supp. 735 (S.D.N.Y. 1985).......................................................... 16

*Kirkpatrick v. J.C. Bradford & Co.*
    827 F.2d 718 (11th Cir. 1987) ................................................................ 21

*Klay v. Humana*
    382 F.3d 1241 (11th Cir.
2004)..............................................................................................................22

*Manchaca v. Chater*, 927 F. Supp. 962 (E.D. Tex. 1996)........................................... 11

4

*Milstein v. Huck*
  600 F. Supp. 254 (E.D.N.Y 1984) ............................................................. 18

*Mullane v. Cent. Hanover Bank & Trust Co.*
  339 U.S. 306 (1950) ................................................................................... 23

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ................................................................................... 22
*Pinto v. Princess Cruise Lines*
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..................................................... 12

*Rutstein v. Avis Rent-A-Car Sys.*
  211 F.3d 1228 (11th Cir. 2000) ................................................................. 21

*Slater v. Energy Services Group Intern., Inc.*
  No. 09-13794, 2011 WL 782023 (11th Cir. (Fla.) March 8, 2011) ................... 14

*Vega v. T-Mobile USA, Inc*.
  564 F.3d 1256 (11th Cir. 2009) ................................................................. 19

*Weiner v. Dannon Co., Inc.*
  255 F.R.D. 658 (C.D. Cal. 2009) ......................................................... 21, 22

*Williams v. Mohawk Indus., Inc*.
  568 F.3d 1350 (11th Cir. 2009) ................................................................. 19

*Young v. Katz*
  447 F.2d 431 (5th Cir. 1971) ..................................................................... 14

OTHER AUTHORITIES
*Annotated Manual for Complex Litigation* (4th ed. 2008)
................................................................. 3, 9
*Newberg on Class Actions* (4th ed. 2002)
................................................................................................................10, 15
RULES
Fed. R. Civ. P. 23(a) ............................................................................ 18, 19, 20
Fed. R. Civ. P. 23(b)(3)........................................................................ 20, 21, 22

Plaintiff, DEENA KLACKO ("Plaintiff"), submits this Memorandum in support of her Motion for Preliminary Approval of Class Action Settlement, for entry of the [Proposed] Order Granting Preliminary Approval of Class Action Settlement.  The terms of the proposed settlement ("Settlement") are fully set forth in the Stipulation of Class Action Settlement attached as Exhibit A. ("Stipulation").

## I.    INTRODUCTION

Without objection by DIAMOND FOODS, INC. ("Defendant"), Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement of this action alleging false advertising.[1]

The instant action is the first filed of three related actions against Defendant.  The other two actions are:  *Dominika Surzyn v. Diamond Foods, Inc.*, Case No. 4:14-cv-136 (the "*Surzyn* Action"), and *Richard Hall v. Diamond Foods, Inc.*, Case No. 3:14-cv-02148 (the "*Hall* Action").[2] Both the *Surzyn* Action and *Hall* Action are pending in the United States District Court for the Northern District of California.

Parties to all actions (collectively, the "Kettle Actions") engaged in extensive and hard-fought motion practice.  Additionally, on June 27, 2014, the Surzyn and Klacko Plaintiffs participated in a full day mediation with Defendant, with David H. Lichter serving as mediator. The June 27, 2014 mediation was unsuccessful, but negotiations between and among the Parties

---

[1]     All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.  Although Defendant agrees the Court should approve this Settlement, it continues to deny Plaintiff's allegations.

[2]     The *Hall* Action was previously pending in the California Superior Court, County of San Francisco, under Case No.:  GCG-14-538387.  That action was removed to the United States District Court for the Northern District of California on May 9, 2014, where, as mentioned above, the case is currently pending.

persisted, ultimately culminating a settlement, as evidenced by the Stipulation.  All Parties to the Kettle Actions joined in the Settlement.

Plaintiffs' objective in the Kettle Actions was to end Defendant's alleged false labeling and advertising practices regarding Defendant's Kettle Brand® products labeled "All Natural," "Natural," "Naturally," "Reduced Fat," and/or "____% Less Fat" (collectively, the "Products"). Defendant manufactures, markets, and sells several of the Products as "All Natural," "Natural," or "Naturally" despite the fact that the same allegedly contain artificial, synthetic, and/or genetically modified ingredients in them.  Similarly, Plaintiffs allege that Defendant manufactures, markets, and sells the remaining Products, which Plaintiffs allege are falsely advertised as "Reduced Fat" and/or "_____% Less Fat," because Plaintiffs allege Defendant improperly references non-comparable food in making this claim.  Plaintiffs Klacko, Surzyn, and Hall (collectively, the "Kettle Action Plaintiffs") allege that Defendant improperly labeled the subject Products by virtue of the above-referenced labeling, in violation of various state consumer protection statutes.

The proposed Settlement compensates Class Members by providing Class Members both with injunctive relief and monetary relief for damages incurred.

The injunctive relief component requires Defendant to comply with numerous conditions and terms to ensure that its Products no longer are being falsely represented to the public as alleged by Plaintiffs.  Specifically, with regard to Defendant's "All Natural," "Natural," and "Naturally," Products, Defendant will provide its "Natural Promise" criteria to its ingredient suppliers and require those suppliers to verify that their ingredients comply with the "Natural Promise." Defendant will also create and maintain a database to track ingredients and ingredient supplier verifications.  Additionally, Defendant will conduct audits of its ingredient suppliers at least annually to confirm their compliance with Defendant's "Natural Promise."  Defendant will also

employ reasonable efforts to obtain Non-GMO Project approval for all Products that are practically eligible for Non-GMO Project consideration.  With regard to Defendant's "Reduced Fat" and "Less Fat" Products, Defendant will place the comparison statement at the location on the packaging where the "Reduced Fat" or "Less Fat" claim is most prominently displayed.

The monetary relief Defendant will provide is substantial and reasonable under the circumstances.  Specifically, Defendant will provide claimants who do not provide proof of purchase of the Products a check in the amount of up to $10.00, representing $1.00 compensation for up to ten (10) purchases of the Products.  Additionally, households who provide proof of purchase may seek compensation up to $20.00 for Products purchased, representing $1.00 for compensation for up to twenty (20) purchases of the Products.  To satisfy these claims, Defendant has agreed to provide a guaranteed fund available exclusively to pay class member claims in the amount of $2,750,000.00, and if the total claims exceed this amount, the claims administrator shall have the power to adjust the claims on a *pro rata* basis.  Notwithstanding, any Residual Amount remaining from the initial $3,000,000 Common Fund shall be used toward Defendant donating free Diamond Foods food products to Feeding America until the retail price for such meals equals the Residual Amount.

Furthermore, Defendant will pay all costs of noticing the Class, the costs of claims administration, Plaintiffs' Counsel's attorneys' fees and expenses, and the Class Representatives' incentive awards.  These amounts will be paid from the $3,000,000 Common Fund, but the separate $2,750,000 guarantee applies to satisfy Class Member Claims even if those claims exhaust the original $3,000,000 Common Fund.

Finally, this Settlement will effectively resolve the claims for all three Kettle Actions.

Class Notice advising potential Class Members of their settlement benefits and their rights will be effectuated pursuant to several methods.  Specifically, the claims administrator shall cause a website and a toll-free number to be created for Notice purposes.  Such resources will provide Class members with critical settlement information, including the opt-out date.  Additionally, the claims administrator will provide Notice to the Class via publication, not later than ninety (90) calendar days after entry of the Preliminary Approval Order, or such other date as the Court may order.  All methods of providing Notice to Class shall comport with all requirements of due process.

The proposed Class for which the Parties request certification for purposes of the Settlement is:

> All Persons who, for personal or household use, purchased Diamond Foods, Inc. Kettle Brand® Products[3] from January 3, 2010 through and including February 24, 2015.  Excluded from the Settlement Class are:  (a) all Persons who purchased or acquired Diamond Kettle Brand® products for resale; (b) Diamond Foods, Inc. and its employees, principals, affiliated entities, legal representatives, successors and assigns; (c) any Person who files a valid, timely Request for Exclusion; (d) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (e) the judges to whom the Kettle Actions are assigned and any members of their immediate families.

In addition, the Parties move the Court to designate the Kettle Action Plaintiffs as Class Representatives in this matter and, furthermore, to appoint The Law Offices of Howard W.

---

[3]      Products means Diamond Foods Kettle Brand® products labeled as "All Natural," "Natural," "Naturally," "Made with All Natural Ingredients," "Natural Promise," or any other derivation of "natural,"   "nothing artificial," "no preservatives," "non-GMO," "non-GMO ingredients," "only natural colors and flavors," "natural flavors," "A Natural Obsession," "real food ingredients," "Reduced Fat," and/or "__% Less Fat."

Rubinstein, P.A., the Law Office of L. DeWayne Layfield, PLLC, and CounselOne, P.C. as Class Counsel.

At the preliminary approval stage the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") § 21.632 (4th ed. 2008).  In so doing, the Court reviews the Settlement to determine if it "is 'within the range of possible approval' or, in other words [if] there is a 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 U.S. Dist. LEXIS 37863, at *11-12 (S.D. Fla. May 11, 2007) (internal citations omitted); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (A proposed settlement must be "fair, adequate and reasonable and [not] the product of collusion between the parties").

As set forth in further detail below, the proposed Settlement plainly meets the standard for preliminary approval.  Thus, the Parties move that the Court enter the [Proposed] Order Granting Preliminary Approval of Class Action Settlement that, among other things:  (1) preliminarily approves the terms of the Settlement; (2) approves the form, method and plan of Class Notice; (3) certifies the Class for settlement purposes; and (4) schedules a Final Approval Hearing and related dates at which the request for final approval of the proposed Settlement and entry of the Final Judgment and Order will be considered.

## II.   HISTORY OF THE LITIGATION

On January 3, 2014, Plaintiff filed a putative class action in the United States District Court for the Southern District of Florida.  Plaintiff Surzyn filed her action against Defendant in the

United States District Court for the Northern District of California on January 9, 2014.  Finally, on April 2, 2014, Plaintiff Hall filed in the Superior Court of California, San Francisco County. All actions were on behalf of the named plaintiffs and all others similarly situated and all involved at least some of the same facts and legal theories.  The Hall Action was removed to the United States District Court for the Northern District of California on May 9, 2014.

During this time period, the Parties engaged in informal discovery and Defendant voluntarily provided the Kettle Action Plaintiffs with highly sensitive, financial information involving the Products.

On June 27, 2014, Plaintiff and Defendant participated in a full-day mediation, with David H. Lichter, a mediator experienced in complex litigation cases, serving as mediator.  The mediation did not prove successful, but Plaintiff, Defendant, and the other Parties continued to engage in lengthy and hard-fought negotiation.  Ultimately, with the continued assistance of Mr. Lichter, the Parties reached a settlement in principle, which was later memorialized in the Stipulation.

## III.    SETTLEMENT TERMS

### A.    The Injunctive Relief Component

Defendant will implement several changes to the labeling of its Products.  Specifically, within one (1) calendar year after entry of the Final Judgment and Order Approving Settlement, Defendant will provide its "Natural Promise" criteria to its ingredient suppliers and further will require those suppliers to verify that their ingredients comply with Defendant's "Natural Promise." Defendant will also create and maintain a database to track ingredients and ingredient suppliers. Furthermore, Defendant will conduct audits, at least once annually, to confirm that its suppliers are in compliance with Defendant's "Natural Promise."  Defendant will also employ reasonable

efforts to obtain Non-GMO Project approval for all Products where eligibility for Non-GMO Project approval is practical.

Additionally, with regard to Defendant's "Reduced Fat" and "___% Less Fat" Products, Defendant will place the requisite comparison statement at the location on the packaging where the applicable claim is most prominently displayed.  Moreover, Defendant will provide reports to the Court (i) at the end of the six (6) month period following entry of the Final Judgment and Order Approving Settlement; and (ii) within one (1) calendar year following Final Judgment and Order Approving Settlement, regarding its compliance with the injunctive relief provisions recounted herein.

**B.      The Monetary Relief Component**

Defendant has agreed to provide compensation to Claimants, without proof of purchase, $1.00 per purchase of claimed Products, up to $10.00, for damages allegedly incurred from purchasing the Products during the Class Period.  Additionally, Defendant has agreed to provide compensation to Claimants, who have proofs of purchase, $1.00 per purchase, up to a maximum of $20.00.  Defendant retains the right to validate the Claimant's proof of purchase.

Defendant has guaranteed that it will satisfy all valid Claims made, up to a cap on cash payments to the Settlement Class in the amount of Two Million Seven Hundred Fifty Thousand and No/100 Dollars ($2,750,000.00).  However, if the total of Approved Claims exceed this guaranteed cap, the claims administrator will pay a pro rata reduction of the amount due each Settlement Class Member such that the aforementioned amount will satisfy all Approved Claims.

Additionally, any Residual Amount, as that term was defined in the Stipulation, will be applied toward the retail value of Diamond Foods, Inc. food product, which Defendant will donate

to charity, namely, Feeding America.  Such distribution will be made within eighteen (18) months following the Payment Distribution Date.

**C.      Class Claims Administration, Attorney's Fees, and the Proposed Notice Plan**

The Settlement provides that Defendant shall pay for the costs of Class Notice and claims administration up to a maximum of three hundred thousand and no/100 dollars ($300,000.00). Defendant also agrees not to oppose Counsel's application for reasonable attorneys' fees, expenses and costs in an amount not to exceed $775,000.

No later than ninety (90) calendar days after entry of the Preliminary Approval Order or such other date as the Court may order, the claims administrator shall cause Notice to be delivered to the Class pursuant to the Notice Plan.  The Plan entails three parts:  (1) creation of a Settlement Website; (2) creation of a Settlement toll-free number; and (3) publication.

The long-form Notice shall be posted to the Settlement Website and will inform Claimants about pertinent Settlement terms and criteria, including opt-out dates and impact of Settlement on existing litigation, arbitration, or other proceeding.

Similarly, not later than ninety (90) calendar days after entry of the Preliminary Approval Order, or such other date as the Court may order, the claims administrator will cause the Publication Notice to be published.  The Publication Notice will be effectuated through targeted hard-copy and internet publication.

The Parties have specifically set forth the mechanisms for Class Members to object and opt-out of the Settlement, upon Notice Plan being effectuated.

**IV.     THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL**

      **A.      The Standard for Preliminary Approval**

The approval of a proposed class action settlement is a matter within the broad discretion of the trial court and will not be overturned unless the district court "clearly abused its discretion in approving the settlement." *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971).[4]  In making the determination, the Court should evaluate the settlement's fairness in its entirety. *Bennett*, 737 F.2d at 986.

Settlements of class actions prior to trial are strongly favored. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981).  The preliminary approval step requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual*, § 21.632, at 321.  At this stage, the Court need only conduct a *prima facie* review of the relief and notice provided by the Stipulation to determine whether notice should be sent to the Class Members. *Id.*  "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, *1 (S.D. Fla. May 7, 2002).  This is a minimal threshold:

> In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.  Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.
>
> In addition to examining the merits of a proposed settlement and ascertaining the views of counsel, the Court should consider other factors.
>
> Practical considerations may be taken into account.  It is often said that litigants should be encouraged to determine their respective

---

4.    Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit. *See Slater v. Energy Services Group Intern., Inc.*, No. 09-13794, 2011 WL 782023, *6, n.3 (March 8, 2011 11th Cir. 2011) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*)).

> rights between themselves.  Particularly in class action suits, there
> is an overriding public interest in favor of settlement.  It is
> common knowledge that class action suits have a well-deserved reputation as
> being most complex.  The requirement that counsel for the class be
> experienced attests to the complexity of the class action.

*Cotton*, 558 F.2d at 1330-31 (internal citations omitted); *see also Ass'n for Disabled Ams. Inc. v.*

*Amoco Oil Co.*, 21 F.R.D. 457, 466-67 (S. D. Fla. 2002).

The proposed Settlement satisfies the standard for preliminary approval.

**B.    The Proposed Settlement Was the Result of Serious, Informed, and Non-Collusive Arm's Length Negotiations**

The requirement that a settlement be fair is designed to protect against collusion among the

parties.  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which

was negotiated at arm's-length by counsel for the class, is present to the Court for approval."

*Newberg*, § 11.41; *see also In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL

330595, *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced

counsel in its evaluation of the merits of a class action settlement").

Here, the Parties did not reach a Settlement until after a substantial investigation, exchange

of information, months of negotiation, a mediation, and significant motion practice.  Indeed, the

Settlement ultimately required the assistance of an experienced mediator, David H. Lichter.  Mr.

Lichter's services only proved successful as a result of numerous telephonic sessions following a

full-day of in-person mediation at his offices.  By this time, Plaintiffs and their counsel, who have

significant experience in prosecuting complex consumer class actions, such as the instant case, had

a "clear view of the strengths and weaknesses" of their case and were in a strong position to make

an informed decision regarding the reasonableness of a potential settlement.  *See In re Warner*

*Commc'ns Sec. Litig*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*, 927

F. Supp. 962, 967 (E.D. Tex. 1996).

The fact that the Parties received the above-referenced assistance from an experienced mediator is one factor which evidences that the Settlement is not collusive. *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, \*3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, \*4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable"). Further, the nature of the subsequent negotiations between the Parties, the experience of Class Counsel, and the fair result reached are illustrative of the arm's-length negotiations that led to the Settlement and the execution of the Stipulation.

## C.    The Proposed Settlement Is Fair to Both the Kettle Action Plaintiffs and Class Members

The proposed Settlement is fair because it provides Class Members with the ability to claim up to $10.00 for purchasing the Products without providing any proof of purchase. Furthermore, the Settlement also allows for Class Members to receive up to $20.00 for purchases of the Products with proof of purchase. Moreover, all Class Members receive the benefits of the injunctive relief Defendant has agreed to. Additionally, to account for the willingness of the Kettle Action Plaintiffs stepping forward to represent the consumers and compensate them for their time and effort, the Settlement provides for modest incentive awards. These payments are $2,500 for each named plaintiff, for a maximum incentive amount of $7,500—well within the range of incentive awards commonly approved by the courts. *See Fresco v. Auto. Directions, Inc.*, No. 03-61063, 2009 U.S. Dist. LEXIS 125233, \*24, 25 (S.D. Fla. Jan. 16, 2009) (approving $15,000 incentive

awards for class representatives who actively participated in litigation); *Pinto v. Princess Cruise Lines*, 513 F. Supp.2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 incentive awards).

### D.  The Terms of the Settlement Compel Preliminary Approval

The Settlement meets the standards for preliminary approval. *Cotton*, 559 F.2d 1326. The Settlement provides economic benefits to Class Members without the risk and delays of continued litigation, trial, and appeal. The expense, complexity, and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. Litigating this class action through trial would undoubtedly be time-consuming and expensive. As with most class actions, this action is complex. *Cotton*, 559 F.2d at 1331 ("class action suits have a well-deserved reputation as being most complex"). Determining whether Defendant engaged in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices; and whether Defendant materially misrepresented the true health qualities or naturalness of the Products, would require extensive analysis by experts for both Parties. At a minimum, absent settlement, litigation would likely continue for years before the Kettle Action Plaintiffs or the Class might see a recovery. That a settlement would eliminate the delay and expenses strongly weighs in favor of approval. *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).

