## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO.: 9:14-cv-80005-BB

| | |
|---|---|
| DEENA KLACKO, individually and on behalf of all others similarly situated, | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | :    "Class Action" |
| | : |
| DIAMOND FOODS, INC., a California Corporation | : |
| | : |
| *Defendant.* | : |
| | : |

## PLAINTIFFS' MOTION FOR REASONABLE ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS

**TABLE OF CONTENTS**

I. INTRODUCTION………………………………………………………………………...4

II. BACKGROUND   ……………………………………………………………………….6

    A. Plaintiffs' Allegations and the Litigation History….………………………………..6

    B. The Settlement Achieves Exceptional Relief for the Settlement Class…………...7

III. THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEY'S FEES AND EXPENSES BECAUSE THEY ARE REASONABLE……………………………………….8

    A. Class Counsel Devoted a Substantial Amount of Time and Effort to This Case and Were Consequently Precluded from Accepting Other Employment…………………….10

    B. The Settlement Achieves Exceptional Relief for the Settlement Class………….11

    C. Class Counsel Achieved an Excellent Result for the Plaintiff Class…………….13

    D. The Requested Fee Is Consistent with Those Awarded in Other Similarly Complex Class Settlements in this Circuit……………………………………………….14

    E. A High Level of Skill Was Necessary to Perform the Legal Services Properly…15

IV. THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFFS SHOULD BE APPROVED…………………………………………………………………………………..16

V. CONCLUSION……………………………………………………………………….17

## TABLE OF AUTHORITIES

**Cases**
*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185 (S.D. Fla. 2006) ................ 13, 14, 16
*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) ....................................................... 16
*Bohlke v. Shearer's Foods, Inc.*, No. 9:14-cv-80828, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015)
    ................................................................................................................................................ 12
*Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) .................................... 8, 9, 10
*Chin v. Gen. Mills, Inc.*, No. 12-2150 2013 WL 2420455 (D. Minn. June 3, 2013) .................... 13
*Cohn v. Nelson*, 375 F. Supp.2d 844 (E.D. Mo. 2005) ................................................................... 9
*David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 628362 (S.D. Fla. Apr. 15, 2010)
    ................................................................................................................................................ 16
*Faught v. Home Shield Corp.*, 668 F.3d 1233 (11th Cir 2011) .......................................... 9, 10, 14
*Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-61677, 2008 WL 649124 (S.D. Fla. Jan.
    31, 2008) ................................................................................................................................ 12
*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................... 9
*In re Checking Overdraft Litig.*, 830 F. Supp.2d 1330 (S.D. Fla. 2011) ............................... passim
*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ......... 16
*In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323 (.S.D. Fal. 2001) ........................................ 12, 15
*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ........................................................ 16
*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............................ passim
*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.
    1976) ...................................................................................................................................... 13
*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429 (11th Cir. 2012) .................. 10, 14
*Pelayo v. Nestle USA, Inc.*, 989 F. Supp.2d 973 (C.D. Cal. 2013) ............................................... 13
*Pinto v. Princess Cruise Line, Ltd.*, 513 F. Supp.2d, 1334 (S.D. Fla. 2007) ..................... 12, 14, 16
*Schlage Lock Co.*, 505 F. Supp.2d 704 (D. Colo. 2007) ............................................................... 11
*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ...................................... 10
*Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .................. 14
*Yates v. Mobile Cnty Pers. Bd.*, 719 F.2d 1530 (11th Cir. 1983) ................................................. 11

**Rules**
Fed. R. Civ. P. 23(h) ................................................................................................................. 4, 8
Fed. R. Civ. P. 54(d)(2) .................................................................................................................. 4

