Dawn Weaver
208 Via Morella
Encinitas, CA 92024
(858) 829-3659
weavdm@gmail.com

FILED BY _____ D.C.

JUN 2 2 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

June 11, 2015

The United States District Court
Southern District of Florida
701 Clematis Street
West Palm Beach, FL 33401

     Re:   *Deena Klacko v. Diamond Foods, Inc.*, No. 9:14-cv-80005);

Dear Court:

## CLASS MEMBERSHIP

I am a class member as described in the notice of class settlement. I purchased the Kettle Chips products as follows:

| | |
|---|---|
| 5/13/2014 | Vons |
| 7/3/2014 | Vons |
| 9/1/2014 | Vons |

## OBJECTIONS

I object to the proposed Settlement. The amount of the settlement that will go to class members is unclear. Instead of principally benefiting class members, the primary component of this settlement is likely to be distribution of Diamond Foods' Kettle Brand Products (principally Kettle Chips of one form or another), valued at their retail price, to the Feeding America charitable organization. Distribution of potato chips (a low nutrition snack food) does not advance the objectives of the litigation and does little to alleviate hunger. As compensation for achieving this less than stellar result for the class, the attorneys' are asking the court to award them attorneys' fees of $775,000, without providing class members any information on the amount of hours they have expended on the class or the benefit this settlement will in fact provide to class members. The court should reject this settlement.

*Deena Klacko v. Diamond Foods, Inc.*
Page 2

- **First, I object that the information required from objectors amounts to discovery and impermissibly interferes with the right to object.**

Class members have a right to object to the terms of a proposed settlement they consider unfair. That right is expressed in FRCP 23(e)(5) regarding settlement ("Any class member may object to the proposal if it requires court approval under this subdivision") and FRCP 23(h)(2) regarding the award of attorneys' fees ("A class member, or a party from whom payment is sought, may object to the motion"). Unfortunately, the class notice states that to object to the settlement class members must provide: "A detailed list of any objections you or your lawyer have made to any class action settlement submitted to any court in the United States in the previous five years, or a statement that you have not objected to any class action settlement in any court in the United States in the previous five (5) years." Notice, page 5. Requiring objectors provide information regarding their participation in litigation pending in other courts is an additional burden that hinders the right to object – not to mention being irrelevant – and may discourage objectors from participating in these settlement proceedings. These requirements also make it hard for class members to obtain independent counsel. "The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions." *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972). Interference with objector participation undermines the court's efforts to assess the fairness of the settlement. Any limit on the right of class members to be heard on the settlement deprives the court of the open interchange of ideas brought by objectors. "Parties whose rights are to be affected are entitled to be heard." *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1863).

- **Objector participation is particularly important in a case like this where the benefit of the settlement for the class as a whole is so speculative.**

On first glance the value of the settlement to class members seems straightforward enough. Individual consumers are entitled to receive up to $1.00 for each product they purchased during the class period up to a maximum of $10.00 without proof of purchase. For those with proof of purchase, the maximum is $20. We can assume that very few consumers will

*Deena Klacko v. Diamond Foods, Inc.*
Page 3

have kept proof of purchase for potato chips purchases back to 2010 to enable them to claim the higher $20 amount, so for most consumers the settlement is worth a maximum of $10.

In aggregate, however, the value of the settlement is less clear. The defendant has agreed to establish a $3 million settlement fund. After deducting $7,500 for the Class Representatives, $775,000 for attorneys' fees and costs and $300,000 in administrative fees (for a total of $1,082,500), the remaining $1,917,500 is potentially available for distribution to the class. Should enough claims be submitted, however, Defendant has agreed to satisfy all valid claims up to $2,750,000, meaning the defendant's total payment for settlement might increase to as much as $3,832,500. The class could thus *potentially* receive between $1,917,500 and $2,750,000.