By reaching this Settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendant. These avenues of relief provided meaningful benefits to Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

## V.     THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Eleventh Circuit recognizes the strong public policy favoring the pretrial settlement of class action lawsuits.  *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Cotton*, 559 F.2d at 1331.  This is especially true, as recognized by courts from around the country, of nationwide settlements, such as this.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th 1998) (certifying nationwide settlement class); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 314—315 (3d Cir. 1998) (nationwide settlement classes are commonly certified). When presented with a proposed settlement, a court must determine whether the proposed settlement class satisfied the requirements for class certification under Rule 23, *Federal Rules of Civil Procedure*.  *Id.*  But in assessing those certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial").

### A.     The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)

Rule 23(a), *Federal Rules of Civil Procedure*, enumerates four prerequisites for class certification:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Each of the requirements is met by the Settlement Class.

#### 1.     Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impractical."  FED. R. CIV. P. 23(a).  The Kettle brands are popular nationally with hundreds of thousands of customers; thus, the numerosity requirement is met.

#### 2.     Commonality

The commonality requirement is met if there is at least one question of law or fact common to the members of the Class.  FED. R. CIV. P. 23(a)(2).  The commonality requirement is a "relatively light burden" that "does not that all questions of law and fact raised by the dispute be common." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citations omitted).  Rather, it "simply requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Fitzpatrick*, 263 F.R.D. at 696 (citing *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).  Commonality is satisfied where questions of law refer to standardized conduct by the defendant toward members of the proposed class.  *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991).

Here, the case involves the labeling of Defendant's Products.  The labeling, although varying in some degree as to the precise language used, is similar such that Defendant's conduct should be considered standardized.  Further, because the Kettle Action Plaintiffs and the Class Members as a whole allegedly were deceived as a result of the similar language in substantially the same manner, *i.e.*, by purchasing the Products, it is clear that the commonality requirement has been met.

### 3.    Typicality

The Rule 23(a) typicality requirement ensures that the class representative has the same interests as the class.  That is, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008).  The typicality requirement, like commonality, is not demanding. *See In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).  Similarly, typicality does not require that all putative class members share identical claims.  Rather, all that is required is that the claims of the named plaintiff have the same essential characteristics

as the class at large.  "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

Here, the Kettle Action Plaintiffs' and Class Members' claims arise from the same course of conduct (Defendant's misleading Product labels), which allegedly led to the Kettle Action Plaintiffs' and Class Members' purchases of the Products, and the resultant economic injury they allege to have suffered.

### 4.      Adequacy of Representation

Finally, Rule 23(a) requires a showing that the representative party will fairly and adequately protect the interests of the class.  The requirement has two components:  (1) the proposed representative has interest in common with, and not antagonistic to, the interests of the class; and (2) the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation.  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987).

Adequacy is plainly met in this case.  The proposed Class Representatives, the Kettle Action Plaintiffs, are not antagonistic to the claims of the Class Members, and plaintiffs' counsel are experienced in complex class actions, similar to this one.  Declarations of proposed class counsel are attached as  Exhibits B-D.

### B.      The Settlement Class Should Be Preliminarily Approved Under the Federal Rule of Civil Procedure 23(b)(3)

In addition to the requirements set forth in Rule 23(a), *Federal Rules of Civil Procedure*, in the context of the proposed Settlement, the Parties do not dispute that the Kettle Action Plaintiffs also satisfy the requirements set forth in Rule 23(b)(3), *Federal Rules of Civil Procedure*, which requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.  As set forth below,

the Kettle Actions meet Rule 23(b)(3), *Federal Rules of Civil Procedure*'s, requirements. Accordingly, this Court should conditionally certify the Class proposed by the Parties.

### 1.      Common Questions Predominate Over Individual Issues

Common questions of law or fact predominate over individual questions when the issues in the class action are subject to generalized proof that applies to the case as a whole. *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000); *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud"). Thus, in deciding whether common questions predominate under Rule 23(b)(3), the focus is generally on whether there are common liability issues that may be resolved on a class-wide basis. *See, e.g., Klay v. Humana*, 382 F.3d 1241, 1269 (11th Cir. 2004). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1354.

Predominance exists here.   The central issue for every Class Member is whether Defendant's claims that the Products were "All Natural," "Natural," "Naturally," "Reduced Fat," or "Less Fat" were likely to deceive a reasonable consumer.   Under these circumstances, the requirements of Rule 23(b)(3) are present. *See Weiner*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package).

### 2.      A Class Action Is the Superior Method to Settle This Controversy

Rule 23(b)(3), *Federal Rules of Civil Procedure*, lists four factors that the Court should consider when taking into account whether a class action is superior to other methods of adjudicating this action:   (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in a particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A)-(D). "[T]he improbability that large numbers of class members would possess the initiative to litigate individually" further compels a finding of superiority. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001); *Amchem*, 521 U.S. at 617 (same); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (same).

An assessment of the Rule 23(b)(3) "superiority" factors show that a class action is the preferred procedure in this case. The amount of damages allegedly suffered by the vast majority of Class Members is not large. *Weiner*, 255 F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Class Members to pursue their claims against Defendant on an individual basis. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338—39 (1980). Additionally, the difficulties of managing a class action are vitiated by the fact of this Settlement. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

## VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED

The threshold requirement concerning class certification is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the Class Members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it reaches the parties

affected and conveys the required information.  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104—05 (5th Cir. 1977) (the class members' "substantive claims must be adequately described [and] the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment").

The Proposed Class Notice – collectively, the publication, website, and toll-free number – easily satisfy these requirements.  *See* Stipulation § VI.  The Class Notice is written in simple terminology and includes: (1) basic information about the Action; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Defendant that could have been litigated in this Action will be released if the Class Member does not opt-out from the Settlement; (6) the names of Class Counsel and information regarding requested attorney's fees and incentive awards; (7) the Final Approval Hearing date; (8) an explanation of eligibility for appearing at the Final Approval Hearing; (9) the Settlement Website; and (10) the toll-free Settlement Phone Number.

The contents of the proposed Class Notice are more than adequate.  The Class Notice provides Class Members with sufficient information to make an informed and intelligent decision whether to participate in the Settlement.  As such, it satisfies the content requirements of Rule 23. *See In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

Additionally, the proposed plan to disseminate the Class Notice satisfies all due process requirements.  To facilitate implementation of the Class Notice and administer the claims process,

the Parties request that the Court approve Kurtzman Carson Consultants as Claim Administrator, to disseminate Class Notice after the Court preliminarily approves the Settlement.   Kurtzman Carson Consultants is a nationally recognized administrator for class action settlement and legal notice programs.

Attached as Exhibit E is the Notice Plan and Affidavit of Daniel Rosenthal, testifying that the proposed notice plan is designed to reach a minimum of 70% of class members.  Exhibit E includes copies of the publication notices as well as the long-form notice.

Notice will be published in the targeted print and online sources listed in the Notice Plan. To facilitate the claims process, Class Notice and Claim Forms will be available through the Settlement Website maintained by the Claim Administrator, on Defendant's website, and at Class Counsel's option, on Class Counsel's website.

In sum, the contents and dissemination of the proposed Class Notice constitute the best notice practicable under the circumstances and fully comply with the requirements set forth in Rule 23, *Federal Rules of Civil Procedure.*

## VII.   THE PROPOSED SCHEDULE OF EVENTS

In order to provide the broadest possible coverage, the Parties have agreed to publish Class Notice, which will contain the relevant dates for Class Members.  Lead times for placements of notice in the targeted publications run up to three months.  Thus, the Parties' proposed schedule depends upon the Court's approval and scheduling of the Final Approval Hearing.  If the Court grants the preliminary approval and sets a date for a Final Approval Hearing, the Parties can provide the Clerk with dates in accordance with the Settlement process.  Assuming the Court grants the preliminary approval by <u>December 1</u>, 2014 or earlier, the Parties propose <u>July 15</u>, 2015 as an appropriate date for the Final Approval Hearing.  Notice to the Class would begin  February 24,

2015 and would be completed by April 7, 2014,  2015 (99 days before the Final Approval Hearing), Plaintiff will file her opening papers in support of final approval and request for attorney's fees on February 20, 2015 (111 days prior to the objection/opt-out deadline), the last day for Class Members to opt-out, object or file notices of appearance would be June 11, 2015 (34 days before the Final Approval Hearing), and the reply in support of final approval would be due June 25,  , 2015 (14 days after the objection/opt-out deadline and 20 days before the Final Approval Hearing).

If preliminary approval is not granted by December 1, 2014, Plaintiff will provide dates by which these other actions will occur, based upon any changes to the dates by which the Notice Plan can be implemented.   Accordingly, the Parties request that the Court schedule a Final Approval Hearing on July 15, 2015, or as soon thereafter as the Court's schedule permits.

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests, with Defendant's consent, that the Court enter the [Proposed] Order:  (1) certifying the Class; (2) designating Plaintiffs Klacko, Surzyn, and Hall Class Representatives; (3) appointing The Law Offices of Howard W. Rubinstein, P.A., the Law Office of L. DeWayne Layfield, PLLC, and CounselOne, P.C. as Class Counsel; (4) granting preliminary approval of the Settlement; (5) approving the proposed Class Notice Plan and directing that it be implemented; and (6) scheduling the Final Approval Hearing.

## LOCAL RULE 7.1 (A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(A)(3), on October  22, 2014, counsel for Plaintiff has conferred with counsel for Defendant, who agrees with the relief requested in this Motion.

**Respectfully Submitted,**

Dated: October 22, 2014

*/s/  Howard W. Rubinstein*
Howard W. Rubinstein

Fla. Bar No.: 104108
**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
1615 Forum Place, Suite 4C
West Palm Beach, FL 33401
(800) 436-6437
(415) 692-6607 (fax)
Email: *howardr@pdq.net*

L. DeWayne Layfield
Texas Bare No.: 12065710
**Law Office of L. DeWayne Layfield**
**PLLC**
P.O. Box 3829
Beaumont, TX 77704
409-832-1891
Email: dewayne@layfieldlaw.com
(Admitted *Pro Hac Vice*)


Benjamin M. Lopatin, Esq.
Cal. Bar No.: 281730
*lopatin@hwrlawoffice.com*
THE LAW OFFICES OF
HOWARD W. RUBINSTEIN, P.A.
One Embarcadero Center
Suite 500
San Francisco, CA 94111
(800) 436-6437
(415) 692-6607 (fax)
(To be admitted *Pro Hac Vice*)


Anthony J. Orshansky
Justin Kachadoorian
**CounselOne, PC**
9301 Wilshire Blvd., Suite 650
Beverly Hills, CA 90210
(310) 277-9945
(424) 277-3727 (fax)
Email:  anthony@counselonegroup.com
        justin@counselonegroup.com
(*Pro hac vice* application pending)

*Attorneys for Plaintiff Deena Klacko*
*and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing generated by CM/ECF.

/s/ Howard W. Rubinstein
Howard W. Rubinstein

## SERVICE LIST
*Klacko v Diamond Foods, Inc.*
CASE NO. 14-cv-80005-BB
United States District Court, Southern District of Florida

Amanda L. Groves
Winston & Strawn LLP
100 North Tryon Street
Charlotte, NC 28202-1078
704-350-7700
Fax: 704-350-7800
Email: agroves@winston.com
(Admitted *Pro Hac Vice*)

Dora Faye Kaufman
Liebler, Gonzalez & Portuondo, P.A.
44 West Flagler Street
25th Floor
Miami, FL 33130
305-379-0400
Fax: 305-379-9626
Email: dfk@lgplaw.com

James Randolph Liebler
Liebler Gonzalez & Portuondo PA
44 W Flagler Street

27

25th Floor
Miami, FL 33130-4329
305-379-0400
Fax: 379-9626
Email: jrl@lgplaw.com

Joanna C. Wade
Winston & Strawn LLP
100 N Tryon Street
Charlotte, NC 28202-1078
704-350-7700
Fax: 704-350-7800
Email: jwade@winston.com
(Admitted *Pro Hac Vice*)

# EXHIBIT

# A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:14-cv-80005

| | |
|---|---|
| DEENA KLACKO, individually and on behalf of all others similarly situated, | : |
| | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : |
| | : |
| DIAMOND FOODS, INC., a California Corporation | : |
| | : |
| | : |
| *Defendant.* | : |

## STIPULATION OF CLASS ACTION SETTLEMENT

The undersigned parties (collectively, the "Parties," and each separately a "Party"), by and through their attorneys, have entered into the following Stipulation of Class Action Settlement (the "Agreement"), subject to approval of this Court.

**I.    RECITALS**

This Agreement is made and entered into by Deena Klacko ("Klacko"), Dominika Surzyn ("Surzyn"), and Richard Hall ("Hall"), on behalf of themselves and each of the Settlement Class Members (collectively, "Plaintiffs" or the "Settlement Class"), and Defendant Diamond Foods, Inc. ("Diamond Foods" or "Defendant"). Capitalized terms used herein are defined in Section II herein or indicated in parentheses elsewhere in the Agreement. Subject to Court approval as required by applicable Federal Rules of Civil Procedure, and as provided herein, the Parties stipulate and agree that, in consideration for the promises and covenants set forth in the Agreement and upon entry by the Court of a Final Judgment and Order Approving Settlement and the occurrence of the Effective Date, the Action shall be settled and compromised upon the terms and conditions contained herein.

A.    Diamond Foods is a food company engaged in processing, marketing, and

distributing food products under the Kettle Brand® name.

B.      On January 3, 2014, Plaintiff filed a putative class action in the United States District Court for the Southern District of Florida, entitled *Deena Klacko v. Diamond Foods, Inc.*, Case No. 9:14-cv-80005-KAM (the "Action").

C.      Other cases arising out of at least some of the same facts and circumstances as alleged in the Action also were filed and include *Dominika Surzyn v. Diamond Foods, Inc.*, No. 4:14-cv-136, filed in the United States District Court for the Northern District of California on January 9, 2014 (the "*Surzyn* Action"); and *Richard Hall v. Diamond Foods, Inc.*, No. GCG-14-538387, filed in the San Francisco County, California Superior Court on April 2, 2014, removed to the United States District Court for the Northern District of California on May 9, 2014 and assigned Case No. 3:14-cv-02148 ("the *Hall* Action").

D.      The Parties have engaged in motion practice in the Action, the *Surzyn* Action, and the *Hall* Action.

E.      On June 27, 2014, Klacko, Surzyn, and Diamond Foods participated in a full-day mediation with David H. Lichter but were unable to reach an agreement at that time. Since then, the Parties have continued to engage in extensive settlement negotiations, including through telephone calls with the mediator.   At all times, the Parties' negotiations were adversarial, non-collusive, and at arms' length.   Ultimately, and with the mediator's assistance, the Parties reached a settlement in principle, which settlement is now fully memorialized in this Agreement.

F.      Plaintiffs are members of the Settlement Class.

G.      Klacko is represented by Benjamin M. Lopatin, Esq. of The Law Offices of Howard W. Rubinstein, P.A., with Howard W. Rubenstein serving as local counsel, and L. DeWayne Layfield, Esq. of the Law Office of L. DeWayne Layfield, PLLC.   Surzyn is represented by Benjamin M. Lopatin, Esq. and Hall is represented by Anthony J. Orshansky

and Justin Kachadoorian of CounselOne, P.C., 9301 Wilshire Boulevard, Suite 650, Beverly Hills, CA 90210. Lopatin, Layfield, Orshansky, and Kachadoorian are referred to as "Class Counsel." Class Counsel have conducted a thorough investigation into the facts and law relating to the Action, the *Surzyn* Action, and the *Hall* Action (collectively, the "Kettle Actions") and have analyzed and evaluated the merits of the Parties' contentions. Class Counsel also have evaluated the risks, delay, and difficulties involved in establishing liability, and in the event of liability, a right to recovery in excess of that offered by this settlement and the likelihood that the Kettle Actions could be further protracted and expensive. Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Kettle Actions is in the best interests of the Settlement Class.

H.     Diamond Foods denies any and all wrongdoing of any kind whatsoever, and denies any liability to Klacko, Surzyn, Hall, or to the Settlement Class. In no event shall this Agreement, or any part thereof, be construed or deemed to be evidence of an admission or concession on the part of Diamond Foods of any fault or wrongdoing of any kind, nor an admission or concession of liability of any kind, whether for damages or equitable or declaratory relief or any other form of legal remedy, or a concession of any infirmity in any of the defenses that have been asserted or could have been asserted in the Kettle Actions. Diamond Foods, however, considers it desirable that all claims against it be settled on the terms hereinafter set forth in order to avoid further expense, inconvenience, and delay, to dispose of the Kettle Actions and to put to rest all controversy concerning the claims which have been or could have been asserted in the Kettle Actions. Therefore, for settlement purposes only, Diamond Foods, while continuing to deny any and all allegations of liability, has agreed to settle and terminate the Kettle Actions against it as set forth herein.

I.     It is the intention and desire of Klacko, Surzyn, Hall, and Diamond Foods to

compromise, resolve, dismiss, and release all allegations and claims for damages or other relief, except for personal injury, concerning the Products that have been or could have been brought against Diamond Foods or the Released Parties, or any of them, in the Kettle Actions and in any action filed, litigation pending, or claim pursued by any Person or entity who is a member of the Settlement Class, related to the Labeling, sale, marketing, or advertising of the Products.

J.      This Agreement is entered into by and among the Parties, by and through their respective attorneys and representatives, and the Parties agree that (1) upon approval of the Court after the hearing(s) provided for in the Agreement, the Kettle Actions and all Released Claims shall be settled and compromised as between Klacko, Surzyn, Hall, and the Settlement Class on the one hand, and Diamond Foods on the other hand; (2) upon Court approval of the Agreement, the [Proposed] Final Judgment and [Proposed] Order Approving Settlement, substantially in the form to be agreed upon by the Parties, shall be entered dismissing the Action with prejudice and releasing all Released Claims, as defined herein, against Diamond Foods and all Released Parties, all on the following terms and conditions:

## II.     DEFINITIONS

A.      As used in this Agreement, the following capitalized terms have the meanings specified below:

1.      "Action" means *Deena Klacko v. Diamond Foods, Inc.*, filed January 3, 2014 in the United States District Court for the Southern District of Florida and assigned Case No. 9:14-cv-80005.

2.      "Agreement" means this Stipulation of Class Action Settlement.

3.      "Approved Claim" means a claim approved by the Claims Administrator according to the claims criteria in the Claim Administration Protocols that will be agreed upon Parties and submitted to the Court in connection with the

Motion for Preliminary Approval of Settlement.

      4.    "Award" means the monetary relief obtained by Settlement Class Members pursuant to Section IV.C. of the Agreement.