In accordance with this Court's October 30, 2014 Order Granting Preliminary Approval of Class Action Settlement [Doc. 48], and pursuant to Rules 23(h) and 54(d)(2), *Federal Rules of Civil Procedure*, Plaintiffs, DEENA KLACKO, DOMINIKA SURZYN, and RICHARD HALL (collectively, the "Plaintiffs"), request the Court grant Plaintiffs' Motion for Reasonable Attorney's Fees, Expenses, and Incentive Awards ("Motion"),[1] and in support thereof states the following:

## I. INTRODUCTION

Plaintiffs and Class Counsel urge this Court to grant this motion for fees, expenses and incentive awards to the named representative plaintiffs in conjunction with the final approval the Kettle Brand® Class Action Settlement reached in this matter, which provides all Class members with meaningful relief and addresses allegedly disputed ingredients in and advertising of consumer food products, on a nationwide basis. This Motion is made pursuant to the Kettle Brand® Class Action Settlement Agreement reached in this class action lawsuit (copy attached as Exhibit 1). The Settlement arises from litigation in which Plaintiffs challenged the advertising and labeling of Kettle Brand® products as deceptive and misleading. Specifically, Plaintiffs challenged Kettle Brand® products labeled as "All Natural," Natural," "Naturally," "Reduced Fat," and/or "___% Less Fat" (collectively, the "Products"). Plaintiffs alleged that the advertising and labeling of the Products containing "natural" or similar labels are deceptive and misleading because those Products contain artificial, synthetic, and/or genetically modified ingredients, which, plaintiffs maintain, are not natural within the common understanding of an

---

1. Pursuant to Rule 23(h), Fed. R. Civ. P., Class Counsel file this Motion in advance of the June 11, 2015, deadline for objecting to the Settlement. Upon filing, a copy of this Motion for Approval will be posted to the Settlement Website, www.chipsettlement.com, where it can easily be accessed by Members of the Class.

objective consumer. Plaintiffs also contended that the Product advertising and labeling "Reduced Fat" and "___% Less Fat" are similarly deceptive and misleading because Defendant improperly references other non-comparable food in making such claims. Plaintiffs brought the actions to recover damages and obtain declaratory and injunctive relief. Defendant denies that it falsely advertised or marketed the Products, denies all claims made against it, denies that it violated any laws, denies that its labeling is false or misleading, and denies that Plaintiffs or the Class Members have suffered damages or that they have been harmed in any way.

On October 30, 2014, the Court preliminarily certified the Settlement Class, appointed Class Representatives, appointed Class Counsel, and granted preliminary approval to the Settlement reached by the Parties. The Settlement was reached after over a year of litigation, a full day of mediation with an experienced mediator, and subsequent lengthy and hard-fought post-mediation negotiations, also facilitated by the mediator. The Settlement provides substantial and meaningful relief to the Settlement Class, including a multimillion dollar common fund and injunctive relief, all discussed in more detail below. The details of the Settlement are set out in the Settlement Agreement that is attached as **Exhibit 1**.

Approval of the proposed Settlement is all the more warranted because the Settlement involves the resolution of complex issues against a rising tide of decisions--from this Court and across the country--adverse to Plaintiffs' position--decisions Class Counsel would certainly distinguish, but their opponent would just as vigorously assert. For the reasons set forth below, the Class Representative and Class Counsel are asking this Court to award the requested fees, expenses and incentive awards for the Class Representatives in conjunction with final approval of the Settlement.

## II.     BACKGROUND

### A.     Plaintiffs' Allegations and the Litigation History

The instant action is the first filed of three related actions against Defendant. The other two actions are both pending in the United States District Court for the Northern District of California: *Dominika Surzyn v. Diamond Foods, Inc.*, Case No. 4:14-cv-136 (the "*Surzyn* Action"), and *Richard Hall v. Diamond Foods, Inc.*, Case No. 3:14-cv-02148 (the "*Hall* Action"). The Settlement reached by the Parties results in the final disposition of all three actions.