*Potentially,* because class counsel has not provided class members any idea as to how many class members are actually being paid. True, class members have until August 1, 2015 to submit their claim forms, but class members are required to make a decision regarding whether they wish to participate in or object to the settlement by June 11, 2015. As of this date, the number of claim forms that have been filed is nowhere to be found in the materials provided to the class. Class counsel will no doubt have some information on the number of claims forms filed to share with the court at the fairness hearing, but class members should be given that information prior to having to decide whether to object to the settlement. The schedule approved by the court thus ensures that class members will not have adequate information on this most crucial aspect of the settlement – what is it worth to the class? – when they have to make their decision about participating in the settlement.

- **We can be sure class participation will be low because the notice plan is inadequate and the individual claim value is insignificant.**

The notice plan is entirely inadequate, and certainly calculated to ensure a low settlement value for the class. The parties have structured the notice plan to ensure minimal class participation. Despite assertions that the notice plan is designed to reach 70% of class members, the notice plan will surely not succeed in this objective. See "Legal Notice Plan" prepared by

*Deena Klacko v. Diamond Foods, Inc.*
Page 4

KCC Legal Notification Services, Dkt. 44-1, page 101.. First, there is no direct individual notice – even though Kettle Chips could certainly have provided direct notice to at least some of its customers. Since there is no direct notice, the adequacy of the publication notice is extremely important. But the only print advertisement was a single advertisement in Bon Appetit magazine. Bon Appetit has a circulation of only 1,529,385, and the advertisement was projected to only reach 3.9% of Kettle Chip consumers. Dkt. 44-1, page 104. The court cannot possibly consider this adequate notice so as to bind absent class members to this settlement. Although the parties also conducted an internet advertising campaign, these banner ads have little substance and limited effectiveness in achieving constitutionally adequate notice.

This inadequate notice will help ensure a low claims rate. The low claim value virtually guarantees this. The District Court for the Middle District of Florida's opinion in *DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012) addressed a similar situation involving a settlement with low claim value. In that case the court found that a low-value claims-made settlement would "surely result in a low claims rate" and recommended that the settlement be rejected for failing the fairness inquiry. *DeLeon* involved a claims-made settlement structure that purported to be worth $10 million, but would likely revert more than half of that fund to the defendant. Even though class members there were eligible to claim $28—more than the maximum $20 here—the Court found that the settlement would "likely attract few takers" and was not fair, reasonable and adequate. *Id.* at *19. The magistrate's report and recommendation were adopted in full by Judge Antoon. *De Leon v. Bank of Am., N.A.*, No. 6:09-CV-1251-ORL-28, 2012 WL 2543586 (M.D. Fla. July 2, 2012).

In this case, where there was no direct notice campaign and where the maximum amount available without proof of purchase is $10, it is likely that only a few thousand claims will be submitted. *See, e.g., Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (0.27% claims rate for $15 max claim); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13,

*Deena Klacko v. Diamond Foods, Inc.*
Page 5

2013) ("[A] mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total number of class members who received notice."); *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *22 (N.D. Ill. Jan. 3, 2014) (0.25% claims rate overall where maximum claim was $12 without proof of purchase and $50 with proof of purchase). *Cf. Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Given the tiny sum per person, who would bother to mail a claim.").

       If only a few thousand individuals submit claims, say, for example, 10,000 – a generous assumption – the case may yield less than $100,000 for class members. What of the remaining 1,817,500? This money will essentially revert back to the defendant, which will then provide its products, at retail value, to the Feeding America charities. Although the settlement does not explicitly state that this is a reversionary fund, by enabling the residual funds to be distributed in the form of Kettle Chip products at retail value, rather than cash, the defendant has essentially achieved a large retail sale and will get back the remaining cash advanced for the settlement. Careful review of the documents makes this obvious. The Motion for Final Approval, for example states "Any Residual Amount, as that term is defined in the Settlement Agreement, will be applied toward Diamond Foods, Inc. product, which Defendant will donate to charity namely, Feeding America." Dkt. 51, page 7. The Settlement Agreement further clarifies this will be valued at full retail value. ("Diamond Foods shall distribute to Feeding America free Diamond Foods products with a retail value equaling any Residual Amount.") Settlement Agreement, Section IV.4, page 19. This is a *cy pres* distributrion that cleverly disguises the real value of the settlement and the disproportionate nature of the attorneys' award.