      5.    "Claim" means a request for relief pursuant to Sections IV.C. and V.B. of this Agreement submitted by or on behalf of a Settlement Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

      6.    "Claimant" means a Settlement Class Member who submits a claim for benefits as described in Sections IV.C. and V.B. of this Agreement.

      7.    "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement, substantially in the form to be agreed upon by the Parties and submitted to the Court in connection with the Motion for Preliminary Approval of Settlement, and that is discussed in Section V.B. of this Agreement.

      8.    "Claims Administrator" means the independent company agreed by the Parties and approved by the Court to provide the Class Notice and to administer the claims process.

      9.    "Claims Administration Expenses" means the expenses incurred by the Claims Administrator in administering the Notice Plan and processing all Claims made by Settlement Class Members, in an amount not to exceed $300,000.00.

      10.    "Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, the Final Approval Order, the Class Notice, on the Settlement Website, and on the front of the Claim Form, and shall be fourteen (14) calendar days following the Final

Approval Hearing.

11.     "Class Counsel" means the following attorneys of record for Klacko, Surzyn, and/or Hall:

> Benjamin M. Lopatin, Esq.
> lopatin@hwrlawoffice.com
> One Embarcadero Center, Suite 500
> San Francisco, CA 94111
>
> L. DeWayne Layfield, Esq.
> dewayne@layfieldlaw.com
> Law Office of L. DeWayne Layfield, PLLC
> P.O. Box 3829
> Beaumont, TX 77704
>
> Anthony J. Orshansky
> anthony@counselonegroup.com
> Justin Kachadoorian
> justin@counselonegroup.com
> CounselOne, P.C.
> 9301 Wilshire Boulevard, Suite 650
> Beverly Hills, CA 90210

12.     "Class Notice" means, collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement, and that is discussed in Section VI.

13.     "Class Representatives" means Deena Klacko, Dominika Surzyn, and Richard Hall.

14.     "Common Fund" means the Three Million and No/100 Dollars ($3,000,000.00) set aside as part of the Settlement Consideration, which is described more fully in Section IV.

15.     "Complaint" means the First Amended Class Action Complaint filed in the Action by Klacko on May 8, 2014.

16.     "Court" means the United States District Court for the Southern District of Florida.

17. "Defendant" means Diamond Foods, Inc., and includes, without limitation, all related entities including but not limited to parents, subsidiaries, agents, employees and assigns, predecessors, successors, and affiliates.

18. Defendant's Counsel means the following attorneys of record for Defendant:

Amanda L. Groves, Esq.
agroves@winston.com
Sean D. Meenan, Esq.
smeenan@winston.com
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111

Joanna C. Wade, Esq.
jwade@winston.com
Winston & Strawn LLP
100 North Tryon Street, 29th Floor
Charlotte, NC 28202

19. "Effective Date" means either: (a) the date thirty-five (35) calendar days after the entry of the Final Judgment and Order Approving Settlement, if no timely motions for reconsideration and/or no appeals or other efforts to obtain review have been filed; or (b) in the event that an appeal or other effort to obtain review has been initiated, the date thirty-five (35) calendar days after such appeal or other review has been finally concluded and is no longer subject to review, whether by appeal, petitions for rehearing, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise.

20. "Fee Award" means the amount of attorneys' fees and reimbursement of costs, from the Common Fund, awarded by the Court to Class Counsel for all of the past, present, and future attorneys' fees, costs (including court costs), expenses, and disbursements incurred by them and their experts, staff, and consultants in connection with the Kettle Actions, up to a maximum of Seven Hundred Seventy-Five Thousand

and No/100 Dollars ($775,000.00).

21.     "Final Approval Hearing" means the hearing to be conducted by the Court on such date as the Court may order to determine of the fairness, adequacy, and reasonableness of the Settlement in accordance with applicable jurisprudence and to determine the Fee Award and any Incentive Award.  The Parties shall request the Court set the Final Approval Hearing no earlier than sixty-five (65) calendar days after the Notice Date or one hundred (100) calendar days after Preliminary Approval.

22.     "Final Judgment and Order Approving Settlement" means an order and judgment entered by the Court:

a.     Giving final approval to the terms of this Agreement as fair, adequate, and reasonable;

b.     Providing for the orderly performance and enforcement of the terms and conditions of the Stipulation;

c.     Dismissing the Action with prejudice;

d.     Discharging the Released Parties of and from all further liability for the Released Claims to the Releasing Parties; and

e.     Permanently barring and enjoining the Releasing Parties from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in any state court, any federal court, before any regulatory authority, or in any other tribunal, forum, or proceeding of any kind, against the Released Parties that asserts any Released Claims.

f.     The actual form of the Final Judgment and Order Approving Settlement entered by the Court may include additional provisions as the

Court may direct that are not inconsistent with this Agreement, and will be substantially in the form to be agreed upon by the Parties.

23.    "Hall" means the plaintiff in the *Hall* Action, Richard Hall.

24.    "*Hall* Action" means *Richard Hall v. Diamond Foods, Inc.*, No. GCG-14-538387, filed in the San Francisco County, California Superior Court on April 2, 2014, and removed to the United States District Court for the Northern District of California on May 9, 2014 and assigned Case No. 3:14-cv-02148.

25.    "Incentive Award" means any award sought by application to and approved by the Court that is payable to the Class Representatives, Klacko, Surzyn, and Hall, from the Common Fund, up to a maximum, total amount of Seven Thousand Five Hundred and No/100 Dollars ($7,500.00) from the Common Fund, to compensate them for their efforts in bringing the Kettle Actions and achieving the benefits of this Agreement on behalf of the Settlement Class.

26.    "Kettle Actions" means *Deena Klacko v. Diamond Foods, Inc.*, filed January 3, 2014 in the United States District Court for the Southern District of Florida and assigned Case No. 9:14-cv-80005; *Dominika Surzyn v. Diamond Foods, Inc.*, No. 4:14-cv-136, filed in the United States District Court for the Northern District of California on January 9, 2014; and *Richard Hall v. Diamond Foods, Inc.*, No. GCG-14-538387, filed in the San Francisco County, California Superior Court on April 2, 2014, and removed to the United States District Court for the Northern District of California on May 9, 2014 and assigned Case No. 3:14-cv-02148.

27.    "Labeling" means the display of written, printed, or graphic matter upon the packaging of the Products, as well as written, printed, or graphic matter designed for use in the distribution or sale of the Products, including information found on Diamond Foods'  or its customers' or affiliates' websites supplementing,

describing, explaining, and/or promoting the Products.

28. "Motion for Preliminary Approval of Settlement" means the motion, to be filed by Plaintiff, for Preliminary Approval of this Agreement and includes all supporting papers.

29. "Notice Date" means the last date, set by the Court, on which notice is published in a magazine or newspaper pursuant to the Notice Plan described in Section VI. The Notice Date shall be no later than ninety (90) calendar days after the Court enters the Preliminary Approval Order or such other date as the Court may order.

30. "Notice Plan" means the plan for dissemination of the Class Notice to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

31. "Objection Deadline" means the date by which Settlement Class Members must file objections, if any, to the Settlement in accordance with Section VIII.A.

32. "Opt-Out Deadline" means the date, to be set by the Court, by which a Request For Exclusion must be filed with the Claims Administrator in order for a Settlement Class Member to be excluded from the Settlement Class in accordance with Section VIII.C.

33. "Other Counsel" means all attorneys representing any Settlement Class Member.

34. "Party" or "Parties," unless otherwise specified, means Plaintiff, Surzyn, and/or Diamond Foods.

35. "Payment Distribution Date" means the date on which the Claims Administrator mails checks to Settlement Class Members as payment for Approved

Claims, as set forth in Section V.B.7.

36.    "Person" means a natural person, individual, corporation, partnership, association, or any other type of legal entity.

37.    "Plaintiff" means Deena Klacko.

38.    "Preliminary Approval Order" means the order to be entered by the Court, substantially in the form to be agreed upon by the Parties, conditionally certifying the Settlement Class, preliminarily approving the Settlement, setting the date of the Final Approval Hearing, appointing Class Counsel as counsel for the Settlement Class, approving the Notice Plan, Class Notice, and Claim Form, and setting dates for the Claims Deadline, Opt-Out Deadline, Objection Deadline, and Notice Date.

39.    "Products" means Diamond Foods Kettle Brand® products labeled as "All Natural," "Natural," "Naturally," "Made with All Natural Ingredients," "Natural Promise," or any other derivation of "natural,"    "nothing artificial," "no preservatives," "non-GMO," "non-GMO ingredients," "only natural colors and flavors," "natural flavors," "A Natural Obsession," "real food ingredients," "Reduced Fat," and/or "__% Less Fat."

40.    "Proof of Purchase" means a receipt or other documentation from a third-party commercial source reasonably establishing the fact and date of purchase of a Product during the Class Period in the United States.

41.    "Release" means the release set forth in Section IX of this Agreement.

42.    "Released Claims" means any individual, class, representative, group or collective action, claim, liability, right, demand, suit, matter, obligation, damage, loss, action, or cause of action, of every kind and description that a Releasing Party has or may have, including assigned claims, whether known or Unknown, asserted or

un-asserted, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted under any body of law by the Releasing Party either in a court or any other judicial or other forum, regardless of legal theory or relief claimed, and regardless of the type of relief or amount of damages claimed, against any of the Released Parties arising from, or in any way relating to Labeling, sales, marketing, or advertising, regardless of medium, of any of the Products, including but not limited to any claim that the Labeling is false or misleading in any way. For purposes of this Agreement, the term "Unknown Claim" means any all Released Claims that any member of the Settlement Class, or anyone acting on behalf of or in their interest, does not know or suspect to exist against any of the Released Parties which, if known, might have affected his or her decision regarding the settlement of the Action. Notwithstanding the provisions of this paragraph or of any other paragraph in this Agreement, this Agreement shall not be deemed to release any claim that a Releasing Party has or may have for personal injury.

     43.    "Released Party" means Diamond Foods and to the maximum extent permitted by law any entity that manufactured, tested, inspected, audited, certified, purchased, distributed, licensed, transported, marketed, advertised, donated, promoted, sold, or offered for sale at wholesale or retail any Products, or contributed to any Labeling, advertising packaging, ingredient, or component thereof, including all of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, customers, subrogees, and assigns. It is expressly understood that, to the extent a Released Party is not a Party to the Agreement, all such Released Parties are intended third-party beneficiaries of the

Agreement.

44.   "Releasing Party" means Klacko, Surzyn, Hall, and each Settlement Class Member and any Person claiming by or through each Settlement Class Member, including but not limited to, spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or affiliates.

45.   "Request For Exclusion" means the written communication that must be filed with the Claims Administrator and postmarked on or before the Opt-Out Deadline by a Settlement Class Member who wishes to be excluded from the Settlement Class.

46.   "Residual Amount" means the amount, if any, calculated by subtracting from $3,000,000.00 (a) total Claims Administration Expenses; (b) the Fee Award; (c) the Incentive Award; and (d) the total compensation paid to Settlement Class Members in satisfaction of Approved Claims.

47.   "Settlement" means the terms, transactions, rights, obligations, conditions, Release, and other matters contemplated by, described in, or provided by this Agreement.

48.   "Settlement Class" and "Settlement Class Member(s)" each means all Persons who, for personal or household use, purchased the Products in the United States from January 3, 2010 through and including the Notice Date. Excluded from the Settlement Class are: (a) all Persons who purchased or acquired the Products for resale; (b) Diamond Foods and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (c) any Person who files a valid, timely Request for Exclusion; (d) federal, state, and local governments (including all agencies

and subdivisions thereof, but excluding employees thereof); and (e) the judges to whom the Kettle Actions are assigned and any members of their immediate families.

49.    "Settlement Class Period" means the period January 3, 2010 through and including the Notice Date.

50.    "Settlement Consideration" means the consideration exchanged by and between Diamond Foods and the Settlement Class as set forth in this Agreement.

51.    "Settlement Website" means the website to be created for this Settlement that will include information about the Action, the Settlement, and relevant documents and electronic and printable forms relating to the Settlement, including the Claim Form which can be submitted online or printed and mailed. The Settlement Website shall be activated no later than ten (10) calendar days after the entry of the Preliminary Approval Order and shall remain active until the Effective Date or such later date as may be agreed to by Class Counsel and Defendant's Counsel.

52.    "Surzyn" means the plaintiff in the *Surzyn* Action, Dominika Surzyn.

53.    "*Surzyn* Action" means *Dominika Surzyn v. Diamond Foods, Inc.*, No. 4:14-cv-136, filed in the United States District Court for the Northern District of California on January 9, 2014.

B.    All references herein to sections and paragraphs refer to sections and paragraphs of this Agreement, unless otherwise expressly stated in the reference.

C.    Capitalized terms used in this Agreement, but not defined above, shall have the meaning ascribed to them in this Agreement.

## III.   CONDITIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY.

A.    This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute,

be construed as, or be admissible in evidence as an admission of: (1) the validity of any claim or allegation by Klacko, Surzyn, Hall, or any Settlement Class Member, or of any defense asserted by Diamond Foods, in the Kettle Actions or any other action or proceeding; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Party, Settlement Class Member or their respective counsel; or (3) the propriety of class certification in the Kettle Actions or any other action or proceeding.

      B.     For the sole and limited purpose of Settlement only, the Parties stipulate to and request that the Court certify the Settlement Class, which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as, an admission of any kind or be used for any purpose in the Kettle Actions or in any other pending or future action.  Moreover, the Court's certification of the Settlement Class shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement, and shall not be considered the law of the case, *res judicata*, or collateral estoppel in the Kettle Actions or any other proceeding unless and until the Court enters a Final Judgment and Order Approving Settlement, and regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.  In the event the Court does not enter a Final Judgment and Order Approving Settlement, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Settlement Class for settlement purposes shall be null and void and the Court's certification order shall be vacated,

and thereafter no class or classes will remain certified; provided, however, that Klacko, Surzyn, Hall, and Class Counsel may thereafter seek certification of the same or a new class or classes before this Court and the courts in the *Surzyn* Action and *Hall* Action, and Diamond Foods may oppose such certification on any available grounds. Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any class in this Court or any other court if the Court does not enter a Final Judgment and Order Approving Settlement, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

C.   Subject to Court approval and for settlement purposes only, Diamond Foods consents to the appointment of Klacko, Surzyn, and Hall as Class Representatives of the Settlement Class and to the appointment of Benjamin M. Lopatin, Esq. of The Law Offices of Howard W. Rubinstein, P.A.; L. DeWayne Layfield, Esq. of the Law Office of L. DeWayne Layfield, PLLC; and Anthony J. Orshansky and Justin Kachadoorian of CounselOne, P.C. as Class Counsel.

D.   Upon final approval of the Settlement by the Court, the Final Judgment and Order Approving Settlement, substantially in the form agreed by the Parties, will be entered by the Court, providing for the dismissal of the Action with prejudice. The Parties in the *Surzyn* Action and the *Hall* Action agree to request that until that time those cases be stayed. Surzyn also agrees to file a motion for dismissal with prejudice of the *Surzyn* Action within five (5) calendar days after the Effective Date, and Hall agrees to file a motion for dismissal with prejudice of the *Hall* Action within five (5) calendar days after the Effective Date.

IV.   **SETTLEMENT CONSIDERATION**

A.   Injunctive Relief. Diamond Foods will implement the following changes with respect to the Products within one (1) calendar year after entry of the Final Judgment and

Order Approving Settlement:

1.     Diamond Foods will provide its "Natural Promise" criteria to its ingredient suppliers and require those suppliers to verify that their ingredients comply with the "Natural Promise";

2.     Diamond Foods will create and maintain a database to track ingredients and ingredient supplier verifications;

3.     Diamond Foods will conduct audits of its ingredient suppliers at least annually to confirm their compliance with the "Natural Promise";

4.     For Products labeled "Reduced Fat" or "Less Fat," Diamond Foods will place the comparison statement at the location on the packaging where the "Reduced Fat" or "Less Fat" claim is most prominently displayed; and

5.     Diamond Foods will agree to employ reasonable efforts to obtain Non-GMO Project approval for Products that are practically eligible for Non-GMO Project consideration.

6.     Diamond Foods will provide reports to the Court (a) at the end of the six (6) month period following entry of the Final Judgment and Order Approving Settlement and (b) one (1) calendar year following Final Judgment and Order Approving Settlement, regarding its compliance with the injunctive relief provisions contained in this Section IX.A. of this Agreement.

B.     Nothing in this Agreement shall preclude Diamond Foods from making further changes to any of its product labels or marketing: (1) that Diamond Foods reasonably believes are necessary to comply with any statute, regulation, or other law of any kind; (2) that are necessitated by product changes and/or to ensure that Diamond Foods provides accurate product descriptions; or (3) that are more detailed than those required by this Agreement.

C.      Monetary Relief for Settlement Class Members.  In addition to all Settlement Consideration set forth in this Agreement, Settlement Class Members who timely file Claims by the Claims Deadline and who provide all required proof or documentation and comply with all other conditions and requirements specified herein shall have the right to obtain relief as detailed below:

1.      WITHOUT PROOF OF PURCHASE REQUIRED.  Settlement Class Members who, in accordance with the terms of this Agreement, submit a Claim Form for up to and including ten (10) Products purchased per household during the Settlement Class Period shall be entitled, as of the Effective Date, to a check in the amount of One and No/100 Dollars ($1.00) per Product.  The maximum amount that will be paid to any one Claimant household without Proof of Purchase will be Ten and No/100 Dollars ($10.00).

2.      WITH PROOF OF PURCHASE REQUIRED.  Settlement Class Members who, in accordance with the terms of this Agreement, submit a Claim Form for more than ten (10) Products purchased per household during the Settlement Class Period must provide valid Proof of Purchase for all Products claimed that exceed ten (10).  Diamond Foods shall have the right, but not the obligation, to inspect submitted Proofs of Purchase and evaluate their adequacy and trustworthiness.  The maximum number of Products for which any Settlement Class Member may claim with Proof of Purchase is twenty (20).  The maximum amount that will be paid to any one Claimant household with Proof of Purchase will be Twenty and No/100 Dollars ($20.00).

3.      Guarantee and Cap.  Diamond Foods guarantees to satisfy all valid Claims made, with a cap on cash payments to the Settlement Class of Two Million Seven Hundred Fifty Thousand and No/100 Dollars ($2,750,000.00).  If the total of Approved Claims exceeds this guaranteed cap, then the Claims Administrator shall

calculate and pay a pro rata reduction of the amount due each Settlement Class Member, such that $2,750,000.00 will satisfy all Approved Claims.   For the avoidance of doubt, as an example, if Claims Administration Expenses total $300,000.00, the Fee Award is $775,000.00, Incentive Awards total $7,500.00, and Approved Claims are $2,800,000, then Diamond Foods' cash payments for this Settlement would be $300,000+775,000+7,500+2,750,000, or $3,832,500.00.   As another example, if Claims Administration Expenses total $300,000.00, the Fee Award is $775,000.00, Incentive Awards total $7,500.00, and Approved Claims are $1,500,000.00, then Diamond Foods' cash payments for this Settlement would be $300,000+775,000+7,500+1,500,000, or $2,582,500.00.