These putative class actions all involve the sale of the Products and overlapping alleged facts and legal theories. All three of the actions faced motions to dismiss and replies to the responses in opposition thereto. *See* [Docs. 9, 15, 31, 38], Exhibit 2; *Hall* Action [Docs. 16, 22, 29], Exhibit 3; *Surzyn* Action [Docs. 15, 21], Exhibit 4. Ultimately, and after sometimes multiple rounds of pleading and briefing, Plaintiffs prevailed on some causes of action against the pleading-related motions.

While the motions to dismiss were pending, the Parties engaged in the exchange of informal discovery. Specifically, Defendant provided Plaintiffs with confidential business information that aided in the resolution of these cases. Resolution required extensive negotiations, a full day of mediation with experienced mediator David Lichter, and then follow-up mediation assistance from Mr. Lichter before the Parties ultimately reached the Settlement that is before this Court.

As a result of the Settlement reached by the Parties, on October 22, 2014, Plaintiff Deena Klacko filed her Unopposed Motion for Preliminary Approval of Class Action Settlement [Doc.

44]. On October 30, 2014, this Court entered its Oder Granting Motion for Preliminary Approval of Class Action Settlement. [Doc. 48].

### B. The Settlement Achieves Meaningful Monetary and Non-Monetary Relief for the Settlement Class

The Settlement reached by the Parties involves both monetary and injunctive relief. Specifically, Defendant has agreed to pay claimants $1.00 per Kettle Brand® product purchased, up to a maximum of $10.00 per claimant without requiring proof of purchase, or up to a maximum of $20.00 per claimant with proof of purchase. Defendant has agreed to satisfy all valid Claims made, up to $2,750,000, plus up to $300,000 for administration expenses, $7,500 for incentive awards, and $775,000 for attorneys' fees. For example, if Approved Claims are $2,800,000, administration expenses are $300,000, incentive awards are $7,500, and attorneys' fees are $775,000, Defendant's cash payments will total $3,832,500 Any Residual Amount, as that term is defined in the Settlement Agreement, will be applied towards Diamond Foods, Inc. food products, which Defendant will donate to charity, namely, Feeding America.

In addition to this monetary relief, Defendant has agreed that within one (1) calendar year after entry of the Final Judgment and Order Approving Settlement, it will provide its "Natural Promise" criteria to its suppliers, and will require those suppliers to verify that their ingredients comply with those criteria. Defendant will also create a database to track ingredients and ingredient suppliers, and will conduct audits at least once annually to confirm that Defendant's suppliers are in compliance with Defendant's "Natural Promise" criteria. Defendant further promises to employee reasonable efforts to seek Non-GMO Project approval for all Products where eligibility for non-GMO Project approval is practical.

Additionally, with regard to Defendant's "Reduced Fat" and "___% Fat Free" claims, Defendant agrees to place the requisite comparison statement at the location on the packaging

7

where the applicable claim is most prominently displayed.  Moreover, Defendant will provide reports to the Court (i) at the end of the six (6) month period following entry of the Final Judgment and Order Approving Settlement; and (ii) within one (1) calendar year following Final Judgment and Order Approving Settlement, regarding its compliance with these above-stated injunctive relief provisions.

Plaintiffs contend that in the context of food labeling class action settlements, this type of injunctive relief is unusual.  This form of injunctive relief provides a lasting benefit to the Settlement Class years beyond the date of settlement and distribution of monetary relief.

In exchange for the Settlement relief, members of the Settlement Class will release Defendant and its former and current subsidiaries, affiliates, divisions, parents, and other affiliated companies, among others, from all claims, obligations, or damages that were or could have been sought in this litigation against Defendant for damages related to Plaintiffs' claims during the Class Period.

### III. THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEY'S FEES AND EXPENSES BECAUSE THEY ARE REASONABLE

Rule 23(h), *Federal Rules of Civil Procedure*, authorizes, pursuant to law or the parties' agreement, the award of reasonable attorney's fees to class counsel who prosecute the case.  Not only does the Settlement here provide for the award of reasonable attorney's fees from the Settlement Fund, but "[i]t is well-established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."  *In re Checking Overdraft Litig.*, 830 F. Supp.2d 1330, 1358 (S.D. Fla. 2011); *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a

class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval").