- **The *cy pres* distribution of Kettle Chips to Feeding America is not a benefit to the class, does not further the purposes of the litigation, and does not even achieve the objectives of the charitable organization targeted.**

       To begin, the distribution of Kettle Chips to Feeding America should not be considered a class benefit. Class members want to get the benefit themselves, and the attorneys should not be

*Deena Klacko v. Diamond Foods, Inc.*
Page 6

rewarded for obtaining benefits for third parties. The class, needless to say, is not "indifferent to whether funds are distributed to them or to [third parties], and class counsel should not be either." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013). *Cy pres* distribution can help solve problems in settlement administration, but should not be considered a class benefit.

Although *cy pres* distributions are generally disfavored, if allowed, they should at least target interests aligned with the goals of the litigation if they are to stand as a proxy for the interests of the class. The Ninth Circuit, for example, requires that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012), *citing Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir.2011). "A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id., citing Nachshin* at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir.1990). *Kellogg* provides a useful comparison to this case. There the court found that organizations donating food to the disadvantaged did not meet the objectives of the litigation, which was focused on false advertising.

Here, the distribution of Kettle Chips to an organization aimed at addressing hunger is particularly inappropriate. Potato chips are not a suitable donation to aid in feeding the poor – they are a low-nutrition junk food and such a distribution would not help Feed America in its goal of alleviating hunger. Cash would be much more effective. The Feeding America website states "every dollar donated turns into six meals for an individual in need." The Feeding America website explicitly encouraged "nutrition-focused food banking" and actively asks for food donations that are nutrient and protein rich. Its goals include encouraging healthy food choices. Encouraging consumption of potato chips does not fit within these goals. Moreover, the cash equivalent of one bag of Kettle Chips – with a retail value as high as $4.00 -- could provide 24 meals for hungry people. Allowing this distribution at retail value is clearly

*Deena Klacko v. Diamond Foods, Inc.*
Page 7

improper.

Such a distribution would, however, provide Kettle Co. a means to achieve a substantial tax write-off for distribution of unsold products at full retail value. The Feeding America website acknowledges the substantial tax benefits that can be achieved by corporate donations. It states: "Many Feeding America partner organizations have tax benefits. Learn more about charitable donations tax deductions and benefits for your company." *See* http://www.feedingamerica.org/ways-to-give/give-food/become-a-product-partner/tax-benefits-for-your-company.html.

At the same time, the product distribution would build brand awareness and good will for Diamond Foods. But since this lawsuit is about truth in advertising, it is inappropriate to encourage donation of potato chips to an organization focused on combating hunger in America. Providing a charitable contribution of potato chips – a form of junk food no matter how high quality the ingredients might be – to an organization aimed at combating hunger is directly contrary to these objectives. Indeed, such a donation implies Kettle Chips can help to alleviate hunger. The reverse is true. Consumption of low nutrition and high cost snacks like Kettle Chips would only contribute to the food crisis in America, not help to combat or relive it. The court should not approve this.

- **Class counsel's request for fees of $775,000 is excessive in light of the minimal benefit achieved for the class.**

As described above, this settlement improperly favors the interests of class counsel over those of class members, and the attorneys should not be rewarded for obtaining benefits for third parties. Class counsel claim they are only requesting attorneys' fees of 25% of the common fund of $3 million achieved for the class. But as we've explained above, this $3 million is not a true statement of the benefit of the settlement to the class. Only a small portion of this amount is likely to go to the class, and the residual distribution of Kettle Chips products – which are over-valued at retail – are not a class benefit.

*Deena Klacko v. Diamond Foods, Inc.*
Page 8

Although the law of this Circuit may allow for a percentage recovery, the fee award should be based on the amount actually achieved for the class. *See, e.g., Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (abuse of discretion to use lodestar rather than percentage-of-recovery method of awarding fees). Despite a preference for percentage awards in this circuit, the court should require the attorneys substantiate their work. Here, class counsel have not provided billing records substantiating the amount of work they've done on the case. Nor have they even submitted an aggregate lodestar amount, or information about the allocation of the fees among the firms working on the litigation. Instead they have only attached docket sheets from associated litigation – information readily available to the court – and secured defendants' agreement to neither contest the fees nor require information regarding the allocation of the fees among associated counsel.