    4.    **Residual Amount.**  Once Claims Administration Expenses, the Fee Award, the Incentive Award, and all Approved Claims are paid, the Claims Administrator shall calculate the Residual Amount, if any.  Diamond Foods shall distribute to Feeding America free Diamond Foods products with a retail value equaling any Residual Amount.   Such distribution, if any, shall be made within eighteen (18) months following the Payment Distribution Date.  Upon the request of Class Counsel, Diamond Foods will provide Class Counsel with updates on the status and progress of the donations referenced in this Section.  In addition, if requested by the Court, Diamond Foods shall submit a declaration to the Court sufficiently detailing any donations that have been made pursuant to this Section and how those donations met the Residual Amount.

## V.    CLAIMS DEADLINE, CLAIM FORMS, AND CLAIMS ADMINISTRATION

    A.    **Retention of Claims Administrator.**  Diamond Foods shall, subject to the approval of Class Counsel and the Court, retain a Claims Administrator to help implement the terms and conditions of the Agreement.  The Parties agree that the

Claims Administrator shall be approved by the Court, shall be an agent of the Court, and shall be subject to the Court's supervision as circumstances may require. Diamond Foods will pay Claims Administration Expenses, up to a maximum of Three Hundred Thousand and No/100 Dollars ($300,000.00), regardless of whether the Settlement is finally approved.  In no event shall Diamond Foods pay any Claims Administration Expenses that exceed $300,000.00.  The Claims Administrator shall assist with various administrative tasks, including, without limitation:

      1.     Arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

      2.     Handling returned mail not delivered to Settlement Class Members;

      3.     Making any additional mailings required under the terms of this Agreement or by law;

      4.     Answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel;

      5.     Receiving and maintaining Requests for Exclusion;

      6.     Establishing the Settlement Website;

      7.     Establishing the toll-free informational telephone number described in Section V.D.

      8.     Receiving and processing Claims and distributing payments to Settlement Class Members in accordance with the Claims Protocol to be agreed upon by the Parties and approved by the Court; and

      9.     Otherwise assisting with administration of the Agreement.

B.     Claims Process.

      1.     All Claims must be submitted with a Claim Form and received by the Claims Administrator or postmarked by the Claims Deadline.  The Claims Deadline

shall be fourteen (14) calendar days following the Final Approval Hearing. The Claims Deadline shall be clearly set forth in the Class Notice, the Settlement Website, and on the Claim Form. Settlement Class Members who fail to submit a Claim Form by the Claims Deadline shall not be eligible for an Award.

2.      The Claim Form will be available on the Settlement Website. The Claim Form will be mailed to Settlement Class Members upon request by calling or writing to the Claims Administrator. Settlement Class Members may submit their completed and signed Claim Forms to the Claims Administrator by mail or online, postmarked or submitted online, on or before the Claims Deadline.

3.      Claim Forms must be signed by the Claimant by hand or electronically under penalty of perjury. Such Claim Form shall be approved by the Court and will be substantially in the form to be agreed upon by the Parties and must include the following information and/or affirmations:

a.      Settlement Class Member name, address, and telephone number;

b.      Identification of the quantity and type of Product for which the Claim is made;

c.      Affirmation that the Products were purchased in the United States during the Settlement Class Period for personal or household use, including the identify of the merchant from which the Products were purchased; and

d.      Proof of Purchase for all Products claimed that exceed ten (10).

4.      Claims submitted for more than ten (10) Products shall include Proof of Purchase and the Claim Form shall conspicuously notify Settlement Class Members that failure to include Proof of Purchase for such Claims will result in the

Claim being rejected for Products in excess of ten (10), and that submission of false or fraudulent Claims will result in the Claim being rejected in its entirety. Submission of multiple Claim Forms from the same household or by the same Settlement Class Member or Claimant will be subject to audit by the Claims Administrator for validity, as will any other Claims the Claims Administrator so chooses, in accordance with standard and reasonable claims administration procedures.

5. The Claims Administrator shall administer the monetary relief for Settlement Class Members provided by this Agreement by resolving Claims in cost-effective and timely manner consistent with the terms of this Agreement and the orders of the Court. The Claims Administrator shall maintain records of all Claims submitted until at least three hundred sixty-five (365) calendar days after the last of the Claims payment checks to Settlement Class Members is issued and such records will be made available upon request to Class Counsel and Defendant's Counsel. Upon request by Class Counsel or Defendant's Counsel, the Claims Administrator shall provide reports totaling: (a) number of Claims submitted; (b) number of Products claimed; (c) number of Claims for more than ten (10) Products; and (d) number of Claims for more than ten (10) products for which Proofs of Purchase have been submitted, and such other information as reasonably required for Diamond Foods or Class Counsel to exercise their rights under this Agreement. Claim Forms and supporting documentation will be kept confidential by the Claims Administrator and will be provided only to the Court upon request, and to Class Counsel and Defendant's Counsel to the extent necessary to resolve issues relating to this Agreement. The Claims Administrator also shall provide such reports and such other information as the Court may require.

6. The Claims Administrator will use adequate and customary standards

to prevent the payment of fraudulent Claims and to pay only legitimate Claims. The Claims Administrator shall make all determinations concerning the eligibility and amount of payment for submitted Claims, and mail notice of rejection to Settlement Class Members whose Claims have been rejected in whole or in part. In the event a Settlement Class Member disagrees with the determination, the Settlement Class Member may send a letter to the Claims Administrator requesting reconsideration of the rejection and the Claims Administrator shall reconsider such determination, which reconsideration shall include consultation with Class Counsel and Defendant's Counsel. The Parties shall meet and confer regarding resolution of those Claims and, if unable to agree, shall submit those Claims to the Court for determination. As to any Claims being determined by the Court pursuant to this paragraph, the Claims Administrator shall send payment or a letter explaining the Court's rejection of the Claim, within thirty-five (35) days of the Court's determination.

7.     Payment of Claims.   Approved Claims will be paid directly to Settlement Class Members by first class mail. All checks issued to Settlement Class Members under this Agreement shall issue within thirty-five (35) calendar days of the Effective Date (the "Payment Distribution Date") and will state that they must be cashed within one hundred twenty (120) calendar days from the date issued or they will become void. The amount of any checks that are not cashed within 120 calendar days from the date of issue or that are returned to the Claims Administrator as undeliverable after mailing to the Settlement Class Member at the address provided by the Settlement Class Member on the Claim Form, will cease to be the property of those Settlement Class Members and shall be added to the Residual Amount. The Claims Administrator shall provide Defendant's Counsel and Class Counsel with an identification of the checks returned as undeliverable or not cashed within 120 days of

the date issued.

C.     Settlement Website.  The Claims Administrator shall cause the Settlement Website to be created.  The Settlement Website shall contain Claims information and relevant documents, including but not limited to, the Claims Deadline, the Opt-Out Deadline, and the Objection Deadline; the Class Notice; a downloadable Claim Form; orders of the Court pertaining to the Settlement; this Agreement; and a toll-free telephone number and address to contact the Claims Administrator by email and U.S. Mail.  The Settlement Website shall also provide the facility for Settlement Class Members to submit  Claims online.  The Settlement Website shall be rendered inactive after the Claims Deadline and the time to terminate this Agreement as set forth in Section X.IV. have passed.  The Parties shall use reasonable efforts to agree on all information and documents to be posted on the Settlement Website.

D.     Toll-Free Informational Number.  The Claims Administrator shall cause a toll-free telephone number to be created for Settlement Class Members to receive information about the Settlement.  The Parties shall meet and confer regarding a set of frequently asked questions and answers to be used by the Claims Administrator when answering Settlement Class Members' questions.  Any disputes between the Parties as to those FAQs shall be resolved by the Claims Administrator.

## VI.     NOTICE TO THE SETTLEMENT CLASS

A.     No later than ninety (90) calendar days after entry of the Preliminary Approval Order or such other date as the Court may order, the Claims Administrator shall cause the Class Notice to be disseminated to Settlement Class Members in accordance with the Notice Plan to be agreed upon by the Parties.  The Parties acknowledge and agree that notice pursuant to the Notice Plan is the best notice that is practicable under the circumstances of this case to effect notice to the Settlement Class Members and that the Notice Plan comports with the requirements of due process.

B.      Long-Form Notice.  The Long-Form Notice shall be substantially in the form to be agreed upon by the Parties and approved by the Court, and shall be posted on the Settlement Website and shall remain available until the Effective Date or such later date as may agreed to by Class Counsel and Defendant's Counsel.  The Long-Form Notice shall set forth the following information:

1.      Inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive the relief under the proposed Settlement;

2.      Contain a short, plain statement of the background of the Kettle Actions and the Settlement;

3.      Describe the Settlement Consideration outlined by this Agreement;

4.      Explain the impact of the Settlement on any existing litigation, arbitration, or other proceeding;

5.      State that any relief to Settlement Class Members is contingent upon the Court's final approval of the Settlement;

6.      Inform Settlement Class Members that they may exclude themselves from the Settlement Class by submitting a Request for Exclusion postmarked no later than the Opt-Out Deadline;

7.      State that any Settlement Class Member who has not submitted a Request for Exclusion by the Opt-Out Deadline may, if he or she desires, object to the proposed Settlement by filing and serving a written statement of objection postmarked no later than the Objection Deadline;

8.      State that any Settlement Class Member who has filed and served written objections to the proposed Settlement may, if he or so requests, appear at the Final Approval Hearing, either personally or through counsel;

9.      State that any Final Judgment and Order Approving Settlement entered in the Action shall include, and be binding on, all Settlement Class Members who have not timely submitted a Request for Exclusion, even if they have objected to the proposed Settlement and even if they have any other claim, lawsuit, or proceeding pending against Diamond Foods;

10.     Explain the terms of the Release; and

11.     Provide other information necessary or judicially required for Settlement Class Members to exercise or choose not to exercise their due process rights.

C.      Publication Notice.  Not later than ninety (90) calendar days after entry of the Preliminary Approval Order, or such other date as the Court may order, the Claims Administrator shall cause the Publication Notice, substantially in the form to be agreed upon by the Parties and approved by the Court, to be published.  The Publication Notice shall also be posted on the Settlement Website until the Effective Date, or such later date as may be agreed to by Class Counsel and Defendant's Counsel.

D.      The Claims Administrator shall provide the Court with a declaration attesting that the Class Notice was disseminated pursuant to the Notice Plan.

## VII.   NOTICE UNDER THE CLASS ACTION FAIRNESS ACT

A.      The Class Action Fairness Act of 2005 ("CAFA") requires Diamond Foods to inform certain federal and state officials about this Settlement.  *See* 28 U.S.C. § 1715.1.

B.      Under the provisions of CAFA, the Claims Administrator, on behalf of Diamond Foods, will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Settlement with the Court.  *See* 28 U.S.C. § 1715(b).

C.      The Parties agree that the Diamond Foods is permitted to provide CAFA notice as required by law and that any notice by Diamond Foods shall be done to effectuate

the Settlement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

## VIII.   OBJECTIONS AND REQUESTS FOR EXCLUSION

A.      Objections.  Any Settlement Class Member who intends to object to the Settlement must do so no later than thirty (30) calendar days before the Final Approval Hearing (the Objection Deadline).  In order to object, the Settlement Class Member must file with the Court, and provide a copy to Class Counsel and Defendant's Counsel, a document that includes:

1.      The name, address, telephone number, and, if available, the email address of the Person objecting, and if represented by counsel, of his/her counsel;

2.      Specifically and in writing, all objections;

3.      Whether he/she intends to appear at the Final Approval Hearing, either with or without counsel;

4.      A statement of his/her membership in the Settlement Class, including all information required by the Claim Form; and

5.      A detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years.  If the Settlement Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement.

B.      Any Settlement Class Member who fails to file and serve timely a written objection and notice of his/her intent to appear at the Final Approval Hearing pursuant to this Section shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by any means, including but not limited to an appeal.

C.     Requests for Exclusion.

1.     Any Settlement Class Member may request to be excluded (or "opt out") from the Settlement Class.  A Settlement Class Member who wishes to opt out of the Settlement Class must do so no later than thirty (30) calendar days before the Final Approval Hearing (the Opt-Out Deadline).  In order to opt out, a Settlement Class Member must complete and mail to the Claims Administrator a Request for Exclusion that is postmarked no later than the Opt-Out Deadline.

2.     Requests for Exclusion that are postmarked after the Opt-Out Deadline will be considered invalid and of no effect, and the Person who untimely submits a Request for Exclusion will remain a Settlement Class Member and will be bound by any Orders entered by the Court, including the Final Judgment and Order Approving Settlement and the Release  contemplated thereby.  Except for those Persons who have properly and timely submitted Requests for Exclusion, all Settlement Class Members will be bound by this Agreement and the Final Judgment and Order Approving Settlement, including the Release contained herein, regardless of whether they file a Claim or receive any monetary relief.

3.     Any Person who timely and properly submits a Request for Exclusion shall not (a) be bound by any orders or the Final Judgment and Order Approving Settlement nor by the Release contained herein; (b) be entitled to any relief under this Agreement; (c) gain any rights by virtue of this Agreement; or (d) be entitled to object to any aspect of this Agreement.

4.     Each Person requesting exclusion from the Settlement Class must personally sign his or her own individual Request for Exclusion.  No Person may opt-out of the Settlement Class any other Person, or be opted-out by any other Person, and no Person shall be deemed opted-out of the Settlement Class through any purported

"mass" or "class" opt-outs.

    5.    The Claims Administrator shall provide Class Counsel and Defendant's Counsel with a final list of any timely Requests for Exclusion received by the Claims Administrator within five (5) business days after the Opt-Out Date.

## IX.   RELEASE

    A.    The Agreement shall be the sole and exclusive remedy for any and all Released Claims of all Releasing Parties against all Released Parties. No Released Party shall be subject to liability or expense of any kind to any Releasing Party with respect to any Released Claims. Upon entry of the Final Judgment and Order Approving Settlement, each and every Releasing Party shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting any Released Claim against any Released Party in any court or any forum whatsoever.

    B.    Upon entry of the Final Judgment and Order Approving Settlement, each Releasing Party shall be deemed to have released and forever discharged each Released Party of and from any and all liability for any and all Released Claims.

    C.    The Settlement Class Members acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Release, but nevertheless fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, may hereafter exist, or heretofore have existed based upon actions, conduct, events, or transactions occurring on or before the date of the Agreement, without regard to subsequent discovery or the existence of such different or additional facts concerning each of the Released Parties. Notwithstanding the above, the Release does not include claims for personal injury.

    D.    With respect to any and all Released Claims, and upon entry of the Final

Judgment and Order Approving Settlement without further action, for good and valuable consideration, Klacko, Surzyn, and Hall, on behalf of themselves and the Settlement Class and as the representatives of the Settlement Class, shall have expressly, and the Releasing Parties shall be deemed to have, and by operation of the Final Judgment and Order Approving Settlement shall have, to the fullest extent permitted by law, fully, finally, and forever expressly waived and relinquished with respect to the Released Claims, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar to, comparable to, or the equivalent of Section 1452 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

E.     On and after the Effective Date, each of the Releasing Parties shall be deemed to have fully, finally, and forever released, relinquished, and discharged the Released Parties, and their present and former parents, subsidiaries, divisions, affiliates, partners, employees, officers, directors, attorneys, accountants, experts, consultants, insurers, agents, predecessors, successors, heirs, and assigns, from all claims of every nature and description, including Unknown Claims, relating to the defense, settlement, and/or resolution of the Kettle Actions or the Released Claims.

F.     The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Parties, Settlement Class Members, and the Claims Administrator to interpret and enforce the terms, conditions, and obligations under the Agreement.

## X.     COUNSEL FEES, INCENTIVE AWARD, AND COSTS

A.     Class Counsel will apply to the Court for an award of attorneys' fees and costs in a total amount not to exceed Seven Hundred Seventy-Five Thousand and No/100 Dollars

($775,000.00), to be paid within five (5) calendar days of the later of (1) entry of an order of dismissal in the *Surzyn* Action; or (2) entry of an order of dismissal in the *Hall* Action. Class Counsel shall not request any additional fees or costs above this amount. Diamond Foods will not object to the request so long as it does not exceed $775,000.00, and Diamond Foods will pay the amount awarded by the Court, up to but not more than $775,000.00, to Class Counsel as compensation for attorneys' fees and costs. The Fee Award shall constitute complete consideration for all work performed and all expenses and costs incurred by Class Counsel to date, and for all work to be performed and all expenses and costs to be incurred through the completion of the Kettle Actions and this Settlement.

B.     Class Counsel, in their sole discretion, shall allocate and distribute the Fee Award among Other Counsel. Upon payment of the Fee Award, Diamond Foods' obligations regarding fees and expenses shall be fully and forever discharged and, with the exception of the Incentive Award, neither Klacko, Surzyn, Hall, the Settlement Class Members, nor Other Counsel shall be entitled to seek or recover any further payment of fees and/or expenses from Diamond Foods. Class Counsel agree to indemnify and hold harmless Diamond Foods and the Released Parties from any and all claims for payment of attorneys' fees and/or expenses to any Person other than as set forth in paragraph A above.

C.     Class Counsel will apply to the Court for an Incentive Award in a total amount not to exceed Seven Thousand Five Hundred and No/100 Dollars ($7,500.00). Class Counsel shall not request any incentive awards above this amount. Diamond Foods will not object to the request so long as it does not exceed $7,500.00. The application for the Incentive Award shall specify the allocation of the Incentive Award among Klacko, Surzyn, and Hall.