The reasonableness of a settlement is determined within the sound discretion of the district court. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). However, settlements are strongly encouraged. *Id.* ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee"); *see also Cohn v. Nelson*, 375 F. Supp.2d 844, 854 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference").

Here, the Settlement resulted in the creation of an initial $3 million monetary Settlement Fund for the benefit of the Settlement Class. Accordingly, attorney's fees are calculated based on a "reasonable percentage of the fund established for the benefit of the class."[2] *Faught v. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir 2011) (citing *Camden I*, 946 F.2d at 744; *In re Checking Account Overdraft Litig.*, 830 F. Supp.2d at 1358 ("In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement"). Importantly, under the terms of the Settlement Agreement, Defendant can be required to make additional deposits of up to $832,500 to the initial $3 million common fund, for the purpose of guaranteeing that up to $2.75 million is available to pay valid claims. Thus, under the Settlement Agreement the total value of the initial $3 million common fund could grow to $3,832,500..

---

2.   The calculation of attorney's fees is based on a percentage of the *entire* initial $3 million Settlement Fund, not the amount claimed against it. *See Boeing Co.*, 444 U.S. at 478 ("A litigant or lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund *as a whole*") (emphasis added); *see also Waters v. Intl Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) ([C]lass counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed"). Here the Settlement Agreement provides that the common fund may grow as large as $3,832,500

9

While the Eleventh Circuit has not set a particular percentage of a common fund from which attorney's fees may be awarded, "the majority of common fund fee awards fall between 20% to 30% of the fund" and the Eleventh Circuit has "directed district courts to view this range as a 'benchmark' which may be adjusted in accordance with the individual circumstances of each case, using the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999); *see also Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429, 435 (11th Cir. 2012) ("Pack's objection to the fee is likewise without merit.  The $3.64 million fee award is approximately 25% of the 'common fund' and 'well-settled law from this court [states] that 25% is generally recognized as a reasonable fee award in common fund cases'") (quoting *Faught*, 668 F.3d at 1243).

In ruling on a request for an award of fees and expenses, the Court should consider the so-called "*Johnson* Factors."  The twelve "*Johnson* Factors" are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Camden I*, 946 F.2d at 772.

### A.     Class Counsel Devoted a Substantial Amount of Time and Effort to This Case.

The first, fourth, and seventh *Johnson* factors—the time and labor involved, the preclusion of other employment, and the time limitations imposed, respectively—are interrelated inquires, and each support the reasonableness of Class Counsel's fee request.

Class Counsel has opposed every motion to dismiss lodged against the respective Plaintiff's pleadings and ultimately prevailed against Defendant's attacks with respect to some causes of action. Additionally, Class Counsel has engaged in on-going negotiations since early in this case, including the exchange of informal discovery, the attendance at a full-day mediation, and numerous telephone negotiations, including telephone conferences with the mediator. This is all in addition to extensive pre-suit investigation and research, which included legal research involving diverse substantive state and federal law, consultations with experts, client meetings, and preliminary consumer surveys. Plaintiffs request that the Court take judicial notice of the contents of the courts' files in the three matters resolved by the Kettle Brand® Settlement. True and correct copies of the Docket History Reports are attached as Exhibits 2, 3, and 4 for the Court's convenience. The contents of these official files are evidence of the time and energy devoted to this litigation by Class Counsel.