Even if the court finds the percentage fee requested is appropriate, the attorneys should only be compensated for what they achieve for the class. They should not be compensated for that portion of the settlement fund that goes to Feeding America, nor should they be compensated for that portion of the settlement that goes to settlement and administration expenses. The Seventh Circuit's analysis of the settlement expense issue is helpful. See *Redman v. RadioShack Corp.*, 14-1470, 2014 WL 4654477 (7th Cir. Sept. 19, 2014), where Judge Posner offered the following analysis of the error committed by the lower court:

> The judge accepted the settlors' contention that the defendant's entire expenditures should be aggregated in determining the size of the settlement; it was this aggregation that reduced the award of attorneys' fees to class counsel to a respectable-seeming 25 percent. But . . . administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members. . . .

*Id.* at * 5. Settlement Administration Expenses are more correctly considered a benefit for the defendants. It is through the notice that they achieve absent class members' waiver of

claims; the court's determination that the notice plan is sufficient will achieve a release of

liability from potential claims of by all class members who do not opt out of the settlement. The

fact that notice costs are not a class benefit is just one example of the principle that costs

imposed on the defendant should not be considered the per se measure of class value. The

standard under Rule 23(e) "is not how much money a company spends on purported benefits, but

the value of those benefits to the class." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d

935, 944 (9th Cir. 2011).

The fact that the claims rate is likely to be low, although the attorneys' have requested

fees based on the entire settlement value, underscores the unfairness of this settlement.

Assessing a similar situation in *DeLeon v. Bank of Am., supra,* Magistrate Judge Karla Spaulding

found that given the likelihood that the claims rate would be low, class counsel's requested fees

of $2.5 million were excessive, and concluded that the settlement was unfairly fee-driven and

that class counsel had "negotiated to maximize the amount of fees that could be awarded". *Id,* at

*15. *DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 WL 2568142 (M.D. Fla. Apr. 20, 2012)

The fact that this settlement pays little attention to the interests of the class is further

illustrated by class counsel's motion for final approval, which essentially ignores the question of

class member participation. The final section of their Motion for Final Approval is titled "The

Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members

Strongly Favor Settlement Approval." This grand assertion is followed, however, by a brief

paragraph that only addresses the opinions of class counsel, and completely ignores the "absent

settlement class members". That section, in its entirety states:

> A court should give "great weight to the recommendations of counsel for the
> parties, given their considerable experience in this type of litigation." Warren v.
> Tampa, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988).
>
> Here, Class Counsel have substantial experience in consumer class actions and
> believe that, based on their experience, the Settlement is fair, adequate, and
> reasonable under the facts and circumstances of this case and that the Settlement
> should be approved. Decl. ¶ 9, 23.

*Deena Klacko v. Diamond Foods, Inc.*
Page 10

Dkt. 51, page 19.  This section brings into sharp relief the reality at the heart of this settlement: the settlement favors class counsel, and essentially ignores the interests of the class they purport to represent. This settlement is not fair to the class, and I encourage the court to reject it.

**CONCLUSION**

For the above reasons, I object to this settlement.  I would also like to join in all other well-founded and meritorious objections, and request that upon proper hearing, the court enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dawn Weaver

Copies to:

**Class Counsel**
Benjamin M. Lopatin, Esq.
The Law Offices of
Howard W. Rubenstein, P.A.
One Embarcadero Center, Suite 500
San Francisco, CA 94111

Anthony J. Orshansky, Esq.
Justin Kachadoorian, Esq.
CounselOne, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, CA 90210

**Defendant's Counsel**
Amanda L. Groves, Esq.
Sean D. Meenan, Esq.
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111

L. DeWayne Layfield, Esq.
Law Office of L. DeWayne Layfield, PLLC
P.O. Box 3829
Beaumont, TX 77704

Joanna C. Wade, Esq.
Winston & Strawn LLP
100 North Tryon Street, 29th Floor
Charlotte, NC 28202

Dawn Weaver
208 Via Morella
Encinitas CA 92024

The United States District Court
Southern District of Florida
701 Clematis Street
West Palm Beach, FL 33401