## XI.     PRELIMINARY APPROVAL

A.     The Parties and their respective counsel agree that Plaintiff shall seek Preliminary and Final Approval of the Settlement as described herein. Within seven (7)

calendar days after execution of the Agreement, and in any event, no later than September __, 2014, Plaintiff shall submit a Motion for Preliminary Approval of Settlement, this Agreement, including all exhibits, and shall seek a Preliminary Approval Order from the Court, substantially in the form to be agreed upon by the Parties, which, by its terms shall:

1.    Determine preliminarily that this Agreement and the Settlement set forth herein fall within the range of reasonableness meriting possible final approval and dissemination of Notice to the Settlement Class;

2.    Determine preliminarily that Klacko, Surzyn, and Hall are members of the Settlement Class and that, for purposes of the Settlement, they satisfy the requirements of typicality, and that they adequately represent the interests of the Settlement Class Members, and appoint them as the representatives of the Settlement Class;

3.    Determine preliminarily that the Settlement Class meets all applicable requirements of Fed. R. Civ. P. 23 ("Rule 23"), and conditionally certify the Settlement Class for purposes of the Agreement under Rule 23 for settlement purposes only;

4.    Appoint Class Counsel as counsel for the Settlement Class pursuant to Rule 23(g);

5.    Schedule the Final Approval Hearing to: (a) determine finally whether the Settlement Class satisfies the applicable requirements of Rule 23 and should be finally certified for settlement purposes only; (b) review objections, if any, regarding the Settlement; (c) consider the fairness, reasonableness, and adequacy of the Settlement; (d) consider Class Counsel's application for an award of attorneys' fees and reimbursement of expenses and incentive awards consistent with the stipulation of the Parties set forth herein; (e) determine the validity of Requests for Exclusion and

exclude from the Settlement Class those Persons who validly and timely opt out; and (f) consider whether the Court shall issue the Final Judgment and Order Approving Settlement approving the Settlement and dismissing the Action with prejudice;

6.     Set a briefing schedule for the Final Approval Hearing;

7.     Approve the Class Notice and Notice Plan;

8.     Approve the designation of the Claims Administrator;

9.     Direct Diamond Foods, the Claims Administrator, or their designee(s) to cause the Class Notice to be disseminated in the manner set forth in the Notice Plan on or before the Notice Date;

10.    Determine that the Class Notice and Notice Plan (a) meets the requirements of Rule 23(c)(3) and due process; (b) is the best practicable notice under the circumstances; (c) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Kettle Actions and their right to object to the proposed Settlement or opt out of the Settlement Class; and (d) is reasonable and constitutes due, adequate, and sufficient notice to all those entitled to receive notice;

11.    Require each Settlement Class Member who wishes to opt out of the Settlement Class to submit a timely written Request for Exclusion on or before the Opt-Out Deadline, as specified in Section VIII.C. herein;

12.    Rule that any Settlement Class Member who does not submit a timely Request for Exclusion will be bound by all proceedings, orders, and judgments in the Action;

13.    Require any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement or to the award of attorneys' fees, costs, and expenses, to deliver to Class Counsel and Defendant's Counsel and to

file with the Court, by the Objection Deadline, all of the information described in Section VIII.A.; and

14.   Require that any Settlement Class Member who wishes to submit a Claim pursuant to Sections IV.C. and V.B. herein submit such Claim in writing on or before the Claims Deadline in the manner set forth in Sections IV.C. and V.B. herein, or forever be barred from submitting a Claim under this Agreement.

## XII.   FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT

A.   This Agreement is subject to and conditioned upon (1) the issuance by the Court of the Final Judgment and Order Approving Settlement that finally certifies the Settlement Class for purposes of settlement only, grants final approval of the Settlement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder; (2) the Effective Date; and (3) the Parties' performance of their continuing rights and obligations hereunder.

B.   The Final Judgment and Order Approving Settlement shall be substantially in the form to be agreed upon by the Parties and shall:

1.   Confirm the final certification, for settlement purposes only, of the Settlement Class;

2.   Confirm the compliance of the Settlement Class with all requirements of Rule 23, including confirmation of the adequacy of the representation of Plaintiff as representative of the Settlement Class;

3.   Confirm that the Notice Plan complied in all respects with the requirements of due process and Rule 23 by providing due, adequate, and sufficient notice to the Settlement Class;

4.   Determine that the Agreement is entered into in good faith, is

reasonable, fair, and adequate, and is in the best interests of the Settlement Class;

5.      Dismiss the Action with prejudice and without costs, other than as described herein, and order Class Counsel to effectuate the dismissal of the *Surzyn* Action and *Hall* Action with prejudice and without costs;

6.      Decree that neither the Final Judgment and Order Approving Settlement nor this Agreement constitutes an admission by Diamond Foods of any liability or wrongdoing whatsoever;

7.      Release each Released Party from the Released Claims that any Releasing Party has, had, or may have in the future against any Released Party;

8.      Bar and enjoin all Releasing Parties from asserting against any Released Party any Released Claim and bar and enjoin all Settlement Class Members from initiating or pursuing any claim or action barred by the Release; and

9.      Retain the Court's continuing and exclusive jurisdiction over the Parties to the Agreement, including all Settlement Class Members, to construe and enforce the Agreement in accordance with its terms for the mutual benefit of the Parties.

## XIII.  REPRESENTATIONS AND WARRANTIES

A.      Diamond Foods represents and warrants: (1) that it has the requisite corporate power and authority to execute, deliver, and perform the Agreement and to consummate the transactions contemplated hereby; (2) that the execution, delivery, and performance of the Agreement and the consummation by it of the actions contemplated herein have been duly authorized by necessary corporate action on the part of Diamond Foods; and (3) that the Agreement has been duly and validly executed and delivered by Diamond Foods and constitutes its legal, valid, and binding obligation.

B.      Klacko, Surzyn, and Hall represent and warrant that they are entering into this

Agreement on behalf of themselves individually and as representatives of the Settlement Class and the Releasing Parties, of their own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court. Klacko, Surzyn, and Hall represent and warrant that they have reviewed the terms of the Settlement in consultation with Class Counsel and believe those terms to be fair and reasonable, and covenant that they will not file a Request for Exclusion from the Settlement Class or object to the Settlement.

C.      Class Counsel represent and warrant that they are fully authorized to execute this agreement on behalf of Klacko, Surzyn, and Hall, individually and as representatives of the Settlement Class Members and the Releasing Parties.

D.      Except as set forth herein, the Parties represent and warrant that no other promise, inducement, or consideration for the Settlement has been made. No consideration, amount or sum paid, accredited, offered, or expended by Diamond Foods in its performance of this Agreement and the Settlement constitutes a fine, penalty, punitive damage, or other form of assessment for any claim against it.

## XIV.   TERMINATION OF THIS AGREEMENT

A.      Either Party may terminate this Agreement by providing written notice to the other Party within ten (10) calendar days of the occurrence of any of the following:

1.      The Court does not enter a Preliminary Approval Order conforming in all material respects to Section XI.A. and to the form agreed by the Parties;

2.      The Court does not conditionally and finally certify the Settlement Class as defined herein or the Court's order certifying the Settlement Class is reversed, vacated, or modified in any material respect by another court; or

3.      The Court does not enter the Final Judgment and Order Approving Settlement conforming in all material respects to Section XII.B. and to the form

agreed by the Parties or, if entered, such Final Judgment and Order Approving Settlement is reversed, vacated, or modified in any material respect by another court before the Effective Date.

B.     It is expressly agreed that neither the failure of the Court to enter the Fee Award, the Incentive Award, nor the amount of any attorneys' fees and costs or incentive awards that may be finally determined and awarded, shall provide a basis for termination of this Agreement.

C.     Diamond Foods may unilaterally withdraw from and terminate this Agreement up to fifteen (15) calendar days before the Final Approval Hearing if any of the following events occur:

1.     The Court does not approve the Notice Plan, or requires a plan of notice that will cause Claims Administration Expenses to exceed Three Hundred Thousand and No/100 Dollars ($300,000.00);

2.     Any state attorney general, or any federal or state agency, regulator, or authority institutes a proceeding against any of the Released Parties arising out of or otherwise related to the Release, the Agreement, and/or the Settlement;

3.     Any state attorney general, or any federal or state agency, regulator, or authority (a) objects to any aspect or term of the Agreement or Settlement; or (b) requires any modification to the Agreement or Settlement, including, without limitation, expansion of the scope of the contemplated relief that Diamond Foods in its sole discretion deems reasonably material; or

4.     More than one thousand five hundred (1,500) Settlement Class Members have submitted valid and timely Requests for Exclusion;

If Diamond Foods elects to cancel the Agreement pursuant to this Section XIV.C., the Agreement and all related documents exchanged or signed by the Parties or submitted to the

Court shall be null and void and shall have no effect whatsoever upon the Kettle Actions or their adjudication.

D.      In the event of termination, the terminating Party shall cause the Claims Administrator to post information regarding the termination on the Settlement Website.

E.      In the event this Agreement terminates for any reason, all Parties shall be restored to their respective positions as of immediately prior to the date of execution of this Agreement.  Upon termination, Sections III.A. III.B, and XV herein shall survive and be binding on the Parties, but this Agreement shall otherwise be null and void.

## XV.    MEDIA COMMUNICATIONS

A.      Klacko, Surzyn, Hall, Class Counsel, Diamond Foods, and Defendant's Counsel shall not cause any aspect of the Kettle Actions or the Settlement not available in the public record to be reported to the media or news reporting service.  Any statement to the media or news reporting service shall be limited to what is available in the public record.  Neither Party shall disparage the other.  Notwithstanding these obligations, Diamond Foods may make such disclosures regarding the Kettle Actions and the terms of the Settlement as it deems necessary in its filings with the Securities and Exchange Commission, to its auditors, submissions to the FDA, or as otherwise required by state or federal law.  Notwithstanding the foregoing, Klacko, Surzyn, Hall, Class Counsel, Diamond Foods, and Defendant's Counsel are permitted to file the required pleadings, exhibits, and briefing necessary to effectuate this Settlement and to comply with the Notice Plan ordered by the Court and such conduct does not violate this provision of this Agreement even if such conduct results in the details of this Settlement becoming part of the public record.  Moreover, if any Party wishes documents to be filed under seal or to be reviewed by the Court *in camera* for privacy, competitive, or other reasons, the Parties will cooperate in filing such documents under seal prior to public disclosure.

## XVI.   MISCELLANEOUS PROVISIONS

A.      Entire Agreement.   This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein.

B.      Execution by Counterparts.   This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures or signatures sent by email shall be deemed original signatures and shall be binding.

C.      Notices.  All notices to the Parties or counsel required by this Agreement shall be made in writing and delivered personally, by UPS, Federal Express, or similar service, next business day delivery, or sent by certified mail, postage prepaid, to the following:

If to Plaintiff, Surzyn, Hall, or Class Counsel:

Benjamin M. Lopatin, Esq.
The Law Offices of Howard W. Rubinstein, P.A.
One Embarcadero Center, Suite 500
San Francisco, CA 94111

L. DeWayne Layfield, Esq.
Law Office of L. DeWayne Layfield, PLLC
P.O. Box 3829
Beaumont, Texas 77704

Anthony J. Orshansky
Justin Kachadoorian
CounselOne, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, CA 90210

If to Diamond Foods or Defendant's Counsel:

General Counsel
Diamond Foods, Inc.

600 Montgomery Street, 13th Floor
San Francisco, CA 94111

Amanda L. Groves, Esq.
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111

D.      Good Faith. The Parties acknowledge that each intends to implement the Settlement. The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

E.      Binding on Successors. This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement, Diamond Foods, and the Released Parties.

F.      Arms-Length Negotiations.   The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.   All Parties agree that this Agreement was drafted by Class Counsel and Defendant's Counsel at arms' length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

G.      Waiver.   The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

H.      Modification in Writing Only.  This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties.

I.      Agreement Constitutes a Complete Defense.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

ON BEHALF OF DEENA KLACKO AND THE PROPOSED SETTLEMENT CLASS:

_____               _9-25-2014_
                                                Date:

ON BEHALF OF DOMINIKA SURZYN AND THE PROPOSED SETTLEMENT CLASS:

_____               _____
                                                Date:

ON BEHALF OF RICHARD HALL AND THE PROPOSED SETTLEMENT CLASS:

_____               _____
                                                Date:

ON BEHALF OF DIAMOND FOODS, INC.

_____               _____
                                                Date:

I.      Agreement Constitutes a Complete Defense.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

ON BEHALF OF DEENA KLACKO AND THE PROPOSED SETTLEMENT CLASS:

_____          _____
                                          Date:

ON BEHALF OF DOMINIKA SURZYN AND THE PROPOSED SETTLEMENT CLASS:

_____          _____
Benjamin M. Lopedin, ESQ.                 Date: 9/24/14
The Law Offices of Howard W. Rubinstein P.A.

ON BEHALF OF RICHARD HALL AND THE PROPOSED SETTLEMENT CLASS:

_____          _____
                                          Date:

ON BEHALF OF DIAMOND FOODS, INC.

_____          _____
                                          Date:

I.      Agreement Constitutes a Complete Defense.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

ON BEHALF OF DEENA KLACKO AND THE PROPOSED SETTLEMENT CLASS:

_____          _____
                                     Date:

ON BEHALF OF DOMINIKA SURZYN AND THE PROPOSED SETTLEMENT CLASS:

_____          _____
                                     Date:

ON BEHALF OF RICHARD HALL AND THE PROPOSED SETTLEMENT CLASS:

_____          ___9/25/14_____
                                     Date:

ON BEHALF OF DIAMOND FOODS, INC.

_____          _____
                                     Date:

I.    Agreement Constitutes a Complete Defense. To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

ON BEHALF OF DEENA KLACKO AND THE PROPOSED SETTLEMENT CLASS:

_____    _____

                                                                Date:

ON BEHALF OF DOMINIKA SURZYN AND THE PROPOSED SETTLEMENT CLASS:

_____    _____

                                                                Date:

ON BEHALF OF RICHARD HALL AND THE PROPOSED SETTLEMENT CLASS:

_____    _____

                                                                  Date:

ON BEHALF OF DIAMOND FOODS, INC.

_____    9/25/14

                                                                Date:

# EXHIBIT

# B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  9:14-cv-80005-BB**

---

| | |
|---|---|
| DEENA KLACKO, individually and on behalf of all others similarly situated, | : |
| | : |
| | : |
| *Plaintiff*, | : |
| | : |
| v. | : |
| | : |
| DIAMOND FOODS, INC., a California Corporation | : |
| | : |
| | : |
| *Defendant*. | : |
| | : |

---

**DECLARATION OF BENJAMIN M. LOPATIN IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.     I am over the age of 18 and am fully competent to make this Declaration.  This Declaration is based upon my personal knowledge, except where expressly noted otherwise.

2.     I am an attorney admitted to practice in the State of California and in the following federal courts:

   a.   United States Court of Appeals for the Ninth Circuit;

   b.   United States Court of Appeals for the Eleventh Circuit;

   c.   United States District Court for the Northern District of California;

   d.   United States District Court for the Eastern District of California;

   e.   United States District Court for the Central District of California;

   f.   United States District Court for the Southern District of California;

   g.   United States District Court for the Northern District of Florida;

1

     h.   United States District Court for the District of Colorado; and

     i.   United States District Court for the Northern District of Illinois (General Bar).

3.     I am the Managing Partner of The Law Offices of Howard W. Rubinstein, P.A., and I am Counsel of record for Plaintiff, Dominika Surzyn, and others similarly situated, against Defendant, Diamond Foods, Inc. ("Defendant"), in the action styled *Surzyn v. Diamond Foods, Inc.*, Case No.: 4:14-cv-00136-SBA, currently pending in the United States District Court for the Northern District of California ("*Surzyn*").

4.     My law firm also represents Plaintiff, Deena Klacko, in the above-styled action ("*Klacko*").   My law partner, Howard W. Rubinstein, of The Law Offices of Howard W. Rubinstein, P.A., is Counsel of record for Plaintiff, Deena Klacko, and others similarly situated, against Defendant, along with L. DeWayne Layfield, of The Law Offices of L. DeWayne Layfield, PLLC, who is Lead Counsel for Plaintiff, Deena Klacko.

5.     The food products at issue in *Klacko* and *Surzyn* are the following flavors of Defendant's tortilla chips that each claim to be "All Natural."

     a.   Kettle Brand TIAS All Natural Nacho Cheddar Tortilla Chips;

     b.   Kettle Brand TIAS All Natural Zesty Ranch Tortilla Chips;

     c.   Kettle Brand TIAS All Natural Salsa Picante Tortilla Chips;

     d.   Kettle Brand TIAS All Natural Sweet Baja Barbeque Tortilla Chips; and

     e.   Kettle Brand TIAS All Natural Chili Con Queso Tortilla Chips

(collectively the "Products").

6.     In addition, a third case was filed regarding similar products as those alleged in the *Surzyn* and *Klacko* actions, styled *Hall, et al. v. Diamond Foods, Inc.*, NDCA Case No. 3:14-CV-02148-MMC, currently pending in the Northern District of California, but which was filed in San

Francisco Superior Court on or about April 2, 2014.  Counsel of record in *Hall* is Anthony J. Orshansky, of the law firm, CounselOne, PC.

7.      Plaintiffs Deena Klacko, Dominika Surzyn, and Richard Hall are collectively referred to herein as "Plaintiffs."

8.      I am entering this Declaration in support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement entered into between Defendant and the Plaintiffs in the three currently pending actions against Defendant involving mislabeling and false-advertising claims.

9.      My involvement in this case began around December of 2013, when my firm undertook its initial legal and factual investigation that included interviewing Plaintiffs Surzyn and Klacko regarding the Products, reviewing the Products' labels at issue, consulting with industry experts, and conducting legal and factual research into Surzyn's and Klacko's claims on behalf of a putative class of similarly situated consumers.

10.     Prior to filing the *Surzyn* action, and pursuant to California Civil Code § 1782, I sent a letter on behalf of Plaintiff Surzyn informing Defendant of its unlawful practices and requesting relief to compensate Plaintiff Surzyn and the putative class.  My firm also sent a similar notice letter to Defendant in the *Klacko* action.

11.     As a result of this correspondence, my firm and I communicated with defense counsel regarding this case in hopes of facilitating a resolution, but the parties were unable to come to terms.  As a result, the *Klacko* action was filed on or about January 3, 2014, in the United States District Court, Southern District of Florida, Fort Lauderdale Division, while the *Surzyn* action was filed on or about January 9, 2014, in the United States District Court, Northern District of California, Oakland Division.  Plaintiff Klacko filed the operative Complaint in this action, the

First Amended Complaint, on or about May 8, 2014, which Defendant moved to dismiss (currently pending). Plaintiff Surzyn filed the operative Complaint in her case, the First Amended Complaint, on or about June 11, 2014, which Defendant filed an Answer to on or about July 14, 2014.

12. The First Amended Complaint in the *Klacko* action asserted claims on behalf of a nationwide class of consumers regarding Defendant's use of the term "All Natural" on the Products, which contain synthetic or artificial ingredients, including maltodextrin and/or dextrose, based on the following causes of action: (1) false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq.;* (2) Negligent Misrepresentation; (3) Breach of Express Warranty; and (4) Violation of Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*

13. Similarly, the First Amended Complaint in the *Surzyn* action asserted claims on behalf of a California class of consumers regarding Defendant's use of the term "All Natural" on the Products, which contain synthetic and/or artificial ingredients, including maltodextrin and/or dextrose, based on the following causes of action: (1) violation of California's False Advertising Law ("FAL"), Business & Professions Code §§ 17500, *et seq.;* (2) violation of the Unfair and Fraudulent Prongs of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.;* (3) violation of the Unlawful Prong of California's UCL, Business & Professions Code §§ 17200, *et seq.;* (4) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.;* and (5) Negligent Misrepresentation.

14. Concurrently with the investigation and litigation of Plaintiffs' claims, the parties engaged in arm's-length negotiations to resolve all three pending actions against Defendant. The result is a settlement that provides meaningful monetary and injunctive relief to a nationwide class of consumers of Defendant's Products.

4

15.     The Settlement calls for a notice plan intended to reach a minimum of 70 percent of class members, including notice via online and print publication, such as the creation of a website devoted to disseminating notice of the Settlement, where class members can submit claims and review the Settlement documents online.   The claims administrator agreed upon will also maintain a toll-free hotline where class members can receive answers to their questions regarding the Settlement.