During the pendency of this case, work performed on this case by Class Counsel has precluded Class Counsel from devoting that time and those resources to litigating other matters. *Yates v. Mobile Cnty Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (recognizing that the expenditure of 1,000 billable hours, often in significant blocks of time, "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work"). Indeed, the *Yates* Court further acknowledged that such devotion of time and resources to complex matters, like the instant case "should raise the amount of the award"). *Id.*; *see also Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* Court concluded that priority work that delays a lawyer's other work is entitled to a premium"). Accordingly, the amount of time and labor devoted to this case supports the reasonableness of Class Counsel's request.

      **B.**    **The Case Involved Difficult Issues Concerning a Developing Area of Law, and the Risk of Nonpayment and Not Prevailing on the Claims Was High**

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the issues raised in the litigation, whether the fee was contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested fee award. "A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Line, Ltd.*, 513 F. Supp.2d, 1334, 1339 (S.D. Fla. 2007). "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1364 (citing *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1335 (.S.D. Fal. 2001)). Ultimately, the "attorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-61677, 2008 WL 649124, at * 14 (S.D. Fla. Jan. 31, 2008) (citing *Pinto*, 513 F. Supp.2d at 1339).

Plaintiffs' claims have been fraught with risk since their respective inception, as evidenced by the numerous motions to dismiss Plaintiffs' complaints that met each action. Furthermore, claims similar to Plaintiffs' claims, but involving different defendants and different products, are developing in the various federal and state courts and are still being met with vigorous opposition. *See e.g.*, *Bohlke v. Shearer's Foods, Inc.*, No. 9:14-cv-80828, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015) (order granting in part and denying in part defendant food producer's motion to dismiss plaintiff's claims related to similar "all natural" food labels on a multitude of grounds, including jurisdictional, preemption, and failure to state a claim). Should the cases have proceeded to the certification and merits stage, the parties and their respective experts would have battled over the Rule 23 requirements. The results of those efforts, while unknown, would be fraught with risk, particularly in light of recent decisions from the relevant

12

jurisdictions where these cases have been pending. *Randolph v. Smucker*, No. 9:13-cv-80581, 2014 WL 7330430 (S.D. Fla. Dec. 23, 2014); *In re Clorox*, 301 F.R.D. 436 (N.D. Cal. 2014); *Bruton v. Gerber*, No. 5:12-cv-02412, 2014 WL 2860995 (N.D. Cal. June 23, 2014); *Allen v. Conagra*, No. 13-cv-01279-VC (N.D. Cal. Jan. 8, 2015).

Although Class Counsel were able to achieve fair, adequate and reasonable relief for the Settlement Class in this case, the relief obtained cannot be viewed in a vacuum. *See In re Checking Overdraft Litig.*, 830 F. Supp.2d at 1364 ("Undesirability and relevant risks must be evaluated from the standpoint of plaintiffs' counsel *as of the time they commenced the suit*, not retroactively, with the benefit of hindsight") (emphasis added) (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976)). Indeed, at the time the instant claims were filed, there was a growing trend by courts to reject claims similar to those asserted by Plaintiffs here. *See Pelayo v. Nestle USA, Inc.*, 989 F. Supp.2d 973 (C.D. Cal. 2013) (decided October 25, 2013); *see also Chin v. Gen. Mills, Inc.*, No. 12-2150 2013 WL 2420455 (D. Minn. June 3, 2013); *Brazil v. Dole Packaged Foods, LLC,* 2014 WL 6901867 (N.D. Cal. Dec, 8, 2014). Given the foregoing, the risk associated with Plaintiffs' claims was great when the three actions were filed.

### C. Class Counsel Achieved an Excellent Result for the Plaintiff Class

The eighth—and most significant—*Johnson* factor looks to the amount involved in the litigation, with particular emphasis placed on the "monetary results achieved" in this case by Class Counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the creation of an initial $3,000,000 Settlement Fund used to make monetary payments weighs strongly in favor of approving the requested fee. Class Counsel also negotiated

a contingent increase in this fund of up to an additional $832,500 if necessary to guarantee up to $2,750,000 million remains available to pay claims by Settlement Class Members.