16.     In sum, the Settlement establishes a fund of $3 million, with a commitment from Defendant to pay all claims up to $2.75 million.   Class members may claim $1 for each of the Products they purchased, up to 10 products, with no proof of purchase necessary, and up to 20 products with proof of purchase.   Any settlement funds not claimed by class members will be applied toward the retail value of Defendant's Products, which Defendant will donate to the agreed upon charity, Feeding America.

17.     The Settlement also provides that Defendant shall create and maintain a database to track ingredients and ingredient supplier verifications, conduct annual audits of its ingredient suppliers to confirm their compliance with Defendant's "Natural Promise," use reasonable efforts to obtain Non-GMO Project approval for all eligible products, and identify the reference food on products labeled "Reduced Fat" or "Less Fat" proximate to the principal comparative statements.

18.     Given the robust notice plan, coupled with the ease with which class members may submit claims, along with the strong prospective measures afforded by the Settlement, I believe the results achieved by the Settlement are well suited for Court approval.

19.     Plaintiffs' counsel have dedicated substantial time and resources to the diligent investigation and prosecution of class members' claims herein, and will continue to do so throughout the pendency of these actions.

20.    The proposed Settlement now before the Court was reached only after hard-fought litigation, substantial investigation, including an exchange of information, extensive law-and-motion practice, in-person mediation with a respected third-party neutral, and numerous rounds of subsequent negotiation over a period of several months.

21.    The parties agreed on the terms of the settlement through negotiations conducted by experienced counsel, who ensured that they had ample information at their disposal before and during the negotiations to evaluate the terms of any proposed agreement, and to reach a fair and reasonable compromise.

22.    Plaintiffs' counsel recognize that despite their belief in the strength of the claims at issue, the expense, duration, and complexity of protracted litigation would be substantial, and the outcome of trial or appeal would be uncertain.

23.    Likewise, Defendant repeatedly avowed that absent settlement it would continue to aggressively defend this case, and that it would appeal any judgment ultimately rendered in Plaintiffs' favor, which would further delay recovery by the putative class. Therefore, even if Plaintiffs were successful at trial, class members might not see relief for several years to come.

24.    Furthermore, my practice is primarily devoted to class-action litigation in the areas of consumer protection, false advertising, and consumer privacy.  I am currently prosecuting numerous pending class actions, throughout the United States, involving consumer protection, false advertising, and consumer privacy.

25.    I have obtained favorable settlements against several defendant food manufacturers.  Attached hereto and incorporated herein as **Exhibit** 1 is my Firm Resume, detailing some of the class actions in which my firm has been involved in, named lead counsel or co-lead counsel, or that have received final settlement approval.

6

26.    My class action experience was essential in assessing the reasonableness of prior class action settlements, and the Settlement currently at issue in this case. Based on this experience I believe the Settlement reached by the Plaintiffs and Defendant was the most favorable resolution possible for Plaintiffs and the Class, under the facts and circumstances of the cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 21, 2014, in San Francisco, California.

Benjamin M. Lopatin
**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
One Embarcadero Center
Suite 500
San Francisco, CA 94111
Telephone: (800) 436-6437
Facsimile: (415) 692-6607
Email: *lopatin@hwrlawoffice.com*

Attorney for Plaintiff Dominika Surzyn
and the Proposed Class

# EXHIBIT

# 1

### THE LAW OFFICES OF HOWARD W. RUBINSTEIN, P.A.

Howard W. Rubinstein, Esq. (Florida Bar No.:  104108)

Benjamin M. Lopatin, Esq. (California Bar No.:  281730)

**Florida Headquarters**
1615 Forum Place, Suite 4C
West Palm Beach, FL 33401

**California Headquarters**
One Embarcadero Center, Suite 500
San Francisco, CA 94111

**Sattelite Offices**
1800 Century Park East, Suite 600
Los Angeles, CA 90067

402 West Broadway, Suite 400
San Diego, CA 92101

Telephone:  (800) 436-6437
Fax:  (415) 692-6607
Web: www.hwrlawoffice.com

Howard W. Rubinstein received his Juris Doctor (J.D.) from South Texas College of Law in 1977.  Howard W. Rubinstein is a member in good standing and eligible to practice in the State of Florida, and is a member of the following federal courts:  United States District Court for the District of Columbia, United States District Court of Colorado, United States District Court for the Southern District of Florida, and United States District Court for the Northern District of Florida.

Benjamin M. Lopatin received his Juris Doctor (J.D.) degree in 2009, from the Shepard Broad Law Center at Nova Southeastern University, and his Master of Laws (LL.M.) in intellectual property in 2011, from DePaul College of Law.  Benjamin M. Lopatin is a member in good standing and eligible to practice law throughout the State of California, and is a member of the following federal courts:  United States Court of Appeals for the Ninth Circuit, United States Court of Appeals for the Eleventh Circuit, United States District Court for the Northern District of California, United States District Court for the Eastern District of California, United States District Court for the Central District of California, United States District Court for the Southern District of California, United States District Court for the Northern District of Florida, United States District Court for the District of Colorado, and United States District Court for the Northern District of Illinois.

Mr. Rubinstein and Mr. Lopatin handle a variety of class actions, with an emphasis on consumer protection law, including, but not limited to, the following prior cases:

- *Zuckerman v. AT&T Corp.*, No. BC24653 (Los Angeles Superior Court);

- *Singer v. Toyota Motor Sales, U.S.A., Inc.*, No. 02-30957 (Miami-Dade Circuit Court);

- *Engineer v. Toyota Motor Sales U.S.A., Inc.*, No. 03-0049 (Miami-Dade Circuit Court);

- *Todd v. American Multi-Cinema,* No. 02-1944 (S.D. Tex.);

- *In re: Light Cigarettes Marketing Sales Practices Litigation*, MDL No. 1-09-MD-2068 (Mr. Rubinstein appointed to Executive Committee);

- *Weeks v. Mead Johnson Nutrition Co.,* No. 09-cv-05835-DSF (C.D. Cal.) (Mr. Rubinstein appointed as co-lead Class Counsel);

- *Jolly v. McNeil Nutritionals*, No. 06-cv-06973-DSF (C.D. Cal.);

- *Galvez v. Touch-Tel USA,* No. 08-cv-05642-RGK (C.D. Cal.);

- *Galvan v. KDI Distribution,* No. 08-cv-02107-JVS-AN (C.D. Cal.);

- *Jiminez v. King's Districtuion, Inc.,* No. 09-cv-02107-JVS-AN (C.D. Cal.);

- *Carillo v. Mars, Inc.,* No. 09-cv-0543-DMG-RZ (C.D. Cal.);

- *Williams v. Gerber Products Co.*, No. 06-55921 (9th Cir.);

- *Weeks, et al. v. Kellogg, et al.*, No. CV-09-08102(MMM)(RZx) (C.D. Cal.) (Mr. Rubinstein appointed as co-lead Class Counsel);

- *Rappaport v. Jamba Juice Co.*, No.: CGC-12-521091 (San Francisco Superior Court) (Mr. Lopatin appointed as Class Counsel);

- *Fraser v. Genesco, Inc.*, No. C 11-04881-SI (N.D. Cal.);

- *Ford, et al. v. The Coca-Cola Co.*, No. 09-cv-395 (E.D.N.Y.);

- *Bialuski v. Toyota Motor Sales, U.S.A., Inc.*, No. BC 432516 (Los Angeles Superior Court);

- *Nasseri v. Cytosport, Inc.*, No. BC 439181 (Los Angeles Superior Court) (Mr. Rubinstein appointed as co-lead Class Counsel);

- *Carrera v. Bayer Corp.*, No. 12-2621 (3rd Cir.);

- *Moore v. GNC Holdings, Inc.*, No. 12-61703 (S.D. Fla.) (Mr. Rubinstein and Mr. Lopatin appointed as Class Counsel);

- *In Re Hydroxycut Marketing and Sales Practices Litigation*, No. 09-MD-02087 (S.D. Cal.);

- *In Re Enfamil Lipil Marketing and Sales Practices Litigation*, No. 11-MD-02222 (S.D. Fla.).

# EXHIBIT

# C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  9:14-cv-80005-BB

DEENA KLACKO, individually and on behalf
of all others similarly situated,

                             *Plaintiff,*

                v.

DIAMOND FOODS, INC., a California
Corporation

                           *Defendant.*

**DECLARATION OF ANTHONY J. ORSHANSKY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

        Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

        1.     I am over the age of 18 and am fully competent to make this declaration.  This declaration is based upon my personal knowledge, except where expressly noted otherwise.

        2.     I am an attorney admitted to practice in the State of California and in United States District Courts for the Northern, Southern, and Eastern District of California.  My *pro hac vice* application in this action is pending.

        3.     I am a shareholder at the law firm of CounselOne, PC ("CounselOne"), counsel of record for Plaintiff Richard Hall ("Plaintiffs") and others similarly situated against Defendant Diamond Foods, Inc. ("Defendant") in the action captioned *Hall, et al. v. Diamond Foods, Inc.*, NDCA Case No. 3:14-CV-02148-MMC currently pending in the Northern District of California.

        4.     I am entering this declaration in support of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement entered into between Defendant and the plaintiffs in the

1

three currently pending actions against Defendant involving mislabeling and false-advertising claims.

5.     My involvement in this case began in the summer of 2013, when my firm undertook its initial legal and factual investigation that included interviewing Hall and other consumers of Defendant's products, reviewing the product labels at issue, consulting with food-science experts, damage experts, and consumer-marketing firms, conducting preliminary surveys, and conducting legal and factual research into my client's claims on behalf of a putative class of consumers.

6.     Prior to filing the Hall action, and pursuant to California Civil Code § 1782, I sent a letter on behalf of my client informing Defendant of the allegedly unlawful practices and requesting relief.  As a result of this correspondence I communicated with within defense counsel regarding this case in hopes of facilitating a resolution, but the parties were unable to come to terms, and Hall filed his action in San Francisco Superior Court on April 2, 2014, where it was assigned case number CGC-14-538387.

7.     The Hall action asserted claims on behalf of a nationwide class of consumers for unfair, unlawful, and fraudulent business practices under Cal. Bus. & Prof. Code §§ 17200, *et seq.*; false advertising under Cal. Bus. & Prof. Code §§ 17500, *et seq.*; violation of the Consumer Legal Remedies Act, Cal Civ. Code §§ 1750, *et seq.*; and restitution based on quasi-contract/unjust enrichment—all relating to Defendant's representations that certain products were "All Natural," "Natural," "Naturally," "Reduced Fat," and/or "___ % Less Fat."

8.     On May 9, 2014, Defendant removed the Hall Action to the United States District Court for the Northern District of California, where it was assigned case number 3:14-CV-02148-MMC.  Thereafter Defendant filed a motion to dismiss Hall's complaint, which Hall opposed.  The court granted in part and denied in part Defendant's motion with leave to amend.

9.     Hall filed his amended complaint on August 15, 2014, and Defendant filed a renewed motion to dismiss on September 2, 2014, which Hall also opposed.

10.     Concurrently with the investigation and litigation of Hall's claims, the parties engaged in arm's-length negotiations to resolve all three pending actions against Defendant.  The

result is a settlement that provides meaningful monetary and injunctive relief to a nationwide class of consumers.

11.     The Settlement provides for a robust notice plan intended to reach a minimum of 70 percent of class members, including extensive online and print publication notice and the creation of a website devoted to the Settlement, where class members can submit claims online. The claims administrator herein will also maintain a toll-free hotline where class members can receive answers to their questions regarding the Settlement.

12.     The Settlement establishes a fund of $3 million, with a commitment from Defendant to pay all claims up to $2.75 million.  Class members may claim $1 for each Kettle product they purchased up to 10 products with no proof of purchase necessary, and up to 20 products with proof of purchase.  Any settlement funds not claimed by class members will be applied toward the retail value of Defendant's food product, which Defendant will donate to the charity Feeding America.

13.     The Settlement also provides that Defendant shall create and maintain a database to track ingredients and ingredient supplier verifications, conduct annual audits of its ingredient suppliers to confirm their compliance with Defendant's "Natural Promise," use reasonable efforts to obtain Non-GMO Project approval for all eligible products, and identify the reference food on products labeled "Reduced Fat" or "Less Fat" proximate to the principal comparative statements.

14.     Given the robust notice plan, coupled with the ease with which class members may submit claims, along with the strong prospective measures afforded by the Settlement, I believe that the results achieved here are well within the range of possible approval.

15.     Plaintiffs' counsel in this case have dedicated substantial time and resources to the diligent investigation and prosecution of class members' claims herein, and will continue to do so throughout the pendency of these actions.  The proposed Settlement now before the Court was reached only after hard-fought litigation, substantial investigation, including an exchange of information, extensive law-and-motion practice, in-person mediation with a respected third-party neutral, and numerous rounds of subsequent negotiation over a period of months.

16.     The parties agreed on the terms of the settlement through experienced counsel, who ensured that they had ample information at their disposal before and during the negotiations to evaluate the terms of any proposed agreement and to reach a fair and reasonable compromise.

17.     Plaintiffs' counsel recognize that despite their belief in the strength of the claims at issue, the expense, duration, and complexity of protracted litigation would be substantial, and the outcome of trial or appeal would be uncertain.

18.     Likewise, Defendant repeatedly avowed that absent settlement it would continue to aggressively defend this case, and that it would appeal any judgment ultimately rendered in Plaintiffs' favor, which would further delay recovery by the class. Therefore, even if Plaintiffs were successful, class members might not see relief for years to come.

19.     A substantial percentage of my practice is devoted to class-action litigation, particularly in the areas of consumer protection, consumer privacy, employment, and false-advertising.  My firm is currently counsel for numerous pending class actions throughout the United States involving consumer protection, consumer privacy, and wage-and-hour issues.

20.     I have obtained favorable settlements against a range of defendants, including many Fortune 1000 companies.  Below are some of the class actions in which my firm has been named lead counsel or co-lead counsel and that have received final settlement approval:

a.   *Knell, et al. v. FIA Card Services, Inc.*, CASD Case No. 3:12-cv-00426-AJB-WVG;

b.   *Zadeh v. Ikon*, LASC Case No. BC470371;

c.   *Fast, et al. v. Hilton Hotel Corporation*, LASC Case No. BC409467;

d.   *Sink-Crilly v. Centex Homes*, CACD Case No. CV09-2476;

e.   *Alexander v. DS Waters of America*, CACD Case No. CV09-03384;

f.   *Collins v. Live Nation Worldwide, Inc.*, LASC Case No. BC436141;

g.   *Milford v. ADT Security Services, Inc.*, CACD Case No. CV08-2236;

h.   *Beal v. Activision, Inc.*, LASC Case No. BC348560;

i.   *Healy v. Siemens IT Solutions and Services, Inc.*, Santa Clara Superior Court Case

4

No. 108CV113479;

    j.   *Flores v. Loomis Armored*, LASC Case No. BC409899;

    k.   *Davies, et al. v. Godiva Chocolatier, Inc.*, LASC Case No. BC429547;

    l.   *Galavis v. Patina Restaurant Group, LLC*, LASC Case No. BC375225;

    m.   *DuPont v. Innovative Dining Group*, LASC Case No. BC391240;

    n.   *Fluke v. RFG Oil, Inc.*, LASC Case No. BC403354;

    o.   *Urena v. Camachos Restaurant*, LASC Case No. BC365913;

    p.   *Callela v. Dolce Group*, LASC Case No. BC364711;

    q.   *Vasquez v. The Hollywood Pig n Whistle LP*, LASC Case No. BC335075;

    r.   *Goldman v. Aorta Restaurant Operating LP*, LASC Case No. BC379688;

    s.   *Garcia v. California Credits Group*, LASC Case No. BC353213;

    t.   *Afanasyev v. Miller Infiniti, Inc.*, LASC Case No. BC350788;

    u.   *Morris v. Gymboree, Inc.*, LASC Case No. BC393270;

    v.   *Ortega v. AJC Sandblasting, Inc.*, LASC Case No. BC378806;

    w.   *Lulejyan v. Jim Falk Motors of Beverly Hills, Inc.*, LASC Case No. BC398459;

    x.   *Rylko v. The Griddle Café, Inc.*, LASC No. BC386126.

21.    This experience is helpful in assessing the reasonableness of settlements such as the one at issue here, and from this experience I believe this lawsuit could not have been settled on better terms than provided under the instant proposed Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 22, 2014.

_____
Anthony J. Orshansky

5

# EXHIBIT

# D

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:  9:14-cv-80005-BB

|  |  |
|---|---|
| DEENA KLACKO, individually and on behalf of all others similarly situated, | : |
|  | : |
| *Plaintiff,* | : |
|  | : |
| v. | : |
|  | : |
| DIAMOND FOODS, INC., a California Corporation | : |
|  | : |
| *Defendant.* | : |
|  | : |

### DECLARATION OF L. DEWAYNE LAYFIELD IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am over the age of 18 and am fully competent to make this declaration.  This declaration is based upon my personal knowledge, except where expressly noted otherwise.

2.      I am an attorney admitted to practice in the State of Texas and in United States District Courts for the Southern, and Eastern Districts of Texas.  My *pro hac vice* application has been granted in this action.

3.      I am the sole member and manager of Law Office of L. DeWayne Layfield PLLC ("Layfield Law"), counsel of record for Plaintiff Deena Klacko ("Plaintiffs") and others similarly situated against Defendant Diamond Foods, Inc. ("Defendant") in the above-captioned action.

4.      I am entering this declaration in support of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement entered into between Defendant and the plaintiffs in the three currently pending actions against Defendant involving mislabeling and false-advertising claims.

1

5.      My involvement in this case began in the late spring of 2014, when my firm made a factual and legal evaluation of the claims of Plaintiff against Defendant Diamond Foods, Inc.

6.      After completing my factual and legal evaluation of the claims, I participated in a day long mediation between Plaintiff and Diamond Foods conducted by David H. Lichter.  The initial mediation was not successful.

7.      The exchange of information and negotiations continued over the next several weeks.  Sometimes directly and sometimes with the assistance of Mr. Lichter.

8.      Ultimately the parties were successful in reaching agreement on the terms of the relief for the Class.   Thereafter the parties negotiated compensation for stipends to class representative, attorney fees, costs and expenses.   The result of the serial negotiations is the Settlement that is the subject of the pending motion for preliminary approval.

9.      The Settlement provides for a robust notice plan intended to reach a minimum of 70 percent of class members, including extensive online and print publication notice and the creation of a website devoted to the Settlement, where class members can submit claims online. The claims administrator herein will also maintain a toll-free hotline where class members can receive answers to their questions regarding the Settlement.

10.     The Settlement establishes a fund of $3 million, with a commitment from Defendant to pay all claims up to $2.75 million.  Class members may claim $1 for each Kettle product they purchased up to 10 products with no proof of purchase necessary, and up to 20 products with proof of purchase.  Any settlement funds not claimed by class members will be applied toward the retail value of Defendant's food product, which Defendant will donate to the charity Feeding America.