Here, the creation of a common fund initially funded with $3 million with contingencies for up to $3,832,500 and including a guaranteed pool of $2,750,000 to satisfy claims made without proof of purchase up to $10.00, and with a proof of purchase up to $20.00, is substantial in the context of this case. Additionally, any Residual Amount, as that term is defined in the Settlement Agreement, will be donated in the form of Defendant's food products to charity, namely, Feeding America.

### D. The Requested Fee Is Consistent with Those Awarded in Other Similarly Complex Class Settlements in This Circuit.

The fifth and twelfth *Johnson* factors—the customary fee and awards in similar cases, respectively—also support that the agreed-upon fee request, which amounts to 25% of the initial $3 million Settlement Fund, is reasonable. Indeed, a fee request of 25% is squarely in the range of the 20% to 30% "benchmark" recognized as reasonable in this Circuit. *Nelson*, 484 Fed. App'x. at 435 (noting "that 25% is generally recognized as a reasonable fee award in common fund cases") (quoting *Faught*, 668 F.3d at 1243); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365 (finding that 30% fee is customary in class action cases); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, *6 (S.D. Fla. Sept. 26, 2012) (finding that 33% is the market rate in class actions); *Pinto*, 513 F. Supp.2d at 1341 ("The 30% fee requested in this case is well in line with the bulk of the fee awards in class action litigation"); *Allapattah*, 454 F. Supp.2d at 1204 (S.D. Fla. 2006) (awarding 31.3% of the fund). In addition, final approval has been recently given to other "all natural" settlements as follows: Pop Chips ($3.15 million common fund with $991,000 fee and expense award), *see* Exhibit 5; Trader Joes ($3.375 million common

14

fund with $950,000 fee and expense award), *see* Exhibit 6; Kashi ($5 million common fund with $1.25 million fee and expense award), *see* Exhibit 7.

Accordingly, factors five and twelve favor Class Counsel's request for 25% of the common fund. Importantly, if Defendant is required to make additional contributions to the fund, under the terms of the Settlement Agreement, the percentage fee requested could be as low as 20.222% of the resulting $3,832,500 common fund.

### E.     A High Level of Skill Was Necessary to Perform the Legal Services Properly

The remaining *Johnson* factors—the skill required to perform the legal services properly and the experience, reputation, and ability of the attorneys—confirm that the requested fee is reasonable. As discussed above, Class Counsel were able to successfully resolve the case through a settlement that confers substantial monetary and injunctive relief to the Settlement Class, despite the fact that Defendant was well-financed and retained top-tier counsel from a national firm. *See In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced").

The exceptional outcome achieved in this case was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity. Indeed, Class Counsel regularly engages in major complex litigation involving allegedly deceptively labeled food products and other consumer product class litigation and have been appointed class counsel by courts throughout the country. *See* Firm Resumes/Declaration of Class Counsel attached hereto as Composite Exhibit 8.

## IV. THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFFS SHOULD BE APPROVED

Finally, the Court must consider whether to approve the requested $2,500 incentive awards ($7,500 in total) to each of the three named Plaintiffs, Klacko, Surzyn, and Hall, in recognition of their roles as Class Representatives. Courts consistently find it appropriate to provide a named plaintiff with an incentive award for the benefits conferred upon the rest of the class. *See Allapattah*, 454 F. Supp.2d at 1218-19; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs). Further, courts within the Eleventh Circuit frequently approve incentive awards of $5,000 or more. *See In re Checking Account Overdraft Litig.*, 830 F. Supp.2d at 1358 (collecting cases and approving incentive awards of $5,000 per class representative) *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 628362, *6 (S.D. Fla. Apr. 15, 2010) (approving an incentive award of $5,000 for a class representative, in addition to a new motorcycle); *Pinto*, 513 F. Supp.2d at 1344 (approving incentive award of $7,500 per class representative). Incentive awards are intended to "compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapatah*, 454 F. Supp.2d at 1218-19 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)).