11.     The Settlement also provides that Defendant shall create and maintain a database to track ingredients and ingredient supplier verifications, conduct annual audits of its ingredient suppliers to confirm their compliance with Defendant's "Natural Promise," use reasonable efforts to obtain Non-GMO Project approval for all eligible products, and identify the reference food on products labeled "Reduced Fat" or "Less Fat" proximate to the principal comparative statements.

2

12.     Given the robust notice plan, coupled with the ease with which class members may submit claims, along with the strong prospective measures afforded by the Settlement, I believe that the results achieved here are well within the range of possible approval.

13.     The parties agreed on the terms of the settlement through experienced counsel, who ensured that they had ample information at their disposal before and during the negotiations to evaluate the terms of any proposed agreement and to reach a fair and reasonable compromise.

14.     Plaintiffs' counsel recognize that despite their belief in the strength of the claims at issue, the expense, duration, and complexity of protracted litigation would be substantial, and the outcome of trial or appeal would be uncertain.

15.     A substantial percentage of my practice is devoted to class-action litigation, particularly in the areas of consumer issues.  My experience in such matters is summarized on the attached Exhibit 1.

16.     This experience is helpful in assessing the reasonableness of settlements such as the one at issue here, and from this experience I believe this lawsuit could not have been settled on better terms than provided under the instant proposed Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 21, 2014.


_____
L. DeWayne Layfield

# EXHIBIT

# 1

# Exhibit 1

**L. DeWayne Layfield** was born in Beaumont, Texas on November 18, 1963.  He graduated from The University of Texas School of Law with Honors and was admitted to the Texas Bar in 1990.  Thereafter, he clerked for the Honorable Thomas Gibbs Gee, Circuit Judge United States Court of Appeals for the Fifth Circuit.  At the conclusion of the clerkship, he joined Vinson & Elkins LLP in their Houston, Texas office.  In 1995, Mr. Layfield joined Bridgestone/Firestone, Inc. as senior litigation counsel.  In 1997, Mr. Layfield returned to private practice.  Mr. Layfield's practice has involved class and non-class mass tort litigation, the nationwide coordination of tort litigation as well as commercial, contract, and environmental litigation.  Mr. Layfield has assisted with the prosecution or defense of thousands of individual claims and class litigation involving tens of thousands of individuals.  Mr. Layfield has been appointed class counsel in the following matters:

(1) Cause No. 1:99cv0120; *Ethan Shaw, et al. v. Toshiba America Information Systems, et al.*; In the United States District Court for the Eastern District of Texas;
(2) Cause No. A-162,152; *Hal LaPray, et al. v. Compaq Computer Corporation*; In the 60th Judicial District Court, Jefferson County, Texas;
(3) Cause No. A-164,880; *Muzette Alvis, et al. v. Hewlett-Packard Company*; In the 58th Judicial District Court, Jefferson County, Texas;
(4) Cause No. E-165,336; *David Packard, et al. v. eMachines, Inc., et al*.; In the 172nd Judicial District Court, Jefferson County, Texas;
(5) Cause No. E-167,872; *Sandra Geter, et al. v. Farmers Group, Inc., et al.*; In the 172nd Judicial District Court, Jefferson County, Texas; and
(6) Cause No. 8725; *Anderson Brothers Partnership, et al. v. EnerMart Energy Services Trust, et al.*; In the 287th Judicial District Court, Parmer County, Texas
(7) Cause No. CJ-2003-967; *Debbie Barrett, Individually and on Behalf of Those Similarly Situated v. Hewlett Packard Company*; In the District Court for Cleveland County, Oklahoma;
(8) Cause No. CJ-2003-969; *Stephen Grider, Beverly Grider v. Compaq Computer Corporation*; In the District Court for Cleveland County, Oklahoma

Mr. Layfield is also a member of the Plaintiffs' Steering Committee in MDL-1840 *In Re Fuel Temperature Sales Practices.*

These class actions and other individual actions prosecuted by Mr. Layfield have resulted in cash payments to or for the benefit of his clients of over $750 million.  Considering cash equivalent payments and other benefits the recovery for these clients is well over $2 billion.

In addition, Mr. Layfield has been counsel for defendants in class action litigation.

Mr. Layfield graduated *summa cum laude* with a B.S. in Chemical Engineering from Lamar University in 1987.  Prior to graduation from Lamar, Mr. Layfield was the owner of a consulting company that developed engineering and process control software for corporate clients such as DuPont.  Throughout his education and legal career, Mr. Layfield has studied and gained hands-on experience with computer-related technology.  He has lectured and written on the use of technology

in the practice of law.  He has served on various technology-related groups and committees at The University of Texas School of Law, Vinson & Elkins LLP, and Bridgestone/Firestone, Inc.

Mr. Layfield is admitted to practice before the courts of Texas as well as the Federal Courts for the Eastern and Southern Districts of Texas and the United States Court of Appeals for the Fifth Circuit.  He is a member of the American Bar Association, American Association for Justice, Defense Research Institute; a Life Fellow of the Texas Bar Foundation; has been named a Super Lawyer and included in the Best Lawyers in America and is a past Member of the State Bar or Texas Committee on Jury Service.

While at The University of Texas School of Law, Mr. Layfield served as Editor in Chief of the *Texas Law Review* and was a member of Chancellors and the Order of the Coif.  Mr. Layfield also published a Note in the *Texas Law Review* regarding CERCLA and the federal common law. While at Lamar University, Mr. Layfield was elected to Tau Beta Pi and Omega Chi Epsilon as well as other honorary societies.

# EXHIBIT

# E



**Legal Notification Services**

_____

# Settlement Notice Plan

## *Klacko v Diamond Foods, Inc.*

## Civil Case No.: 9:14-cv-80005

United States District Court

Southern District of Florida

**Prepared: October 20, 2014**

_____

© 2014 KCC LLC
Proprietary and Confidential

## Program Overview

**Class Definition**

The Class or Class members include purchasers of Kettle Brand Chips in the United States since January 3, 2010. To verify the notice program's effectiveness, GfK MediaMark Research & Intelligence, LLC (MRI)[1] data was studied among adults who purchased Kettle brand potato chips ("Kettle Chip Consumers"). This measurable Kettle target includes products that also claim to be "All Natural"; therefore we feel it best represents the Class in terms of demographics and media usage.

**Situation Analysis**

The following known factors were considered when designing this notice program:

1. Class members are unknown consumers who must be reached through a consumer media campaign.
2. Class members are located throughout the U.S., including large cities and rural areas;
3. Effective reach and notice content is vital to convey the importance of the information affecting Class members' rights, as well as to withstand challenge and collateral review.

**Strategies**

The Notice Plan utilizes a schedule of paid notices in a leading consumer magazine and on a on a variety of websites to provide the necessary reach among the Class. The Notice Plan will reach approximately 70.0% of the Class on average 1.0 time each.

---

[1] GfK MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's Survey of the American Consumer™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

## Notice Schedule

| Notice Tactic | Issued | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 |
|---|---|---|---|---|---|---|---|
| *Bon Appétit* | Monthly | | | | | | |
| Internet Banner Notices | | | | | | | |
| Case Website | Constant | | | | | | |

Blocks indicate when readers first receive publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement.

## Media Selection

The media mix for this notice program provides:

- National coverage through a notice placement in consumer magazine and various websites;

- Possible repeat notice exposures as a result of the overlapping media audiences;

- A written summary of settlement information that may be easily referred to or passed on to others;

- A direct link to the case website through internet banner notices; and

- Easy access to the notice documents through an established case website.

## Consumer Magazines

A third page Notice will be placed in *Bon Appétit.*



- Circulation: 1,529,385
- Adult Audience: 6,506,000
- Monthly magazine focuses on cooking tools and tips, cooking in, dining out, culture, travel, entertainment, shopping and design
- Reaches 3.9% of Kettle Chip Consumers
- Readers are 50.2% more likely to be Kettle Chip Consumers, as compared to the general adult population
- Extends reach among affluent, educated, middle aged women

## Internet Banners

160 million unique internet impressions targeted to adults 18 years of age and older will be purchased on Xaxis's network of sites (XPN) and delivered over a one month period. The banner notices will include an embedded link to the case website. XPN allows access to several thousand premium, high quality websites. Sample sites include:

| Tactic | Target | Number of Impressions |
|---|---|---|
| XPN Run of Network | Adults 25+ | 30,000,000 |
| Facebook | Adults 25+ | 53,000,000 |
| **TOTAL** | | **83,000,000** |

XPN allows access to several thousand premium, high quality websites. Sample sites include:

    

  

    

    

## Response Mechanisms

**Case Website**
- Provides a simple way for Class members to obtain additional information about the settlement
- Allows Class members the ability to access documents including the Detailed Notice, Summary Notice, Claim Forms, Settlement Agreement, and any other information that the parties may agree to provide or that the Court may require
- Prominently displayed in all printed notice materials and accessible through hyperlink embedded in the Internet Banners

**Toll-Free Telephone Support**
- Provides a simple way for Class members to obtain additional information about the settlement
- Allows Class members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Class members to request to have more information mailed directly to them
- Prominently displayed in all printed notice materials

# EXHIBIT

# 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Civil Case No.: 9:14-cv-80005

DEENA KLACKO, individually and on        :
behalf of all others similarly situated,        :
                                                :
            *Plaintiff,*                         :
*vs.*                                            :
DIAMOND FOODS, INC., a California        :        **DECLARATION OF DANIEL**
corporation,                                     :        **ROSENTHAL REGARDING NOTICE**
                                                :        **PLAN**
            *Defendant.*                         :
                                                :

I, DANIEL ROSENTHAL, declare:

1.      I am a Special Consultant to Kurtzman Carson Consultants ("KCC"), a class action settlement administrator. KCC is located at 75 Rowland Way, Suite 250, Novato, California. I am over 21 years of age and am not a party to this action. I have personal knowledge of all matters set forth herein unless otherwise indicated, and would testify thereto if called as a witness in this matter.

2.      The purpose of this Declaration is to provide the Court with my and KCC's qualifications and experience regarding the development of Class Action Notice Plans and to provide information regarding the Notice Plan for distributing settlement notices in conjunction with *Klacko v. Diamond Foods, Inc.*

**OVERVIEW OF THE NOTICE PLAN**

3.      KCC developed the Notice Program to reach approximately 70.0% of Class Members through paid notices in a leading consumer publication and on a variety of websites.[1]

---

[1] The reach or net reach of a notice program is defined as the percentage of a class that was exposed to a notice net of any duplication among people who may have been exposed more than once. The "average frequency" of notice exposure is the average number of times that those reached by the notice would be exposed to that notice.

Attached as **Exhibit 1** is more detail regarding the Notice Plan proposed for this case.

## EXPERIENCE

4.      I have more than 28 years of class action notice and administration experience, and more than 40 years of advertising agency experience. In 2000 I founded Rosenthal & Company LLC ("Rosenthal"), a class action administration company. In 1986, I founded the first advertising agency to specialize in planning and placement of legal notices in all types of media. Prior to founding Rosenthal, since 1988 I served as Managing Director of a leading class action administration company, where I developed the methodology, computer systems and staff to manage the company's consumer class action administrations. Prior to 1988, I held positions in the consumer products marketing field, including management positions with McCann-Erickson, a leading international advertising agency. In 2010, KCC acquired Rosenthal & Company. In July of 2013 I became Special Consultant to KCC, an advisory role in which I provide expertise in developing class action notice and administration plans.

5.      KCC is a class action administrator that specializes in providing comprehensive class action services including, but not limited to, pre-settlement consulting, email and mailing campaign implementation, website design, claims administration, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, class member data management, legal notification, call center support, claims administration, and other related services critical to the effective administration of class action settlements. KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of settlements to ensure the orderly and fair treatment of class members and all parties in interest.

6.      KCC's business is national in scope. Since 2000, KCC (along with Rosenthal) has

administered more than 2,000 matters. As part of these settlements, KCC has provided notice and administration services for cases with class members that range in numbers from 22 to over 26 million, and has distributed settlement payments totaling well over two billion dollars in the aggregate. KCC has administered class action administrations for such defendants as Apple, HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards and Twentieth Century Fox.

## NOTICE PLAN SUMMARY

7.     It is the objective of the Notice Plan to reach approximately 70% of Class Members. KCC designed a Notice Plan that utilizes a schedule of paid notices in a leading consumer magazine and on a variety of websites to reach Class Members. Class Members will be able to respond to the Notice by visiting the case website, where they can review frequently asked questions and answers and download key documents or by calling the toll-free number, where they can listen to review frequently asked questions and request to have more information mailed to them.

### *Case Background and Class Target*

8.     It is alleged that the Defendant falsely advertised or marketed products and violated certain laws in making certain "All Natural," "Reduced Fat" and/or "__% Less Fat" statements on the labels of its Kettle Brand® products. The Defendant denies all claims made against it, denies that it violated any laws, and denies that its labeling is false or misleading.

9.     The "Class" (or "Class Members") is defined as all Persons who, for personal or household use, purchased Kettle Brand® Products (defined as products with the following words on their labels "All Natural," "Natural", "Naturally," "Made with All Natural Ingredients," "Natural Promise," or any other derivation of "natural," "nothing artificial," "no preservatives,"

"non-GMO," "non-GMO ingredients," "only natural colors and flavors," "natural flavors," "A Natural Obsession," "real food ingredients," "Reduced Fat," and/or "__% Less Fat") in the United States from January 3, 2010 through and including the Notice Date.

10. Excluded from the Settlement Class are: (a) all Persons who purchased or acquired the Products for resale; (b) Diamond Foods and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (c) any Person who files a valid, timely Request for Exclusion; (d) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (e) the judges to whom the Kettle Actions are assigned and any members of their immediate families.

11. Due to the consumer nature of the Products, Class Members are unknown and therefore must be reached through a consumer media campaign. To verify the effectiveness of the proposed notice plan, GfK MediaMark Research & Intelligence, LLC ("MRI")[2] data was studied among adults who purchased Kettle brand potato chips ("Kettle Chip Consumers"). This measurable Kettle target includes products that claim to be "All Natural"; therefore I feel it best represents the Class in terms of demographics and media usage.

### *Consumer Publication*

12. To build a reach base, a third page Short Form Notice will appear once in the national edition of *Bon Appétit* magazine. *Bon Appétit* is a monthly magazine that focuses on cooking tools and tips, cooking in, dining out, culture, travel, entertainment, shopping and design. It has an adult audience of 6,508,000 and offers a circulation of 1,529,385. In addition,

---

[2] GfK MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's Survey of the American Consumer™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multimedia audience data available.

*Bon Appétit* is a popular publication among Kettle Chip Consumers. For example, *Bon Appétit* reaches 3.9% of Kettle Chip Consumers and its readers are 50.2% more likely to be Kettle Chip Consumers, as compared to the general population.

### *Internet Banner Advertisements*

13.     In addition to the consumer publication notice effort, KCC will implement an online notice campaign. MRI research indicates that 85.2% of Kettle Chip Consumers have access to the internet at home using a computer and 85.7% have looked at or used the internet in the past 30 days. Compared to the general population, Kettle Chip Consumers are 7.7% more likely to have access to the internet at home using a computer and 7.3% more likely to have looked at or used the internet in the past 30 days. Therefore, KCC will purchase 160 million *unique* internet impressions that will be delivered over a one month period. The banner notices will be purchased using Xaxis Premium Network (XPN). All impressions will be targeted to reach U.S. adults. The banner notices will include an embedded link to the case website.

### *Case Website*

14.     KCC will create a case-specific website and post relevant documents and answers to frequently asked questions. Class Members will have the  option  to  download  copies  of case documents (including the Settlement Agreement, Long  Form  Notice,  Claim Form and any  Court orders relating to the settlement).

### *Toll-Free Number*

15.     KCC will set up a toll-free number to provide Class Members with an additional opportunity to learn more about the settlement. The toll-free number will provide answers to frequently asked questions, as well as allow Class Members to request to have more information and a Claim Form mailed directly to them.

*Reach and Frequency*

16.     The consumer publication effort will reach 3.9% of Class Members. The Internet Banner campaign will reach an estimated 68.8% of Class Members. When combining the publication and internet notice, the Notice Plan will reach an estimated 70.0% of Class Members on average 1.0 time each.

## CONCLUSION

17.     Based on my class action notice planning experience, the notice tactics utilized in this Notice Program are consistent with other effective class action settlement notice plans.

18.     The Notice Plan provides the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane*. It provides the same reach and frequency evidence that Courts have approved and that has withstood appellate scrutiny, other expert critiques, as well as collateral review. The Notice Plan is also consistent with the 70-95% reach guideline set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  October 6, 2014

_____
Daniel Rosenthal

© KCC LLC 2014

# EXHIBIT

# 2

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

## If you bought Kettle Brand® Products



## Between January 3, 2010 and February 24, 2015
## You Could Receive Money From a Class Action Settlement.

*A Federal Court authorized this notice.  This is not a solicitation from a lawyer.*

- A proposed nationwide Settlement has been reached in a class action lawsuit involving Kettle Brand® products.  The Settlement resolves litigation over whether the Defendant violated state and federal laws regarding the marketing and labeling of its Kettle Brand® products, including:

  

- You may be eligible to participate in the proposed Settlement, if it is finally approved, if you purchased any Kettle Brand® products labeled as "All Natural," "Natural, "Naturally," "Made with All Natural Ingredients," "Natural Promise," or any other derivation of "natural," "nothing artificial," "no preservatives," "non-GMO," "non-GMO ingredients," "only natural colors and flavors," "natural flavors," "A Natural Obsession," "real food ingredients," "Reduced Fat," and/or "__% Less Fat" between January 3, 2010 and February 24, 2015.

- The Settlement will provide payments to those who qualify.  You will need to file a Claim Form to get a payment from the Settlement.