Here, the agreed-upon incentive awards of $2,500 is well-below the amounts traditionally awarded in similar actions, and, moreover, is entirely reasonable given the Plaintiffs' involvement in the litigation—involvement that was essential to the ultimate success of the

Settlement reached. Indeed, the Class Representatives dedicated their time and effort to pursuing the claims on behalf of the putative class and demonstrated a willingness to participate in the case and undertake the responsibilities and attendant risks of bringing a representative action. From start to finish, each Class Representative aided in the investigation of the claims, consulting with Class Counsel, participating in informal discovery, and contributing to the mediation efforts. Accordingly, Class Counsel requests that the Court approve the requested incentive awards of $2,500 each for Plaintiffs Klacko, Surzyn, and Hall.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find that the requested attorneys' fees, expenses, and incentive awards are reasonable, enter the Proposed Order that will be separately submitted with the Final Approval briefing granting the requested attorneys' fees and incentive award, and award such further relief as the Court deems just and proper.

## LOCAL RULE 7.1 (A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(A)(3), on February 19, 2015, counsel for Plaintiff has conferred with counsel for Defendant, who agrees with the relief requested in this Motion.

**Respectfully Submitted,**

Dated: February 20, 2015
/s/ *Howard W. Rubinstein*
Howard W. Rubinstein (Fla. Bar No.: 104108)
**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33401
(800) 436-6437
(415) 692-6607 (fax)
Email: *howardr@pdq.net*

> Benjamin M. Lopatin (Cal. Bar No. 281730)
> (Admitted *Pro Hac Vice*)
> **THE LAW OFFICES OF**
> **HOWARD W. RUBINSTEIN, P.A.**
> One Embarcadero Center, Suite 500
> San Francisco, CA 94111
> (800) 436-6437
> (415) 692-6607 (fax)
> Email: *lopatin@hwrlawoffice.com*
>
> L. DeWayne Layfield
> **Law Office of L. DeWayne Layfield PLLC**
> P.O. Box 3829
> Beaumont, TX 77704
> 409-832-1891
> Email: dewayne@layfieldlaw.com
> (Admitted *Pro Hac Vice*)
>
> Anthony J. Orshansky
> Justin Kachadoorian
> **CounselOne, PC**
> 9301 Wilshire Blvd., Suite 650
> Beverly Hills, CA 90210
> (310) 277-9945
> (424) 277-3727 (fax)
> Email:  anthony@counselonegroup.com
>           justin@counselonegroup.com
>           (*Pro hac vice* application pending)
>
> *Attorneys for Plaintiff Deena Klacko*
> *and the Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing generated by CM/ECF.

*/s/ Howard W. Rubinstein*
Howard W. Rubinstein

**SERVICE LIST**
*Klacko v Diamond Foods, Inc.*
CASE NO. 14-cv-80005-BB
United States District Court, Southern District of Florida

Amanda L. Groves
Winston & Strawn LLP
100 North Tryon Street
Charlotte, NC 28202-1078
704-350-7700
Fax: 704-350-7800
Email: agroves@winston.com
(Admitted *Pro Hac Vice*)

Dora Faye Kaufman
Liebler, Gonzalez & Portuondo, P.A.
44 West Flagler Street
25th Floor
Miami, FL 33130
305-379-0400
Fax: 305-379-9626
Email: dfk@lgplaw.com

James Randolph Liebler
Liebler Gonzalez & Portuondo PA
44 W Flagler Street
25th Floor
Miami, FL 33130-4329

305-379-0400
Fax: 379-9626
Email: jrl@lgplaw.com

Joanna C. Wade
Winston & Strawn LLP
100 N Tryon Street
Charlotte, NC 28202-1078
704-350-7700
Fax: 704-350-7800
Email: jwade@winston.com
(Admitted *Pro Hac Vice*)