- Your legal rights are affected whether you act, or don't act.  Read this notice carefully.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **SUBMIT A CLAIM FORM BY JULY 29, 2015** | This is the only way to get a payment. |
| **EXCLUDE YOURSELF BY JUNE 11, 2015** | Get no money from the Settlement.  This is the only option that allows you to ever be a part of any other lawsuit against the Defendant about the legal claims in this case. |
| **OBJECT BY JUNE 11, 2015** | Write to the Court about why you don't like the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment.  Give up rights to ever sue the Defendant about the legal claims in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.  The deadlines may be moved, canceled, or otherwise modified, so please check the settlement website at www.chipsettlement.com regularly for updates and further details.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS:

**BASIC INFORMATION** ................................................................................................ Page 3

1. Why is there a notice?

2. What is this lawsuit about?

3. Why is this a class action?

4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** .................................................................................. Page 3

5. How do I know if I am in the Settlement?

6. Which products are included in the Settlement?

7. What if I am still not sure if I am included in the Settlement?

**SETTLEMENT BENEFITS** ............................................................................................. Page 3

8. What does the Settlement provide?

9. What can I get from the Settlement?

10. What am I giving up to stay in the Class?

**HOW TO GET A PAYMENT** ......................................................................................... Page 4

11. How can I get a payment?

12. When will I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................. Page 4

13. How do I get out of the Settlement?

14. If I don't exclude myself, can I sue the Defendant for the same thing later?

15. If I exclude myself, can I still get a payment?

**OBJECTING TO THE SETTLEMENT** .......................................................................... Page 5

16. How can I tell the Court if I do not like the Settlement?

17. What is the difference between objecting and excluding?

**THE LAWYERS REPRESENTING YOU** ....................................................................... Page 6

18. Do I have a lawyer in this case?

19. How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING** ........................................................................ Page 6

20. When and where will the Court decide whether to approve the Settlement?

21. Do I have to come to the hearing?

22. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................................................ Page 6

23. What happens if I do nothing at all?

**GETTING MORE INFORMATION** .................................................................................................................. Page 6

24. How do I get more information?

# BASIC INFORMATION

**1.** **Why is there a notice?**

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Southern District of Florida (the "Court"), and the case is called *Deena Klacko v. Diamond Foods, Inc.*, No. 9:14-cv-80005. The people who sued are called the Plaintiffs, and the company they sued, Diamond Foods, Inc., is called the Defendant.

**2.** **What is this lawsuit about?**

The lawsuit claims that the Defendant violated certain laws in making certain "All Natural," "Reduced Fat" and/or "__% Less Fat" statements on the labels of its Kettle Brand® products.

The Defendant denies that it falsely advertised or marketed its products, denies all claims made against it, denies that it violated any laws, denies that its labeling is false or misleading, and denies that the Class Members have suffered any damages or that they have been harmed in any way.

**3.** **Why is this a class action?**

In a class action, one or more people, called "class representatives," sue on behalf of people who have similar claims. All these people are in a "class" or "class members," except for those who exclude themselves from the class. U.S. District Court Judge Beth Bloom in the United States District Court for the Southern District of Florida is in charge of this class action.

**4.** **Why is there a Settlement?**

The Defendant is not admitting that it did anything wrong, but both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Plaintiffs or the Defendant. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected. The Settlement provides the opportunity for payments and other benefits to Class Members.

# WHO IS IN THE SETTLEMENT?

**5.** **How do I know if I am in the Settlement?**

The Class includes all Persons who, for personal or household use, purchased the Products (defined below) in the United States from January 3, 2010 through and including February 24, 2015. Excluded from the Settlement Class are: (a) all Persons who purchased or acquired the Products for resale; (b) Diamond Foods and its employees, principals, affiliated entities, legal representatives, successors, and assigns; (c) any Person who files a valid, timely Request for Exclusion; (d) federal, state, and local governments (including all agencies and subdivisions thereof, but excluding employees thereof); and (e) the judges to whom the Kettle Actions are assigned and any members of their immediate families.

**6.** **What products are included in the Settlement?**

Kettle Brand® products with the following words on their labels are included in the Settlement: "All Natural," "Natural," "Naturally," "Made with All Natural Ingredients," "Natural Promise," or any other derivation of "natural," "nothing artificial," "no preservatives," "non-GMO," "non-GMO ingredients," "only natural colors and flavors," "natural flavors," "A Natural Obsession," "real food ingredients," "Reduced Fat," and/or "__% Less Fat." ("Products"). These statements appear on the labels of Kettle Brand® Potato Chips, Tortilla Chips, and Tias! Chips:

  

**7.** **What if I am still not sure if I am included in the Settlement?**

If you are not sure whether you are a Class Member, or have any other questions about the Settlement Agreement, you should visit the website, www.chipsettlement.com, or call the toll-free number, 1-800-XXX-XXXX.

## THE SETTLEMENT BENEFITS

**8.    What does the Settlement provide?**

If the Settlement is approved, the Defendant will establish a $3 million Settlement Fund.  After deducting a payment of up to $7,500 for the Class Representatives (*see* Question 19), a payment of up to $775,000 for attorneys' fees and costs (*see* Question 19), and up to $300,000 to administer the Settlement, the Settlement Fund will be used to make cash payments to Class Members who timely submit valid Claim Forms (*see* Question 11).  The amount of cash you may receive depends on the number of Kettle Brand® products you purchased and whether you have proof of purchase.  The Defendant will guarantee payment of all valid Claims, up to a maximum of $2.75 million.

If there is any money remaining in the $3 million Settlement Fund after all claims, incentive payments, attorneys' fees and costs, and administration expenses are paid, the Defendant will donate to Feeding America free food products with a retail value equaling any money remaining in the Settlement Fund.  If the total value of claims filed is more than $2.75 million, then payments will be reduced proportionally.

Additionally, the Defendant has agreed to provide its "Natural Promise" criteria to ingredient suppliers and verify that the ingredients comply with the "Natural Promise," to create and maintain a database to track ingredients and ingredient supplier verifications, and to conduct annual audits of its ingredient suppliers.  The Defendant has also agreed to move the comparison statement on its packages to where the "Reduced Fat" or "Less Fat" claim is most prominently displayed and to employ reasonable efforts to obtain non-GMO Project approval for its products.

**9.    What can I get from the Settlement?**

If you submit a valid Claim Form by the deadline, you can get a payment from the Settlement Fund (*see* Question 11).  Class Members are eligible to receive $1 in cash for each Kettle Brand® Product they purchased, up to 20 Products, for a total of up to $20.

If the total value of claims is more than $2.75 million, then Class Member payments will be reduced proportionally.

**10.    What am I giving up to stay in the Class?**

Unless you exclude yourself from the Settlement, you can't sue the Defendant, continue to sue, or be part of any other lawsuit against the Defendant about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The Release is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you stay in the Class.  The Settlement Agreement is available at www.chipsettlement.com.

### HOW TO GET A PAYMENT

**11.    How can I get a payment?**

To ask for a payment, complete a Claim Form, available at www.chipsettlement.com or by calling 1-800-XXX-XXXX.  Class Members are eligible to receive $1 in cash for each Kettle Brand® Product they purchased, up to 20 Products, for a total of up to $20, from January 3, 2010 to February 24, 2015.  Class Members may file a claim for up to 10 purchases by signing under penalty of perjury that they made qualifying purchases and providing the information requested.  Proof of purchase is not required for up to 10 Product purchases.  Class Members who want to file a claim for between 11 and 20 purchases must provide the proof of purchase requested on the Claim Form for all such purchases.

Please read the instructions carefully, fill out the Claim Form, and mail it postmarked no later than July 29, 2015 to: *Kettle Chips All Natural Settlement* Claims Administrator, P.O. Box xxxxx, City, ST xxxxx-xxxx, or submit your Claim Form online at www.chipsettlement.com by July 29, 2015.

There is a limit of 1 claim (for up to 20 Product purchases) per household.

The Defendant will guarantee payment of all valid Claims, up to a maximum of $2.75 million.  If the total value of claims is more than $2.75 million, then Class Member payments will be reduced proportionally.

If you do not submit a valid Claim Form by the deadline, you will not receive a payment.

**12.    When will I get my payment?**

Payments will be mailed to Class Members who send in valid Claim Forms on time, after the Court grants "final approval" to the Settlement and after any appeals are resolved.  If Judge Bloom approves the Settlement after a hearing on _____, there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement Fund, and you want to keep the right to sue or continue to sue the Defendant on your own about the legal issues in this case, then you must take steps to get out.  This is called excluding yourself—or it is sometimes referred to as "opting out" of the Class.

**13.**    <u>**How do I get out of the Settlement**</u>?

To exclude yourself from the Settlement, you must send a letter that includes the following:

- Your name, address, and telephone number;

- The name of the case (*Deena Klacko v. Diamond Foods, Inc*., No. 9:14-cv-80005);

- A statement that you want to be excluded from this Settlement; and

- Your signature.

You must mail your exclusion request, postmarked no later than June 11, 2015, to:

*Kettle Chips All Natural Settlement* Claims Administrator
P.O. Box xxxxx
City, ST xxxxx-xxxx

If you don't include the required information or submit your request for exclusion on time, you will remain a Class Member and will not be able to sue the Defendant about the claims in this lawsuit.

**14.**    <u>**If I don't exclude myself, can I sue the Defendant for the same thing later**</u>?

No.  Unless you exclude yourself, you give up any right to sue the Defendant for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

**15.**    <u>**If I exclude myself, can I still get a payment**</u>?

No.  You will not get any money from the Settlement if you exclude yourself.  If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

## OBJECTING TO THE SETTLEMENT

**16.**    <u>**How can I tell the Court if I do not like the Settlement**</u>?

If you are a Class Member, you can object to the Settlement or to Class Counsel's request for fees and expenses.  To object, you must send a letter that includes the following:

- Your name, address, telephone number, and, if available, email address;

- The name, address, email address, and telephone number of your lawyer, if you have one;

- The name of the case (*Deena Klacko v. Diamond Foods, Inc*., No. 9:14-cv-80005);

- The reasons you object to the Settlement;

- A statement of whether you intend to appear at the Fairness Hearing, either with or without counsel;

- A statement of your membership in the Class, including all information required by the Claim Form;

- A detailed list of any objections you or your lawyer have made to any class action settlement submitted to any court in the United States in the previous five years, or a statement that you have not objected to any class action settlement in any court in the United States in the previous five (5) years; and

- Your signature and, if you have one, your lawyer's signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than June 11, 2015, to all of the following addresses:

| Court | Class Counsel | Class Counsel |
|---|---|---|
| The United States District Court for the Southern District of Florida 299 East Broward Boulevard Fort Lauderdale, FL 33301 | Benjamin M. Lopatin, Esq. The Law Offices of    Howard W. Rubinstein, P.A. One Embarcadero Center, Suite 500 San Francisco, CA 94111 | L. DeWayne Layfield, Esq. Law Office of    L. DeWayne Layfield, PLLC P.O. Box 3829 Beaumont, TX 77704 |
| **Class Counsel** | **Defendant's Counsel** | **Defendant's Counsel** |

| Anthony J. Orshansky, Esq.<br>Justin Kachadoorian, Esq.<br>CounselOne, P.C.<br>9301 Wilshire Boulevard, Suite 650<br>Beverly Hills, CA 90210 | Amanda L. Groves, Esq.<br>Sean D. Meenan, Esq.<br>Winston & Strawn LLP<br>101 California Street, 35th Floor<br>San Francisco, CA 94111 | Joanna C. Wade, Esq.<br>Winston & Strawn LLP<br>100 North Tryon Street, 29th Floor<br>Charlotte, NC 28202 |
|---|---|---|

**17.** **What's the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE LAWYERS REPRESENTING YOU

**18.** **Do I have a lawyer in this case?**

Yes. The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent all Class Members: Benjamin M. Lopatin, Esq. of the Law Offices of Howard W. Rubinstein, P.A., L. DeWayne Layfield, Esq. of the Law Office of L. DeWayne Layfield, PLLC; and Anthony J. Orshansky, Esq. and Justin Kachadoorian, Esq. of CounselOne, P.C.

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**19.** **How will the lawyers be paid?**

Class Counsel intends to file a motion on or about February 20, 2015, seeking $775,000 in attorneys' fees and costs. The fees awarded by the Court will be paid from the Settlement Fund. The Court will determine the amount of fees to award. Class Counsel will also request that up to $7,500 be paid from the Settlement Fund to the three Class Representatives who helped the lawyers on behalf of the whole Class.

## THE COURT'S FAIRNESS HEARING

**20.** **When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing on [INSERT DATE] at [INSERT TIME] at the United States District Court for the Southern District of Florida, before the Honorable Beth Bloom, District Judge, in Courtroom 207, U.S. Courthouse, 299 East Broward Boulevard, Fort Lauderdale, FL 33301.

The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.chipsettlement.com for updates. At the Fairness Hearing, the Court will consider whether the Settlement Agreement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**21.** **Do I have to come to the hearing?**

No. Class Counsel will answer any questions that the Court may have. But, you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time to the proper addresses, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**22.** **May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." In your letter, you must include the following:

- Your name, address, telephone number, and, if available, email address;
- The name, address, email address, and telephone number of any lawyer(s) who will be appearing on your behalf at the Fairness Hearing;
- The name of the case (*Deena Klacko v. Diamond Foods, Inc.*, No. 9:14-cv-80005); and
- Your signature and, if you have one, your lawyer's signature.

You must mail your Notice of Intent to Appear, postmarked no later than June 11, 2015, to all of the addresses in Question 16.

## IF YOU DO NOTHING

**23.** **What happens if I do nothing at all?**

If you do nothing, you will not get a payment from the Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

**24.   How do I get more information?**

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a complete copy of Settlement Agreement and other information at www.chipsettlement.com.  You may also write with questions to Class Counsel at the addresses listed in Question 16.  You can get a Claim Form at the website, or by calling the toll free number, 1-800-XXX-XXXX.

Updates will be posted at www.chipsettlement.com as information about the settlement process becomes available.

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE CONCERNING THIS CASE.**

# EXHIBIT

# 3

LEGAL NOTICE

## If you purchased



**KETTLE**
— BRAND —

## products, you could get a payment from a Settlement.

*Para una notificación en español,
vaya a www.chipsettlement.com.*

If you purchased Kettle Brand® products, you could get a payment from a Settlement.

There is a class action Settlement involving Diamond Foods, Inc. Kettle Brand® products ("Kettle Brand® products"). The lawsuit alleges that Diamond Foods mislabeled and misbranded its Kettle Brand® products by making false and misleading statements on package labels. Diamond Foods denies it did anything wrong, defended itself throughout this litigation, and asserts that its marketing and labels were truthful and consistent with law. The Court has not decided who is right. Both sides have agreed to settle the dispute and get benefits to consumers.

### WHO IS INCLUDED IN THE SETTLEMENT?

All consumers who, for personal or household use, bought an eligible Kettle Brand® product in the U.S. from January 3, 2010 to [Notice Date] are included in the Settlement. More information about the Kettle Brand® products involved in the Settlement is available at www.chipsettlement. com or by calling 1-877-450-8811.

### WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement provides a cash settlement fund of up to $3 million to pay (1) up to $2.75 million for Claims of eligible Class Members; (2) the costs of notice and administration; (3) attorneys' fees and expenses; and (4) incentive awards payments to the Class Representatives. Class Members who timely submit valid Claim Forms are entitled to receive a cash payment from the Settlement Fund in the amount of $1.00 for each Kettle Brand® product purchased, up to 20 products per household. Class Members who claim more than 10 products must submit Proof(s) of Purchase establishing the purchase(s) during the Class Period. If the total amount of Claims exceeds $2.75 million, benefits will be reduced proportionally so that all eligible Class Members benefit.

### WHAT ARE MY RIGHTS?

1. You Can Accept the Settlement. If you wish to receive benefits under the Settlement, you MUST fill out and submit a Claim Form by ____. You can obtain a Claim Form by (1) calling 1-877-450-8811; (2) mailing a written request for a Claim Form to: ____; or (3) online at www.chipsettlement.com. If you do not timely submit a valid Claim Form and do not exclude yourself from the Settlement, you will be bound by the Settlement but will not receive any benefits of the Settlement.

2. You Can Object to the Settlement. If you believe the Settlement is unsatisfactory, you may submit a written objection to the Court. The deadline for submitting an objection is ____.

3. You Can "Opt Out" of the Settlement. If you don't want to be legally bound by the Settlement, you must exclude yourself by ____, or you won't be able to sue, or continue to sue, Diamond Foods about the legal claims in this case. If you exclude yourself, you can't get money from this Settlement. If you stay in the Settlement, you may object to it by ____. The detailed notice, available at www.chipsettlement.com, explains how to exclude yourself or object. If you do nothing you will be bound by the Court's decisions.

The Court will hold a hearing on _____, 2014 to consider whether to approve the Settlement, a request for attorneys' fees and expenses up to $775,000, and incentive awards to the Class Representatives totaling $7,500, from the Settlement Fund. You or your own lawyer may appear and speak at the hearing at your own expense.

**For More Information:
1-877-450-8811
www.chipsettlement.com**

# EXHIBIT

# 4

# If you purchased



# you could get a payment from a Settlement.

## Learn More

*Prefieroe español? Haga clic aquí.*

# EXHIBIT

# 5

**Kettle Chips All Natural Settlement**
**Claims Administrator**
P.O. Box xxxx
City, ST  xxxxx-xxxx



## KCA

«Barcode»
Claim #: KCA-«ClaimID»    «MailRec»
«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «ST»  «Zip»
«Country»

<table>
<tr><td>

**FILE YOUR CLAIM
ONLINE AT**:
www.chipsettlement.com

</td><td>

FOR OFFICIAL
USE ONLY

</td></tr>
</table>

## CLAIM FORM

### Klacko v. Diamond Foods, Inc.
In the United States District Court for the Southern District of Florida
Civil Action No. 9:14-cv-80005

> **If you are a Settlement Class Member and wish to receive a payment, your completed Claim Form must be Postmarked on or before July 29, 2015, or Submitted Electronically to the Settlement Administrator at www.chipsettlement.com on or before _July 29, 2015.**

Please read the full Notice (available at www.chipsettlment.com) carefully before filling out this Claim Form.

To be eligible to receive any money from the settlement obtained in this class action lawsuit, **you must either**: (1) complete this Claim Form and mail it postmarked on or before July 29, 2015 to: _____; or (2) submit your Claim Form online at www.chipsettlement.com on or before July 29, 2015 Failure to submit your completed Claim Form on time by U.S. Mail (properly addressed) or to fill out an online Claim Form by the deadline will result in the rejection of your Claim and you will not receive any money from this Settlement.

## PART 1:  CLAIMANT INFORMATION

Claimant Name: _____

Street Address: _____

City: _____  State: _____  Zip Code: _____

Daytime Phone Number:  (_____) _____ - _____

Evening Phone Number:  (_____) _____ - _____

 *KCA«ClaimID»*     «ClaimID»    KCAPOC02

| PART 2:  PURCHASE INFORMATION |
|---|

State the total number of Diamond Kettle Brand® products you purchased between
January 3, 2010 and February 24, 2015, in the United States for personal or household use:          _____

| PART 2:  PURCHASE VERIFICATION |
|---|

For purchases between January 3, 2010 and February 24, 2015, identify the Diamond Kettle Brand® product(s) you purchased and the date(s) of your purchase(s):

| | Kettle Brand® Product Purchased | Approximate Date |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |

**If you are claiming that you purchased more than 10 Kettle Brand® products, you must attach Proofs(s) of Purchase, such as a receipt or other documentation establishing the fact and date of purchase.  Failure to include Proof of Purchase for Claims in excess of 10 products or the submission of false or fraudulent claims may result in the Claim being rejected in its entirety.**

| PART 3:  SIGNATURE |
|---|

I declare under penalty of perjury under the laws of the United States that between January 3, 2010 and February 24, 2015, I purchased in the United States for my personal or household use the number of Diamond Foods, Inc. Kettle Brand® products stated above.

  

Signature: _____   Date (mm/dd/yyyy): _____



